USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/24/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Lloyd J. Heller,

                Plaintiff,

-v-

Goldin Restructuring Fund, L.P. et al,

                Defendants.

Case No.07-cv-3704 (KMK)

ORDER SETTING
PRE- MOTION CONFERENCE

KENNETH M. KARAS, District Judge:

The Court hereby ORDERS that the parties appear for a pre motion conference in this case. The conference shall be held on September 21, 2006 at 11:45am in the United States Courthouse for the Southern District of New York, Courtroom 21D- 500 Pearl Street, New York, New York.

The Defendant's time to answer the complaint will be extended to the time that the pre motion conference is held.

SO ORDERED.

Dated:      July 24 , 2007
              New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**213.443.3236**

WRITER'S INTERNET ADDRESS
**danbrockett@quinnemanuel.com**

June 29, 2007

***Via Hand Delivery***

Hon. Kenneth M. Karas
United States District Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 920
New York, New York 10007

Re:     *Lloyd J. Heller v. Goldin Restructuring Fund, L.P., et al.,*
        Civil Action No. 07 cv 3704

Dear Judge Karas:

We represent Goldin Restructuring Fund, L.P. (the "Fund"); Goldin Capital Partners, L.P.;
Goldin Capital Management, L.P.; Goldin Associates, L.L.C.; Harrison J. Goldin; David Pauker;
and Lawrence J. Krule, defendants in the above-captioned action. We enclose a courtesy copy of
an agreed-upon Stipulation and Order extending defendants' time to answer, move, or otherwise
respond to the Complaint to August 3, 2007. A copy of this proposed Order has been delivered
to the Orders and Judgments Clerk.

In accordance with Rule 2(A) of this Court's Individual Practices, we are also writing to request a
pre-motion conference with respect to a motion to dismiss that defendants propose to file on
August 3, 2007. The proposed motion will be brought pursuant to Rules 12(b)(6) and 9(b) of the
Federal Rules of Civil Procedure and Sections 21D and 21E of the Private Securities Litigation
Reform Act. The expected grounds for the motion are summarized below.

Plaintiff Heller is a sophisticated investor who purchased a $1 million limited partnership interest
in Goldin Restructuring Fund. The Fund was established to invest in distressed and
underperforming companies and to fund corporate turnarounds and reorganizations. (Compl. ¶¶
22-25). After raising about $40 million, the Fund made its first investment, a medical spa

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

business then in bankruptcy ("Medspa"). (Compl. ¶ 67). Unfortunately, the medical spa business performed poorly, was written down, and it is likely that the limited partners will lose money on this particular investment. (Compl. ¶¶ 1, 71-73). Disappointed with the results of his high-risk investment to date, Heller now claims he was defrauded into purchasing his limited partnership interest. He asserts two separate claims for relief: breach of fiduciary duty and securities fraud in violation of Section 10(b) and Rule 10b-5.

We propose to seek dismissal of the fiduciary duty claim on three basic grounds. First, the Limited Partnership Agreement governing the Fund expressly eliminates plaintiff's right to sue the Fund's general partner and manager except in cases of willful misconduct or gross negligence. (January 2005 LP Agreement, ¶ 4.3(2)). The Delaware Revised Uniform Limited Partnership Act ("DRULPA"), under which the Funbd was organized, expressly empowers a Delaware limited partnership to modify "any and all liabilities for . . . breach of duties (including fiduciary duties) of a partner or other person to a limited partnership or to another partner." 6 Del. Code § 17-1101(d), (f). The parties did just that in their Partnership Agreement and Delaware courts consistently enforce agreements of this kind, which modify in advance a partner's fiduciary duty of care (but not duty of loyalty). Plaintiff does not allege willful misconduct or gross negligence in support of its fiduciary breach claim.

Second, apart from the fiduciary waiver provision, plaintiff's fiduciary breach claim fails because the Medspa investment was expressly authorized by the Limited Partnership Agreement and the Offering Memorandum, both of which are incorporated by reference into the Complaint. Under Delaware law, a general partner is not deemed in breach of his fiduciary duties where he has complied with an express authorization in the partnership agreement. *See* 6 Del. Code § 17-1101(e) (eliminating liability for "good faith reliance on the provisions of the partnership agreement"); *Brickell Partners v. Wise*, 794 A.2d 1, 3-4 (Del. Ch. 2001) (dismissing breach of fiduciary duty claim with prejudice because defendants' conduct complied with partnership agreement).

Finally, even if plaintiff could state a breach of fiduciary duty claim consistent with the Partnership Agreement -- which he cannot -- the claim is in any event preempted by New York's Martin Act. The Martin Act prohibits various fraudulent and deceitful practices in the distribution, exchange, sale, and purchase of securities. *N.Y. Gen. Bus. L.* § 352-c(1). The New York Court of Appeals has held that there is no implied right of action under the Martin Act, *CPC Int'l Inc. v. McKesson, Corp.*, 70 NY 2d 268, 275, 519 N.Y.S. 2d 804, 514 N.E. 2d 116 (1987), and other courts have determined that allowing a breach of fiduciary duty claim in the context of securities fraud "would effectively permit a private right of action under the Martin Act." *Eagle Tenants Corp. v. Fishbein*, 182 A.D.2d 610, 582 N.Y.S.2d 218, 219 (N.Y. App. Div. 1992). New York state and federal courts have uniformly held that the Martin Act preempts common law claims by private litigants that broadly relate to the "issuance, distribution, exchange, sale, negotiation, or purchase" of securities "within or from" New York. *Nanopierce Tech., Inc. v. Southridge Capital Management LLC*, 2003 WL 22052894, at *2 (S.D.N.Y. 2003).

With respect to plaintiff's securities fraud claim, we will seek dismissal on three basic grounds. First, plaintiff's complaint fails to plead scienter with the requisite particularity required by the Securities Litigation Reform Act and the U.S. Supreme Court's June 21, 2007 opinion in

2

*Telllabs, Inc. v. Makor Issues & Rights*, No. 06-484, Slip Opinion (June 21, 2007). *Tellabs* resolves the circuit split on how federal courts must decide whether a plaintiff's Section 10(b) complaint pleads a "strong inference" of *scienter*. The decision requires that, in order to survive a motion to dismiss under the Reform Act, a complaint alleging a Section 10(b) and Rule 10b-5 violation must plead facts giving rise to an inference of *scienter* that is "more than merely plausible or reasonable -- it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." (Slip op. at 2).

Plaintiff's complaint is wholly conclusory on the issue of fraudulent intent. Plaintiff pleads no plausible motive or explanation as to why defendants would want to deceive him into investing in this Fund. Certainly, there is no "strong" or "cogent" inference of fraudulent intent as required by the Supreme Court's new pleading standard. If anything, the complaint gives rise to the opposite inference -- that defendants had no intent to deceive plaintiff. At the very least, the inference of nonfraudulent intent is equally permissible as any inference of fraudulent intent. Under *Tellabs*, that is insufficient to plead *scienter*.

Second, plaintiff's complaint is deficient on the issue of loss causation. Plaintiff alleges a litany of misrepresentations and omissions concerning a variety of subjects. (Compl. ¶ 82). But none of these statements has anything to do with the economic loss that plaintiff allegedly suffered. The limited partners lost money in the Fund because the Medspa investment failed. That failure, having to do with unique factors related to the specific investment, is not causally connected to any of the misstatements and omissions alleged by Heller. As numerous courts have held, an intervening collapse of a business or market -- whether the Internet, telecommunications, oil & gas, or even a retail chain of medical spas -- breaks the causal connection and undermines plaintiff's ability to establish loss causation. *See, e.g., Dura Pharmaceuticals*, 544 U.S. at 342-43.

Finally, we will seek dismissal on grounds that plaintiff has failed to plead actionable misrepresentations or omissions because (i) the alleged oral misrepresentations are contradicted by plaintiff's certifications; (ii) the alleged misrepresentations contradict the written offering materials; and (iii) the alleged misrepresentations and omissions are immaterial in light of the disclaimers in the written offering materials.

We understand that plaintiff's counsel, John Halebian, Esq., is on vacation until mid-July and therefore we have agreed (subject to the Court's approval) that plaintiff's three-page response to this letter would be filed on July 19, 2007. The parties would like, if possible, to schedule the pre-motion conference before the August 3, 2007 date for answering the complaint set forth in the attached stipulation.

Respectfully submitted,

Daniel Brockett

Daniel L. Brockett (DLB 3192)

cc:  John Halebian, counsel for plaintiff (by e-mail PDF)

3

LOVELL STEWART HALEBIAN LLP

ATTORNEYS AT LAW

500 FIFTH AVENUE

NEW YORK, NEW YORK 10110

www.lshllp.com

TELEPHONE
(212) 608-1900

FACSIMILE
(212) 719-4677

JOHN HALEBIAN
DIRECT TELEPHONE (212) 981-6760
DIRECT TELECOPIER (212) 208-6806
E-MAIL jhalebian@lshllp.com

July 19, 2007

**BY HAND**

Hon. Kenneth M. Karas
United States District Judge
Southern District of New York
500 Pearl St., Room 920
New York, NY 10007

RE:    *Heller v. Goldin et al.,* No. 07-cv-3704 (KMK) (S.D.N.Y.)

Dear Judge Karas:

We represent plaintiff Lloyd L. Heller and write in opposition to defendants' anticipated motion to dismiss the complaint. Because the complaint is exceedingly detailed in pleading the grounds for the two claims that are asserted, i.e. a securities fraud claim under Section 10(b) of the Exchange Act of 1934 and a breach of fiduciary duty claim, and the claims are fully supported by the applicable law, any effort to dismiss the complaint would be frivolous and without any merit. Moreover, it would merely be an opportunistic attempt to use a newly minted United States Supreme Court decision, generally perceived as raising the pleading bar in a securities fraud litigation, but which has not yet been interpreted by any court.

*Heller Properly Alleged a Claim for Breach of Fiduciary Duty* — Defendants incorrectly contend that the Limited Partnership Agreement ("LPA") expressly eliminated Heller's right to sue on his breach of fiduciary duty claim. The pertinent contractual provision, however, offers no escape for acts of "willful misconduct... [or] gross negligence." LPA, ¶ 4.3(a)(i). The extent to which Delaware law permits the elimination of duties by contract is irrelevant, because the LPA does not exclude the type of wrongdoing alleged in this Action, which was at the least grossly negligent and more likely was willful. Facts supporting willful misconduct or gross negligence are more than adequately pled in the complaint. The defendants *decided* to begin investing even though they knew that they lacked minimally adequate capital to meet their investment objective; they *decided* to abandon diversification by investing more than a third of the Fund's total capital in a single "opportunity," and then *decided* to increase the size of that lone investment. *See* Compl. ¶¶ 66-67. Nothing in the LPA limited their liability for such a willful or grossly negligent breach of their fiduciary duties to Heller.

The defendants further incorrectly argue that there was no breach of fiduciary duty under Delaware law because "the Medspa investment was expressly authorized by the [LPA] and the Offering Memorandum." This contention is insufficiently specified in Mr. Brockett's letter for

**LOVELL STEWART HALEBIAN LLP**
Hon. Kenneth Karas
July 19, 2007
Page 2 of 3

Heller to respond fully, but it is clear that both documents describe the Fund's investment objective, including diversification, in clear and unambiguous terms, and that neither document either mentions Medspa or authorizes the abandonment of the Fund's basic portfolio character.

The defendants also improperly argue that Heller's breach of fiduciary duty claim is preempted by New York's Martin Act, N.Y. Gen. Bus. Law § 352-c(1). The defendants fail to recognize, however, that Heller's claim for breach of fiduciary duty (in contrast to his securities fraud claim) only concerns the defendants' mismanagement of the Fund *after* Heller had already purchased his partnership interest. *See* Compl. ¶ 76. The Martin Act is therefore inapposite to Heller's breach of duty claim in at least two ways:

— The Martin Act applies to conduct "engaged in to induce or promote the issuance, distribution, exchange, sale, negotiation or purchase within or from this state of any securities." *Id.* at § 352-c(1)(c). Pre-emption by the Act extends only so far as the Act itself. *See Nanopierce Tech., Inc. v. Southridge Capital Management*, cited by the defendants, 2003 WL 22052894, at *4-*6 (S.D.N.Y. 2003) (permitting a claim that otherwise fell squarely within the Martin Act to go forward because the securities in question were not sold "within or from" New York). Because Heller's breach of duty claim concerns conduct after he had already subscribed to the Fund rather than conduct "to induce or promote" his subscription, it falls outside the Act and is not pre-empted.

— Pre-emption also does not apply because Heller's breach of fiduciary duty claim alleges mismanagement rather than dishonesty or deception. *See Louros v. Kreicas*, 367 F. Supp. 2d 572, 595-6 (S.D.N.Y. 2005) (Martin Act does not pre-empt a "claim of breach of duty that involves securities but does not allege any kind of dishonesty or deception"). In *Louros,* the defendant was alleged to have defrauded the plaintiff into allowing the defendant to place the plaintiff's savings in unsuitable investments. The court allowed both claims for fraud (which the court characterized as a "traditional Section 10(b) claim") and a claim for breach of fiduciary duty. The parallel breach of duty claim was allowed notwithstanding the Martin Act because, like Heller's claim, it "simply" concerned how the defendant had managed the plaintiff's money. *Id.* at 595-96.

*Heller Adequately Alleged a Claim for Securities Fraud* — With respect to Heller's claim of securities fraud, the defendants incorrectly contend that Heller's complaint fails to plead the defendants' motive for deceiving Heller into investing in the Fund as cogently as required by *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 2007 WL 1773208 (U.S.). The defendants' motive, however, is amply elaborated by the complaint: the Fund desperately needed more capital. Heller alleges that the Fund was 80% under-capitalized relative to its target, Compl. ¶ 26; that a capital shortfall of this magnitude rendered the Fund's stated investment objectives impossible *ex ante, id.* at ¶ 27; and that the defendants fully appreciated their dilemma, and had already delayed the Fund's originally anticipated First Closing date by six months in order to extend their capital-raising, *id.* at ¶¶ 27-28. Apart from explaining the defendants' motive, these facts were absolutely central to understanding the Fund's prospects, *id.* at ¶¶ 41, 44, and 51-2, but the defendants failed to disclose them to Heller when soliciting his subscription, *id.* at ¶¶ 40 and 45-9. There is no plausible alternative motive for the defendants to have concealed these essential

**LOVELL STEWART HALEBIAN LLP**
Hon. Kenneth Karas
July 19, 2007
Page 3 of 3

facts from Heller. The inference of *scienter* is further strengthened by the defendants' additional misrepresentations, which Heller alleges were designed to persuade and pressure him to buy into the Fund.[1]

The defendants' second contention regarding the securities fraud claim is that the complaint fails adequately to plead loss causation, because the misrepresentations and omissions alleged are unrelated to the "unique factors" that caused the Medspa investment to fail. Those "unique factors," however, play no part in Heller's claim. The self-evident purpose of the Fund's stated diversification objective was to limit the risk to the Fund's partners from any one investment outcome. The gravamen of Heller's securities fraud claim is that the Fund was so grievously under-capitalized that, if the defendants adhered to the objective of taking influential or controlling positions in "middle market" companies, the Fund could not afford to diversify beyond one or, at most, two investments. The Fund's severe undercapitalization thus created the risk that the defendants would abandon diversification and bet the Fund on a single investment, a risk the defendants concealed by concealing the Fund's undercapitalization (as well as related facts such as their prolonged but unsuccessful fund-raising efforts). Precisely this risk materialized when the defendants invested 42% of the Fund's total capital in a single investment, and thereby inflicted a 42% loss on Heller when (for whatever reasons) the investment failed. These allegations clearly establish loss causation as defined by the Second Circuit. "If the significance of the truth is such as to cause a reasonable investor to consider seriously a zone of risk that would be perceived as remote or highly unlikely by one believing the fraud, and the loss ultimately suffered is within that zone, then a misrepresentation or omission as to that information may be deemed a foreseeable or proximate cause of the loss." *Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 173 (2d Cir. 2005) (quoting *Castellano v. Young & Rubicam, Inc.,* 257 F.3d 171, 188 (2d Cir. 2001)).

Finally, the defendants argue that "(i) the alleged oral misrepresentations are contradicted by plaintiffs' certifications; (ii) the alleged misrepresentations contradict the written offering materials; and (iii) the alleged misrepresentations and omissions are immaterial in light of the disclaimers in the written offering materials." Because Brockett's letter fails to specify what the pertinent certifications, statements and disclaimers are, Heller is unable at present to respond to this contention.

Respectfully submitted,

*[signature]*

John Halebian

cc  Daniel L. Brockett, Esq. (by e-mail PDF)

---

[1] These misrepresentation were that a single well-known investor had subscribed as much as $40 million (equivalent to the total capital the Fund had actually raised); that the Fund had not yet made any investments because it was waiting for the right one (whereas in fact it had delayed commencing its activities in order to continue seeking adequate start-up capital); and that the opportunity for Heller to subscribe was about to end (when in fact the Fund would take subscriptions for 9-12 more months). *Id.* at ¶¶42-3, 50, and 53-5.