**EXHIBIT B**

**June 2004 Draft Amended and Restated Limited Partnership Agreement**

SRZ DRAFT
06/08/04

# GOLDIN RESTRUCTURING FUND, L.P.

## AMENDED AND RESTATED
## LIMITED PARTNERSHIP AGREEMENT

---

Dated as of July [___], 2004

---

THE LIMITED PARTNERSHIP INTERESTS (THE "INTERESTS") OF GOLDIN RESTRUCTURING FUND, L.P. (THE "PARTNERSHIP") HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), THE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OR ANY OTHER APPLICABLE SECURITIES LAWS IN THE RELIANCE UPON EXEMPTIONS FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND SUCH LAWS.  SUCH INTERESTS MUST BE ACQUIRED FOR INVESTMENT ONLY AND MAY NOT BE OFFERED FOR SALE, PLEDGED, HYPOTHECATED, SOLD, ASSIGNED OR TRANSFERRED AT ANY TIME EXCEPT IN COMPLIANCE WITH (I) THE SECURITIES ACT, ANY APPLICABLE STATE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES AND ANY OTHER APPLICABLE SECURITIES LAWS AND (II) THE TERMS AND CONDITIONS OF THIS LIMITED PARTNERSHIP AGREEMENT (THE "AGREEMENT").  THE INTERESTS WILL NOT BE TRANSFERRED EXCEPT IN COMPLIANCE WITH SUCH LAWS AND THIS PARTNERSHIP AGREEMENT. THEREFORE, PURCHASERS OF SUCH INTERESTS WILL BE REQUIRED TO BEAR THE RISK OF THEIR INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

## TABLE OF CONTENTS

PAGE

ARTICLE I DEFINITIONS .................................................................................................. 1

ARTICLE II GENERAL PROVISIONS ............................................................................ 12

| | | |
|---|---|---|
| 2.1 | Formation ........................................................................................ | 12 |
| 2.2 | Name ............................................................................................... | 12 |
| 2.3 | Organizational Certificates and Other Filings; Limitations on Conduct of Business ......................................................................... | 12 |
| 2.4 | Purpose ........................................................................................... | 13 |
| 2.5 | Principal Office ............................................................................... | 13 |
| 2.6 | Registered Office and Registered Agent ......................................... | 13 |
| 2.7 | Term ................................................................................................ | 13 |
| 2.8 | Fiscal Year ...................................................................................... | 13 |
| 2.9 | Parallel Investment Partnership ...................................................... | 13 |
| 2.10 | Alternative Investment Structure .................................................... | 14 |
| 2.11 | Withdrawal of Initial Limited Partner ............................................ | 15 |

ARTICLE III CAPITAL CONTRIBUTIONS AND DIRECT PAYMENTS; DISTRIBUTIONS .................................................................................. 15

| | | |
|---|---|---|
| 3.1 | Capital Contributions and Direct Payments .................................... | 15 |
| 3.2 | Excuse, Exclusion and Cancellation ............................................... | 19 |
| 3.3 | Subsequent Closings ....................................................................... | 22 |
| 3.4 | Distributions - - General Principles ................................................ | 24 |
| 3.5 | Amounts and Priority of Distributions ............................................ | 27 |

ARTICLE IV THE GENERAL PARTNER ....................................................................... 27

| | | |
|---|---|---|
| 4.1 | Guidelines for Investments ............................................................. | 27 |
| 4.2 | Powers of the General Partner ........................................................ | 28 |
| 4.3 | Limitation on Liability .................................................................... | 30 |
| 4.4 | Indemnification ............................................................................... | 30 |
| 4.5 | General Partner as Limited Partner; Affiliated Investors ............... | 32 |
| 4.6 | Other Activities ............................................................................... | 32 |
| 4.7 | Valuation ......................................................................................... | 33 |

4.8     UBTI Covenants ................................................................35
4.9     ERISA Covenants ..............................................................35
4.10    Key Person Event .............................................................35
4.11    Transaction Fees ..............................................................35

ARTICLE V THE LIMITED PARTNERS ...............................................36

5.1     Management .....................................................................36
5.2     Liabilities of the Limited Partners ...................................37
5.3     Limited Partners' Outside Activities ................................39
5.4     Investors Committee .........................................................39
5.5     Provisions Relating to Portfolio Investments in Media Companies ......................41

ARTICLE VI EXPENSES AND FEES ....................................................41

6.1     General Partner Expenses ................................................41
6.2     Management Fee ...............................................................42
6.3     Partnership Expenses .......................................................42

ARTICLE VII BOOKS AND RECORDS AND REPORTS TO PARTNERS ...........................43

7.1     Books and Records ...........................................................43
7.2     Federal, State, Local and Foreign Income Tax Information ................................43
7.3     Reports to Partners ..........................................................44
7.4     Partnership Meetings ........................................................44

ARTICLE VIII TRANSFERS, WITHDRAWALS AND DEFAULT .....................45

8.1     Transfer and Withdrawal of the General Partner ..............45
8.2     Assignments and Substitutions by Limited Partners .........45
8.3     Right of First Offer ...........................................................47
8.4     Defaulting Limited Partner ...............................................47
8.5     Further Actions .................................................................49
8.6     Admissions and Withdrawals Generally ...........................49
8.7     Required Withdrawals .......................................................50
8.8     Plan Assets Matters ..........................................................50

ARTICLE IX TERM AND DISSOLUTION OF THE PARTNERSHIP ...................52

9.1     Term ..................................................................................52

9.2    Winding-up ......................................................................... 52

9.3    Final Distribution ............................................................... 52

9.4    General Partner Clawback ................................................ 53

ARTICLE X CAPITAL ACCOUNTS AND ALLOCATIONS OF PROFITS
         AND LOSSES ......................................................................... 54

10.1    Capital Accounts ............................................................. 54

10.2    Tax Advances .................................................................. 55

ARTICLE XI MISCELLANEOUS ..................................................... 55

11.1    Waiver of Accounting ..................................................... 55

11.2    Power of Attorney ........................................................... 55

11.3    Amendments .................................................................... 57

11.4    Entire Agreement ............................................................ 58

11.5    Severability ..................................................................... 58

11.6    Notices ............................................................................. 58

11.7    Governing Law ................................................................ 58

11.8    Jurisdiction; Venue ......................................................... 59

11.9    Successors and Assigns ................................................... 59

11.10   Counterparts .................................................................... 59

11.11   Interpretation .................................................................. 59

11.12   Headings .......................................................................... 59

11.13   Confidentiality ................................................................ 60

11.14   Partnership Tax Status .................................................... 60

AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT

OF

GOLDIN RESTRUCTURING FUND, L.P.

This AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT (this "Agreement") of Goldin Restructuring Fund, L.P., a Delaware limited partnership (the "Partnership"), is made as of July [\_\_], 2004, by and among Goldin Capital Partners, L.P., a Delaware limited partnership, as general partner (the "General Partner"), Harrison J. Goldin as the initial limited partner (the "Initial Limited Partner") and the limited partners of the Partnership, as limited partners (the "Limited Partners").

## WITNESSETH:

WHEREAS, the Partnership was formed pursuant to a Certificate of Limited Partnership, dated May 20, 2004, which was filed for recordation in the office of the Secretary of State of the State of Delaware on May 20, 2004 and a Limited Partnership Agreement dated as of May 20, 2004 between the General Partner and the Initial Limited Partner; and

WHEREAS, the parties hereto desire to enter into this Amended and Restated Limited Partnership Agreement of the Partnership to make the modifications hereinafter set forth;

NOW, THEREFORE, in consideration of the mutual promises and agreements herein made and intending to be legally bound hereby, the parties hereto agree to the following:

## ARTICLE I

### Definitions

As used herein, the following terms shall have the following meanings:

Act: The Delaware Revised Uniform Limited Partnership Act 6 Del. Code § 17-101 et seq., as the same may be amended from time to time.

Active Person: Any employee or other natural person then actively engaged in the business of the Partnership and who is devoting substantially all of his or her time to such business as his or her exclusive employment.

Adjusted Capital Contributions: With respect to any Partner, an amount equal to the Capital Contributions of such Partner reduced, from time to time, by the sum of (a) any distributions of Investment Proceeds made to such Partner pursuant to Section 3.5(a)(i) or deemed made pursuant to Section 10.2 and (b) the amount of any Capital Contributions returned to a Partner in connection with a Subsequent Closing in accordance with Section 3.3(b) hereof, but not less than zero.

Adjusted Cost:  With respect to an Unrealized Investment as of a given date shall mean (x) in the case of an Unrealized Investment that has not been the subject of a Writedown before that date, the total Capital Contributions of all Partners relating thereto, and (y) in the case of an Unrealized Investment that has been the subject of one or more Writedowns before that date, its Fair Market Value as of the date of the most recent valuation.

Affiliate:  With respect to any Person, any Person directly or indirectly controlling, controlled by or under common control with such Person.

Affiliated Investors:  Limited Partners who are (a) direct or indirect members or partners of the General Partner or the Manager, (b) Affiliates of the General Partner or the Manager, (c) employees of the General Partner, the Manager or their Affiliates, (d) entities beneficially owned solely by any one or more of them and (e) employee benefit plans, family and charitable foundations or family investment vehicles for any of the foregoing.

Affiliated Portfolio Companies:  Means two or more Portfolio Companies which are Affiliates, other than Portfolio Companies affiliated solely as a result of their ownership by the Partnership.

After-Tax Amount:  An amount equal to (a) the amount of any Carried Interest distributed to the General Partner with respect to a Limited Partner, minus (b) any Interim Clawback Amount with respect to such Limited Partner, minus (c) the amount of income tax payable on allocations of taxable income or distributions related to such Carried Interest, such income tax to be reduced by the amount of any tax benefit actually realized by the General Partner (or its direct or indirect owners) in the year in which the General Partner is required to make a payment of the Clawback Obligation, as calculated by the Partnership's accountants, which tax benefit is attributable solely to the making of such payment and which benefit shall be determined after first taking all other items of income, gain, loss, deduction or credit of the General Partner (or its direct or indirect owners) into account, provided, however, that no income tax paid by the General Partner (or its direct or indirect owners) in respect of Carried Interest returned as an Interim Clawback Amount pursuant Section 5.2(c) shall reduce the After-Tax Amount.

Agreement:  This Amended and Restated Limited Partnership Agreement, including annexes hereto, as the same may be amended, modified or supplemented from time to time.

Alternative Vehicle:  As defined in Section 2.10.

Appraised Value:  With respect to the redemption of any Partner's Interest in the Partnership pursuant to Section 8.1, 8.7 or 8.8, a price equal to the value of such interest, less actual or reasonably estimated costs of liquidation and inclusive of the effect of any potential Carried Interest payments to the General Partner (including a former General Partner), determined on the assumption that the Portfolio Investments were sold for their Fair Market Values (determined in accordance with Section 4.7) and the proceeds therefrom were distributed on the date of determination to the Partners in accordance with this Agreement after credit or debit, as the case may be, for the amount of the Partnership's other assets and liabilities determined in accordance with generally accepted accounting principles, consistently applied;

provided that the Appraised Value of the General Partner's interest shall not take into account the distributions of Carried Interest that the General Partner is entitled to receive following its withdrawal or removal as the General Partner.

Assignee: As defined in Section 8.2(a).

Assumed Income Tax Rate: The highest effective marginal combined U.S. federal, state and local income tax rate for a Fiscal Year prescribed for an individual resident in New York, New York (taking into account the character of the applicable income (e.g., long-term or short-term capital gain or ordinary or exempt) and the deductibility of state and local income taxes for federal income tax purposes).

BHC Partner: As defined in Section 5.1 (b).

Business Day: A day which is not a Saturday, Sunday or a day on which banks in New York, New York are closed.

Capital Account: As defined in Section 10.1.

Capital Call Notice: As defined in Section 3.1(c) (ii).

Capital Commitment: As to any Partner, the amount set forth in its Subscription Agreement and as reflected in the books and records of the Partnership as its Capital Commitment, as such amount may be increased from time to time by such Partner at a Subsequent Closing as provided in Section 3.3(a).

Capital Contribution: As to any Partner at any time, the amount of capital actually contributed to the Partnership by such Partner pursuant to Section 3.1(a) and, where the context requires, by such Partner to any Alternative Vehicle, plus the amount of Direct Payments actually paid by such Partner pursuant to Section 3.1(b), Section 3.3(c) or Section 3.3(d) less amounts returned to a Partner pursuant to a Subsequent Closing in accordance with Section 3.3(b).

Capital Under Management: Prior to the expiration or termination of the Commitment Period (including pursuant to Section 3.2(e) or 4.10), the aggregate Capital Commitments of the Partners, and thereafter, Invested Capital.

Carried Interest: All amounts distributed to the General Partner pursuant to Sections 3.5(a) (iii) and (iv).

Carrying Value: With respect to any Partnership asset, the asset's adjusted basis for U.S. federal income tax purposes, except that the Carrying Values of all Partnership assets shall be adjusted to equal their respective fair market values (as determined by the General Partner) in accordance with the rules set forth in U.S. Treasury Regulations Section 1.704-1(b) (2) (iv) (f), except as otherwise provided herein, immediately prior to (a) the date of the acquisition of any additional Interest in the Partnership by any new or existing Partner in exchange for more than a de minimis Capital Contribution; or (b) the date of the distribution of more than a de minimis amount of Partnership property to a Partner other than a pro rata distribution; or (c) the date of

the termination of the Partnership under Section 708 (b) (i) (B) of the Code; provided that adjustments pursuant to clauses (a) and (b) above shall be made only if the General Partner in good faith determines that such adjustments are necessary or appropriate to reflect the relative economic interests of the Partners. The Carrying Value of any Partnership asset other than cash denominated in Dollars distributed to any Partner shall be adjusted immediately prior to such distribution to equal its Fair Market Value determined in accordance with Section 4.7. The Carrying Value of any Partnership asset subject to a Writedown shall be adjusted to equal the amount to which it is written down, determined pursuant to Section 3.5 (c). In the case of any asset that has a Carrying Value that differs from its adjusted tax basis, Carrying Value shall be adjusted by the amount of depreciation calculated for purposes of the definition of "Profits" and "Losses" rather than the amount of depreciation determined for U.S. federal income tax purposes.

Certificate of Limited Partnership: The Certificate of Limited Partnership of the Partnership, dated May 20, 2004, which was filed in the office of the Secretary of State of the State of Delaware on May 20, 2004 and all subsequent amendments thereto and restatements thereof.

Clawback Determination Date: As defined in Section 9.4(a).

Clawback Obligation: As defined in Section 9.4(a).

Code: The U.S. Internal Revenue Code of 1986, as the same may be amended from time to time, or any successor U.S. federal income tax code.

Commitment Period: The period from the First Closing Date through the third anniversary of the Final Closing Date.

Competing Fund: As defined in Section 4.6(a).

Cumulative Net Distributions: With respect to any Limited Partner, the excess, if any, of (a) the aggregate distributions of Investment Proceeds to such Limited Partner, less (b) the aggregate amount of Capital Contributions, other Direct Payments and payments pursuant to Section 5.2(b) by such Limited Partner.

Current Proceeds: Income from a Permanent Investment other than Disposition Proceeds (such as interest and dividends), net of Partnership Expenses and reserves therefor allocable to such proceeds in accordance with Section 6.3(b).

Defaulting Limited Partner: As defined in Section 8.4(b).

Direct Payments: As defined in Section 3.1(b).

Disposition: The sale, exchange, redemption, repayment, repurchase or other disposition by the Partnership of all or any portion of a Portfolio Investment for cash or for Marketable Securities which are to be distributed to the Partners pursuant to Section 3.4(b) and shall include the receipt by the Partnership of a liquidating dividend, distribution upon a sale of all or substantially all of the assets of a Portfolio Company or other like distribution of cash or of

Marketable Securities on such Portfolio Investment or any portion thereof which will be distributed to the Partners pursuant to Section 3.4(b) and shall also include the distribution in kind to the Partners of all or any portion of such Portfolio Investment as permitted hereby. A Disposition shall be deemed to include a security becoming worthless within the meaning of §165(g) of the Code.

Disposition Proceeds: All amounts received by the Partnership upon the Disposition of a Permanent Investment or Stake-Out Investment (including any extraordinary distribution made by a Portfolio Company), net of Partnership Expenses and reserves for Partnership Expenses in accordance with Section 6.3(b).

Dissolution Sale: All sales and liquidations by or on behalf of the Partnership of its assets in connection with or in contemplation of the winding-up of the Partnership.

Dollars or $: United States dollars.

Electing Media Company Limited Partner: As defined in Section 5.5.

ERISA: The U.S. Employee Retirement Income Security Act of 1974, as amended.

ERISA Partner: Any Limited Partner that is (a) an "employee benefit plan" within the meaning of Section 3(3) of ERISA that is subject to the provisions of Title I of ERISA, a "plan" within the meaning of Section 4975(e) (1) of the Code or an entity whose underlying assets constitute the assets of any "employee benefit plan" within the meaning of Section 3(3) of ERISA that is subject to the provisions of Title I of ERISA or a "plan" within the meaning of Section 4975(e) (1) of the Code.

Event of Dissolution: As defined in Section 9.1.

Fair Market Value: The value of any asset of the Partnership as determined in accordance with Section 4.7.

Family Entity: With respect to a Principal, any entity all of the ultimate beneficial owners of which are such Principal and the Immediate Family Members of such Principal.

Final Clawback Amount: As defined in Section 9.4(a).

Final Closing Date: The final closing date, which will take place no later than the ninth month anniversary of the First Closing Date.

Final Distribution: The distribution described in Section 9.3.

Final Valuation: As defined in Section 4.7(c) (i).

First Closing Date: The first closing of Capital Commitments to the Partnership occurring on the date hereof.

Fiscal Quarter: The calendar quarter or, in the case of the first and last fiscal quarters of the Partnership, the fraction thereof commencing on the Closing Date or ending on the date on which the winding-up of the Partnership is completed, as the case may be.

Fiscal Year: As defined in Section 2.8.

Follow-On Investment: A Portfolio Investment in an existing Portfolio Company or an Affiliate thereof.

Formula Price: As defined in Section 4.7(c)(i).

Full Investment: The time at which at least 75% of Capital Commitments have been drawn down or committed for Portfolio Investments.

General Partner: Goldin Capital Partners, L.P., a Delaware limited partnership, and any general partner substituted therefor in accordance with this Agreement.

General Partner Expenses: As defined in Section 6.1.

Giveback Amount: A Portfolio Investment Related Giveback Amount or an Other Giveback Amount.

Governmental Plan Partner: A Limited Partner that is a governmental plan within the meaning of Section 3(32) of ERISA.

Immediate Family Members: An individual's current spouse, parents-in-law, parents and lineal descendants (including adopted descendants of such individual or current spouse).

Indemnified Party: As defined in Section 4.3 (a).

Initial Investment Date: The actual closing date of the Partnership's first Portfolio Investment.

Interest: The entire limited partnership interest owned by a Limited Partner in the Partnership at any particular time, including the right of such Limited Partner to any and all benefits to which a Limited Partner may be entitled as provided in this Agreement, together with the obligations of such Limited Partner to comply with all the terms and provisions of this Agreement.

Interim Clawback Amount: The sum of the Portfolio Investment Related Interim Clawback Amount and the Other Interim Clawback Amount.

Interim Valuation: As defined in Section 4.7(c) (ii).

Invested Capital: As of any date shall mean the aggregate amount of Capital Contributions by the Limited Partners as of such date in respect of Portfolio Investments, less amounts distributed as of such date to Partners as a return of capital and the total Capital Contributions of all Partners relating to any Portfolio Investment which, by virtue of a complete

Writedown, has an Adjusted Cost of zero, and, in the judgment of the General Partner, requires no further management by the General Partner.

Investment Company Act: The U.S. Investment Company Act of 1940, as amended, as the same may be further amended from time to time.

Investment Management Agreement: The Investment Management Agreement, dated as of the date hereof, between the Partnership and the Manager.

Investment Proceeds: Current Proceeds and Disposition Proceeds.

Investors Committee: As defined in Section 5.4(a).

Key Person Event: As defined in Section 4.10.

Limited Partners: The parties shown as limited partners on the books and records of the Partnership, including any Person who has been admitted to the Partnership as a substituted or additional Limited Partner in accordance with this Agreement.

Majority (or other specified Percentage) in Interest: A "Majority in Interest" of the Limited Partners means, at any time, the Limited Partners holding a majority of the total Interests then entitled to vote in the Partnership, as determined on the basis of Capital Commitments. Any other specified percentage in Interest of the Limited Partners means, at any time, the Limited Partners holding the specified percentage of the total Interests then entitled to vote in the Partnership, as determined on the basis of Capital Commitments.

Manager: Goldin Capital Management, L.P., a Delaware limited partnership, or any successor-in-interest to its rights and obligations hereunder.

Management Fee: As defined in Section 6.2.

Marketable Securities: Securities that are traded on an established U.S. or foreign securities exchange, reported through the U.S. National Association of Securities Dealers, Inc. Automated Quotation System or comparable foreign established over-the-counter trading system, otherwise traded over-the-counter or traded on PORTAL (in the case of securities eligible for trading pursuant to Rule 144A under the Securities Act or any successor rule thereto ("Rule 144A")); provided that any such securities shall be deemed Marketable Securities only if they are freely tradable. Freely tradable for this purpose shall mean securities that, following their distribution by the Partnership to Limited Partners, would not be subject to any contractual restrictions on transfer, and would be either (A) transferable by a Limited Partner pursuant to a then effective registration statement under the Securities Act (or similar applicable statutory provisions in the case of foreign securities), or (B) transferable by the Limited Partners who are not Affiliates of the General Partner pursuant to Rule 144 under the Securities Act or any successor rule thereto (or similar applicable rule in the case of foreign securities).

Media Company: A Portfolio Company which directly or indirectly owns (i) a U.S. broadcast radio or television station, (ii) a U.S. cable television system, (iii) a U.S. "daily newspaper" (as such term is defined in Section 73.3555 of the rules and regulations of the

Federal Communications Commission ("FCC"), as the same may be amended from time to time), (iv) any U.S. communications facility operated pursuant to a license granted by the FCC and subject to the provisions of Section 310(b) of the Communications Act of 1934, as amended, or (v) any other business which is subject to FCC regulations under which the ownership of the Partnership in such Portfolio Company may be attributed to a Limited Partner for purposes of FCC regulations or under which the ownership of the Limited Partner in another business may be subject to limitation or restriction as a result of the ownership of the Partnership in such Portfolio Company.

Nonrecourse Deductions:  As defined in U.S.  Treasury Regulations Section 1.704-2(b). The amount of Partnership Nonrecourse Deductions for a Fiscal Year equals the net increase, if any, in the amount of Partnership Minimum Gain during that Fiscal Year, determined according to the provisions of U.S. Treasury Regulations Section 1.704-2(c).

Non-U.S. Limited Partners:  A person other than a United States person as defined in Section 7701 (a) (30) of the Code.

Non-Voting Interests:  As defined in Section 5.1(c).

Organizational Expenses:  All out-of-pocket costs and expenses incurred in connection with the organization of the Partnership and any related entities such as a feeder vehicle for non-U.S. investors, and the offering of interests in the Partnerships and such entities, including without limitation any related legal and accounting fees and expenses, travel expenses, out-of-pocket expenses; provided that the aggregate amount of Organizational Expenses shall not exceed $900,000.

Other Giveback Amount:  As defined in Section 5.2(c) (ii).

Other Interim Clawback Amount:  As defined in Section 5.2(c) (ii).

Parallel Investment Partnership:  As defined in Section 2.9.

Partner Nonrecourse Debt Minimum Gain:  An amount with respect to each partner nonrecourse debt (as defined in Treasury Regulations Section 1.704-2(b) (4)) equal to the Partnership Minimum Gain that would result if such partner nonrecourse debt were treated as a nonrecourse liability (as defined in Treasury Regulations Section 1.752-1(a) (2)) determined in accordance with Treasury Regulations Section 1.704-2(i)(3).

Partner Nonrecourse Deductions:  As defined in U.S.  Treasury Regulations Section 1.704-2 (i) (2).

Partners:  The General Partner and the Limited Partners.

Partnership:  Goldin Restructuring Fund, L.P., a Delaware limited partnership.

Partnership Media Company:  As defined in Section 5.5.

Partnerships:  The Partnership and the Parallel Investment Partnerships.

Partnership Expenses: As defined in Section 6.3 (a).

Partnership Minimum Gain: As defined in U.S. Treasury Regulations Section 1.704-2(b) (2) and 1.704-2(d).

Payment Date: As defined in Section 3.1(c) (i).

Percentage Interest: With respect to any Partner and any Portfolio Investment, the ratio of such Partner's Capital Contributions for that Portfolio Investment to the total Capital Contributions of all Partners for that Portfolio Investment; provided that for these purposes the Capital Contributions of each Partner with respect to a Portfolio Investment shall be adjusted to reflect any return of Capital Contributions pursuant to a Subsequent Closing; and provided, further, that for these purposes the Capital Contributions of each Partner for a Portfolio Investment shall be adjusted to reflect any changes to the Capital Account of such Partner as a result of any reduction in the Capital Account of a Defaulting Limited Partner pursuant to Section 8.4(d).

Permanent Investments: As defined in Section 4.1.

Permitted Transferee: Any Active Person or Principal's Immediate Family Members or Family Entity.

Person: Any individual, partnership, corporation, limited liability company, unincorporated organization or association, trust (including the trustees thereof, in their capacity as such), government (or agency or political subdivision thereof) or other entity.

Plan Assets Regulation: The regulations issued by the U.S. Department of Labor at Section 2510.3-101 of Part 2510 of Chapter XXV, Title 29 of the U.S. Code of Federal Regulations.

Portfolio Companies: As defined in Section 4.1.

Portfolio Investment Related Interim Clawback Amount: As defined in Section 5.2(c) (i).

Portfolio Investment Related Giveback Amount: As defined in Section 5.2(c) (i).

Portfolio Investments: Permanent Investments and Temporary Investments.

Preferred Return: shall mean, as of any time of determination, an amount equal to a cumulative return, calculated in the same manner as interest, compounded annually, on a Partner's Adjusted Capital Contributions to the date of such determination, at the rate of 8% per annum, to which each Partner shall be entitled and which shall be paid to each Partner from time to time in accordance with Section 3.5.

Principal: Harrison J. Goldin, David Pauker and Lawrence J. Krule.

Pro Rata Share: As defined in Section 3.1(c)(iii).

Proceeding: Any legal action, suit or proceeding by or before any court, arbitrator, governmental body or other agency.

Profits and Losses: For each Fiscal Year or other period, the taxable income or loss of the Partnership, or particular items thereof, determined in accordance with the accounting method used by the Partnership for U.S. federal income tax purposes with the following adjustments: (a) all items of income, gain, loss or deduction allocated pursuant to Section 10.3 shall not be taken into account in computing such taxable income or loss; (b) any income of the Partnership that is exempt from U.S. federal income taxation and not otherwise taken into account in computing Profits and Losses shall be added to such taxable income or loss; (c) if the Carrying Value of any asset differs from its adjusted tax basis for U.S. federal income tax purposes, any gain or loss resulting from a disposition of such asset shall be calculated with reference to such Carrying Value; (d) upon an adjustment to the Carrying Value of any asset pursuant to the definition of Carrying Value (other than an adjustment in respect of depreciation), the amount of the adjustment shall be included as gain or loss in computing such taxable income or loss; (e) if the Carrying Value of any asset differs from its adjusted tax basis for U.S. federal income tax purposes the amount of depreciation, amortization or cost recovery deductions with respect to such asset for purposes of determining Profits and Losses shall be an amount which bears the same ratio to such Carrying Value as the U.S. federal income tax depreciation, amortization or other cost recovery deductions bears to such adjusted tax basis (provided that if the U.S. federal income tax depreciation, amortization or other cost recovery deduction is zero, the General Partner may use any reasonable method for purposes of determining depreciation, amortization or other cost recovery deductions in calculating Profits and Losses); and (f) except for items in (a) above, any expenditures of the Partnership not deductible in computing taxable income or loss, not properly capitalizable and not otherwise taken into account in computing Profits and Losses pursuant to this definition shall be treated as deductible items.

Recall Amount: With respect to any Limited Partner, the sum of the amounts added to such Limited Partner's Unpaid Capital Commitment that are described in clauses (c) through (f) of the definition of "Unpaid Capital Commitment" in this Article I.

Reference Rate: The prime rate published in The Wall Street Journal or, if no such rate is published therein, the rate quoted from time to time by a New York money center bank selected by the General Partner.

Required Interest: As defined in Section 11.3(a)(ii).

Securities Act: The U.S. Securities Act of 1933, as amended as the same may be further amended from time to time.

Short-Term Investments: Short-term investments consisting of (a) United States government and agency obligations maturing within 180 days, (b) commercial paper rated not lower than A-1 by Standard & Poor's Corporation or P-1 by Moody's Investors Service, Inc. with maturities of not more than six (6) months and one (1) day, (c) interest-bearing deposits in United States banks and U.S. branches of foreign banks, in either case with an unrestricted capital surplus of at least $250,000,000 and having one of the ratings referred to above, maturing

9600899.13                                   10

within 180 days and (d) money market funds with assets of not less than $250,000,000 and the assets of which are reasonably believed by the General Partner to consist primarily of items described in one or more of the foregoing clauses (a), (b) and (c).

Short-Term Investment Proceeds: Income from sources other than Permanent Investments, net of Partnership Expenses and reserves therefor allocable to such income in accordance with Section 6.3(b).

Stake-Out Investment: Any investment held on a temporary basis (not exceeding one year) to facilitate the consummation of the Permanent Investment in the Portfolio Company, or otherwise in contemplation or connection therewith. A Stake-Out Investment held longer than one year shall be treated as a Permanent Investment, and a Stake-Out Investment may be designated at any earlier time by the General Partner as a Permanent Investment.

Subscription Agreement: Each of the several Subscription Agreements between the Partnership and the Limited Partners.

Subsequent Closings: As defined in Section 3.3(a).

Suspension Period: As defined in Section 4.10.

Tax Advances: As defined in Section 10.2.

Tax Exempt Limited Partner: Any Limited Partner (i) which is exempt from U.S. federal income taxation, including a Limited Partner which is exempt under Section 501 of the Code and which is subject to tax on "unrelated business taxable income" within the meaning of Section 512 of the Code or (ii) which is beneficially owned by Persons one or more of whom is so exempt and which has elected by notice to the General Partner to be treated as a "Tax Exempt Limited Partner" for purposes of this Agreement.

Transaction Fees: shall mean any net transactions fees (including organization fees, transaction fees, advisory fees, success fees, monitoring fees, break-up fees or directors fees) whether in cash or in kind payable to the Advisor or its Affiliates in connection with Portfolio Investments or proposed investments, in each case to the extent allocable to the Partnership's investment or proposed investment.

UBTI: Items of gross income taken into account for purposes of calculating unrelated business taxable income as defined in Section 512 and Section 514 of the Code.

United States or U.S.: The United States of America.

Unpaid Capital Commitment: As to any Partner as of any date, an amount equal to:

(a)    such Partner's Capital Commitments, minus

(b)    the aggregate amount of such Partner's Capital Contributions and other Direct Payments (including additional amounts thereon) made on or prior to such date, plus

9600899.13                    11

(c)     during the Commitment Period, all proceeds from the disposition of any investment that are distributed to such Partner on or prior to such date up to the aggregate amount of such Partner's Pro Rata Share of (i) Management Fees, (ii) Partnership Expenses and (iii) Organizational Expenses, plus

(d)     any amounts distributed or deemed distributed to Partners pursuant to Section 3.3(b) or 3.3(c), but not additional amounts thereon, plus

(e)     any amount representing a return of a Partner's Capital Contribution for a Temporary Investment upon the refinancing or other repayment of such Temporary Investment, if returned to such Partner within one year of the closing of such Temporary Investment, plus

(f)     the amount of any Capital Contribution by a Partner which is returned to such Partner on or prior to such date in lieu of its application toward a Portfolio Investment pursuant to Section 3.1(g) or 3.2(a).

Unrealized Investment:  Any Portfolio Investment that has not yet been the subject of a Disposition.

VCOC:  As defined in Section 4.9(a).

Writedown.  If, at the relevant time, the Fair Market Value of any Unrealized Investment is less than its Adjusted Cost, such Unrealized Investment shall as of the relevant date, be deemed to have been sold for its Fair Market Value on such date and immediately repurchased for its Fair Market Value.

## ARTICLE II

### General Provisions

2.1     Formation.     The parties hereto continue a limited partnership formed on May 20, 2004 pursuant to the Act.

2.2     Name.  The name of the Partnership shall be "Goldin Restructuring Fund, L.P." The General Partner is authorized to make any variations in the Partnership's name which the General Partner may deem necessary or advisable, provided that (a) such name include the designation "L.P." or the equivalent translation thereof and any other designation required by applicable law, (b) the General Partner shall promptly give notice of any such variation to the Limited Partners and (c) no variation shall result in a name that is the same or confusingly similar to the name of any Limited Partner, or that suggests an affiliation between the Partnership and such Limited Partner, in either case without such Limited Partner's prior approval.

2.3     Organizational Certificates and Other Filings; Limitations on Conduct of Business.  If requested by the General Partner, the Limited Partners shall promptly execute all certificates and other documents consistent with the terms of this Agreement necessary for the General Partner to accomplish all filing, recording, publishing and other acts as may be appropriate to comply with all requirements for (a) the formation and operation of a limited partnership under the laws of the State of Delaware, (b) the operation of the Partnership as an

entity or partnership in which the Limited Partners have limited liability, in all jurisdictions where the Partnership proposes to operate and (c) all other filings required to be made by the Partnership.

2.4   <u>Purpose</u>. The purpose of the Partnership is to make investments in debt, equity securities and other interests of the kind and nature described in the Confidential Offering Memorandum of the Partnership, managing and supervising such investments and to engage in such other activities as are permitted hereby or are incidental or ancillary thereto as the General Partner shall deem necessary or advisable, all upon the terms and conditions set forth in this Agreement.

2.5   <u>Principal Office</u>. The Partnership shall maintain its principal office at, and its affairs shall be conducted from 400 Madison Avenue, New York, New York 10017 or such other place or places within the United States as the General Partner may, with notice to the Limited Partners, decide.

2.6   <u>Registered Office and Registered Agent</u>. The address of the Partnership's registered office in the State of Delaware is c/o National Corporate Research, Ltd., 615 South DuPont Highway, County of Kent, City of Dover, State of Delaware 19901. The name and address of the Partnership's registered agent for service of process in the State of Delaware is National Corporate Research, Ltd., 615 South DuPont Highway, County of Kent, City of Dover, State of Delaware 19901. Such registered office and registered agent may be changed by the General Partner, provided that the General Partner shall notify the Limited Partners of such change within a reasonable period of time thereafter.

2.7   <u>Term</u>. The Partnership commenced upon the filing of the Certificate of Limited Partnership in the office of the Secretary of State of the State of Delaware and, unless earlier dissolved and terminated pursuant to Section 9.1, shall continue in business through the close of business on the seventh anniversary of the Final Closing Date, provided that the General Partner may, in its sole discretion extend the term of the Partnership for up to one year and, provided further, that the General Partner may, with the consent of the Investors Committee, extend the term of the Partnership for a second year.

2.8   <u>Fiscal Year</u>. The fiscal year ("Fiscal Year") of the Partnership shall be the calendar year or, in the case of the first and last fiscal years of the Partnership, the fraction thereof commencing on the Closing Date or ending on the date on which the winding-up of the Partnership is completed, as the case may be. The taxable year of the Partnership shall be determined under Section 706 of the Code. The General Partner shall have the authority to change the ending date of the Fiscal Year if the General Partner shall determine that such change is necessary or appropriate, provided that the General Partner shall promptly give notice of any such change to the Limited Partners.

2.9   <u>Parallel Investment Partnership</u>. The General Partner may establish one or more additional funds or other similar vehicles having terms substantially similar to those of the Partnership (each a "<u>Parallel Investment Partnership</u>") to facilitate the ability of certain types of investors to invest with the Partnership. Subject to applicable legal, tax and regulatory considerations, any such Parallel Investment Partnership will invest on a side-by-side basis with

13

the Partnership on effectively the same terms and conditions, sharing (a) in each Portfolio Investment pro rata in proportion to their Capital Commitments and similarly sharing any related investment expenses, (b) in other Partnership Expenses and Management Fees pro rata in proportion to Capital Under Management and (c) in Organizational Expenses pro rata in proportion to Capital Commitments. Any Parallel Investment Partnership shall be controlled by the General Partner or its Affiliates to the extent practicable in light of legal, tax and regulatory considerations. The Partnership and the Parallel Investment Partnerships shall sell their respective interests in the same Portfolio Company at the same time and on the same terms, pro rata based on their respective ownership interests in such Portfolio Company, subject to applicable legal, tax and regulatory considerations. Amounts contributed or committed to Parallel Investment Partnerships will be combined with amounts contributed or committed to the Partnership for purposes of determining whether the Partnership has achieved its targeted minimum or maximum commitment limits.

2.10    Alternative Investment Structure. (a) If the General Partner determines that for legal, tax, regulatory or other reasons it is in the best interests of the Partners that a Portfolio Investment be made through an alternative investment structure, the General Partner shall be permitted to structure the making of all or any portion of such Portfolio Investment outside of the Partnership, by requiring Partners to make such Portfolio Investment through a limited partnership or other entity (other than the Partnership) that will invest on a parallel basis with or in lieu of the Partnership, as the case may be ("Alternative Vehicle"). Subject to Section 3.2, the Partners investing through an Alternative Vehicle will be required to make Capital Contributions directly to each such Alternative Vehicle to the same extent, for the same purposes and on effectively the same terms and conditions as Partners are required to make Capital Contributions to the Partnership, and such Capital Contributions shall reduce the Unpaid Capital Commitments of the Limited Partners to the same extent as if Capital Contributions were made to the Partnership with respect thereto. Each Partner shall have the same economic interest in all material respects in Portfolio Investments made pursuant to this Section 2.10(a) as such Partner would have if such Portfolio Investments had been made solely by the Partnership, and the other terms of such Alternative Vehicle shall be effectively identical in all material respects to those of the Partnership to the maximum extent applicable; provided that the General Partner (or an Affiliate thereof) shall serve as the general partner or similar managing fiduciary of such Alternative Vehicle; and provided, further, that the provisions of any Alternative Vehicle with respect to termination, removal of the General Partner, indemnification and exculpation shall be identical in all material respects to those of the Partnership, subject to applicable legal, tax and regulatory considerations. Distributions of cash and other property and the allocations of income, gain, loss, deduction, expense and credit from such Alternative Vehicle, and the determination of allocations and distributions pursuant to Article III and of any Capital Contribution or other payment by a Partner pursuant to Section 5.2 or any Interim Clawback Amount or the Final Clawback Amount, shall be determined as if each Portfolio Investment made by such Alternative Vehicle were a Portfolio Investment made by the Partnership.

(b)    Notwithstanding any provision of this Section 2.10 to the contrary: prior to funding any Alternative Vehicle, the General Partner shall provide the Limited Partners investing through such Alternative Vehicle with an opinion of local counsel, upon which they may rely, to the effect that such vehicle (or the entity in which such vehicle invests) provides for the limited liability of such Limited Partners as a matter of the organizational documents of such vehicle (or

the entity in which such vehicle invests) and as a matter of local law to the same extent in all material respects as is provided to the Limited Partners under the Act and this Agreement.

    2.11   Withdrawal of Initial Limited Partner. Upon the admission of one or more Limited Partners to the Partnership at the Closing, the Initial Limited Partner shall (a) receive a return of any Capital Contribution made by him in such capacity to the Partnership, (b) withdraw as the Initial Limited Partner of the Partnership and (c) have no further right, interest or obligation of any kind whatsoever as a Partner in the Partnership.

<div align="center">

ARTICLE III
Capital Contributions and
Direct Payments; Distributions

</div>

    3.1   Capital Contributions and Direct Payments. (a) *Capital Contributions.* Subject to Section 3.2, each Partner agrees to make contributions to the capital of the Partnership in cash from time to time (but in no event prior to the Closing Date), payable in Dollars, in installments as follows:

    (i)   *With respect to any Capital Contribution for the making of Portfolio Investments generally*: At any time and from time to time (A) during the Commitment Period and (B) after the termination of the Commitment Period (solely in the case of any Portfolio Investment in which prior to the termination of the Commitment Period the Partnership has such Portfolio Investment is under active consideration), each Limited Partner shall, on any Payment Date, contribute to the Partnership its Pro Rata Share of the aggregate amount to be contributed by all Limited Partners to be used for Portfolio Investments, but a Limited Partner in no event shall be required to make such a Capital Contribution to the Partnership on any date in an amount greater than its Unpaid Capital Commitment as of such date;

    (ii)   *With respect to any Capital Contribution for the making of Follow-On Investments*: Notwithstanding Section 3.1(a)(i), at any time and from time to time during the term of the Partnership, each Limited Partner shall, on any Payment Date, contribute to the Partnership its Pro Rata Share of the aggregate amount to be contributed by all Limited Partners for a Follow-On Investment; provided that the aggregate Capital Contributions of any Limited Partner for Follow-On Investments as of any date after the Commitment Period shall not exceed the lesser of (A) such Limited Partner's Unpaid Capital Commitment as of such date and (B) 20% of such Limited Partner's Capital Commitment;

    (iii)   *With respect to any Capital Contribution for the payment of Partnership Expenses*: At any time and from time to time during the term of the Partnership, on any Payment Date, each Limited Partner shall contribute to the Partnership its Pro Rata Share of the aggregate amount to be contributed by all Limited Partners on such date for Partnership Expenses, but a Limited Partner in no event shall be required to make such a Capital Contribution to the Partnership on any date pursuant to this Section 3.1(a)(iii) in an amount greater than its Unpaid Capital Commitment as of such date;

(iv)    *With respect to any Capital Contribution for the payment of Organizational Expenses*:  At any time and from time to time during the term of the Partnership on any Payment Date, each Limited Partner shall contribute to the Partnership its Pro Rata Share of the aggregate amount to be contributed by all Limited Partners on such date for Organizational Expenses (which may be applied to reimburse the General Partner for Organizational Expenses it has incurred), but a Limited Partner in no event shall be required to make such a Capital Contribution to the Partnership on any date in an amount greater than its Unpaid Capital Commitment as of such date; and

(v)    *With respect to any Capital Contribution for payment of the Management Fee*:  At any time and from time to time during the term of the Partnership on any Payment Date, each Limited Partner shall contribute to the Partnership such Limited Partner's Pro Rata Share of the installment of the Management Fee then due and owing as determined in accordance with Section 6.2, but a Limited Partner in no event shall be required to make such a Capital Contribution to the Partnership on any date in an amount greater than its Unpaid Capital Commitment as of such date.

The amount which a Limited Partner is required to contribute on any Payment Date shall be specified by the General Partner in a Capital Call Notice delivered to such Limited Partner in respect of such Payment Date.  Except with respect to Capital Contributions pursuant to clause (v) of Section 3.1(a), the General Partner shall contribute to the Partnership on any Payment Date an amount equal to its Pro Rata Share of all of the Capital Contributions to be made on such date by all Partners.

(b)    *Direct Payments*.  Subject to Section 3.2, each Limited Partner agrees to make payments ("Direct Payments") directly to the General Partner or the Manager, as the case may be, in cash from time to time, payable in Dollars, in installments.  On or promptly following the First Closing Date and from time to time thereafter, each Limited Partner shall reimburse the General Partner for such Limited Partner's Pro Rata Share of the aggregate amount to be paid by all Limited Partners for the Organizational Expenses, and a Capital Call Notice shall be delivered in respect of such Direct Payments specifying the Payment Date therefor.

For purposes of maintaining Capital Accounts and calculating Profits and Losses hereunder, (i) Direct Payments made pursuant to this Section 3.1(b) or Section 3.3 (but excluding any additional amounts paid pursuant to Section 3.3) shall be treated as if they were contributed to and paid by the Partnership, and the General Partner shall be treated as if it had contributed to the Partnership its Pro Rata Share of Organizational Expenses for which it has not been reimbursed pursuant to Sections 3.1(a) (iv) and 3.1(b) above and (ii) refunds of Direct Payments pursuant to Section 3.3 (but excluding any additional amounts paid pursuant to Section 3.3) shall be treated as if distributions had been made from the Partnership to the Partners receiving such refunds of Direct Payments, but such refunds shall be ignored for purposes of Section 3.5.

(c)    *Related Definitions*.

(i)    A "Payment Date" shall mean a date on which Partners are required to make Capital Contributions or Direct Payments, which date:

(A)    shall be specified in a Capital Call Notice delivered to each Limited Partner from which a Capital Contribution or Direct Payment is required on such date; and

(B)    except as provided in Sections 3.2(b), 3.2(c), 4.2(c) and 8.4(f), shall be at least ten (10) Business Days after the date of delivery of a Capital Call Notice.

(ii)    A "Capital Call Notice" shall mean a written notice requiring Capital Contributions or Direct Payments, which notice shall:

(A)    specify the purpose for which the Capital Contributions or Direct Payments are required to be made;

(B)    in the case of a Capital Call Notice with respect to the anticipated making of a Portfolio Investment, specify such Limited Partner's Pro Rata Share of the Capital Contributions or Direct Payments required to be made by the Limited Partners and the method of calculation thereof.

(iii)    A Partner's "Pro Rata Share" of the aggregate Capital Contributions to be made by Partners on any Payment Date:

(A)    for purposes of making a Portfolio Investment shall, subject to Section 3.2, mean the percentage that such Partner's Capital Commitment as of such date represents of the aggregate Capital Commitments as of such date of all Partners from which a Capital Contribution is required on such date;

(B)    for Organizational Expenses shall mean the percentage that a Partner's Capital Commitments as of such date represents of the aggregate Capital Commitments of all Partners as of such date; and

(C)    for Partnership Expenses shall mean the percentage that such Partner's Capital Commitment as of such date represents of the aggregate Capital Commitments of all Partners as of such date; and

(D)    for Management Fees, shall be determined for Limited Partners only, and shall mean the percentage that such Limited Partner's Capital Commitment as of such date represents of the aggregate Capital Commitments of all Limited Partners as of such date.

(d)    *Method of Funding; No Compensation or Loans.* Capital Contributions and Direct Payments shall be made by wire transfer of immediately available funds to the account specified in the related Capital Call Notice. Other than as set forth in this Article III, no Partner shall be entitled to any interest or compensation by reason of its Capital Contributions or by reason of serving as a Partner. No Partner shall be required to lend any funds to the Partnership.

(e)    *Register.* The General Partner shall reflect in the books and records of the Partnership the addresses of Partners and changes thereto and the transfer of Interests and

changes in Capital Commitments which are accomplished in accordance with the provisions hereof.

(f)    *General Partner Commitment*.  The General Partner shall commit at least 0.2% of the aggregate Capital Commitments of all Partners to the Partnership.  The General Partner and its Affiliates shall commit in the aggregate at least 1.5% of the aggregate Capital Commitments of all Partners to the Partnership.

(g)    *Unapplied Contributions*.  If the General Partner determines that a proposed Portfolio Investment in respect of which Partners have made Capital Contributions will not be consummated (e.g., because a definitive merger, stock purchase, asset purchase or other acquisition agreement relating thereto has been terminated), the General Partner may, in its sole discretion, refund to the Partners which made such Capital Contributions the amounts of such Capital Contributions, net of Partnership Expenses and reserves therefor in accordance with Section 6.3(b).  If the General Partner determines that a proposed Portfolio Investment in respect of which Partners have made Capital Contributions will not require the full amount of Capital Contributions made therefor, the General Partner shall, refund to the Partners which made such Capital Contributions, pro rata to the amounts of such Capital Contributions, the amount of such Capital Contributions which exceeds the portion required to consummate such Portfolio Investment net of Partnership Expenses and reserves therefor in accordance with Section 6.3(b).  Any amount refunded pursuant to this Section 3.1(g) shall be treated as never having been contributed to the Partnership.

(h)    *Foreign Investments*.  Prior to making a Portfolio Investment outside the United States, Canada or the United Kingdom, the General Partner shall have a good faith belief that with respect to such investment, the Limited Partners will have limited liability to the same extent in all material respects as is provided to the Limited Partners under the Act and this Agreement.  The General Partner shall use its reasonable best efforts to ensure that no such Portfolio Investment shall cause Limited Partners to become subject to income tax filing requirements in any jurisdiction other than the United States; provided that, if the General Partner determines that it is economically burdensome to the Partners to utilize an investment structure that avoids such filing requirement, the General Partner may proceed in a manner that imposes a tax filing requirement if the General Partner uses reasonable best efforts to ensure that no such filing must be made by investors (or holders of direct or indirect interests therein) who have notified the General Partner in writing at least 30 days in advance of the Partnership committing to make such filing requirement is unacceptable.  In that connection, the General Partner may (where such approaches would be effective to avoid a tax filing) offer such investors the option either to participate alone through the alternative structure (the additional cost of which would be born by such investor) or to be excused from participating in the Portfolio Investment to which such requirement relates.  For purposes of this Section 3.1(h), all Limited Partners may be presumed to be U.S. persons unless the General Partner receives, at least 30 days in advance of the Partnership committing to make the investment, written notice from a Limited Partner to the contrary.

9600899.13                                         18

9600899.13

participate in such Portfolio Investment and the amount of its Capital Contribution that otherwise would have been used to make the Portfolio Investment shall be treated as never having been contributed to the Partnership. The opinion referred to in the preceding sentence shall be a written opinion of counsel to such Limited Partner (which opinion and counsel shall be reasonably satisfactory to the General Partner, and which counsel (i) in the case of a Limited Partner which is an institutional investor, may be staff counsel regularly employed by such institutional investor and (ii) in the case of a Governmental Plan Partner, may be the office of the attorney general (or similar functionary) that regularly serves as counsel for such Governmental Plan Partner), that such Limited Partner's participation (or in the case of an excuse from part but not all of its obligation, the part of its participation in question) in such Portfolio Investment is reasonably likely to cause a material violation of any law, regulation or order (or, in the case of a Governmental Plan Partner, any administrative interpretation or promulgated, investment guideline) to which such Limited Partner is subject and provided the foregoing would apply to such Limited Partner, or the loss of any such Partner's special tax status under federal or state law if such loss would have a material adverse affect on such Partner.

(b)     *Subsequent Capital Call in the Event of Excuse.* If the opinion referred to in Section 3.2(a) is delivered, the General Partner may then, if necessary, deliver a new notice to each other Limited Partner which is able to participate in such Portfolio Investment indicating the additional payment with respect to its Capital Contribution to be made in respect of such Portfolio Investment, and each such Limited Partner, subject to Section 3.2 (a), shall make such additional payment within five (5) days after having been given such new notice. Additional payments called for pursuant to this Section 3.2(b) shall be made by each such other Limited Partner in an amount which bears the same ratio to the aggregate of the additional amounts payable by all such other Limited Partners as such other Limited Partner's Capital Commitment bears to the Capital Commitments of all such other Limited Partners; provided that no Partner shall be obligated to contribute an amount in excess of such Partner's Unpaid Capital Commitment.

(c)     *Exclusion.* The General Partner may exclude a particular Limited Partner from participating in all or any part of a Portfolio Investment if the General Partner determines in good faith that:

(i)     such Limited Partner's participation (or in the case of an exclusion from part but not all of its participation, the part of its participation in question) in such Portfolio Investment will likely result in substandard returns due to tax rules or other circumstances (or in the case of an exclusion from part but not all of its participation, the part of its participation in question), a significant delay, extraordinary expense or materially adverse effect on the Partnership or any of its Affiliates (other than an Affiliated Investor), any Portfolio Company or future Portfolio Investments, including the ability of the Partnership to consummate a prospective Portfolio Investment, is likely to result from such Limited Partner's participation in such Portfolio Investment; or

(ii)     there is a reasonable likelihood that such Limited Partner's participation (or in the case of an exclusion from part but not all of its participation, the part of its participation in question) in such Portfolio Investment would cause a violation of any law, regulation or order to which such Limited Partner is subject;

provided that the General Partner may, in its sole discretion, offer the Limited Partner the opportunity to cure the condition giving rise to the exclusion, but only to the extent that the General Partner deems it practicable to cure in light of any risk of delay or cost that would harm the Partnership. Such determination shall be communicated to such Limited Partner as soon as practicable, and if possible, at or prior to the time that the General Partner delivers Capital Call Notices relating to the Capital Contributions in question to the other Limited Partners, and, if possible, such Capital Call Notices shall provide the amount of any additional capital which such other Limited Partners shall be required to contribute as a result of the developments set forth above or, if such determination is not made until after a Capital Call Notice for such Portfolio Investment is delivered to the other Limited Partners (but in any event within ten (10) calendar days after the consummation of such Portfolio Investment), the General Partner may then deliver a new notice to each other Limited Partner which is able to participate in such Portfolio Investment indicating the additional payment with respect to its Capital Contribution to be made in respect of such Portfolio Investment, and, subject to Section 3.2(a) and the proviso set forth in this Section 3.2 (c), each such other Limited Partner shall make such additional payment on the Payment Date in respect of such Portfolio Investment. Additional payments called for pursuant to this Section 3.2(c) shall be made by each such other Limited Partner in an amount which bears the same ratio to the aggregate of the additional amounts payable by all such other Limited Partners as such other Limited Partner's Capital Commitment bears to the Capital Commitments of all such other Limited Partners; provided that no Partner shall be obligated to contribute an amount in excess of such Limited Partner's Unpaid Capital Commitment.

(d)    *No Commitment Reduction.* The Unpaid Capital Commitment of any Limited Partner excused or excluded from participation in a Portfolio Investment pursuant to this Section 3.2 shall not be reduced as a result of such excuse or exclusion.

(e)    *Cancellation by General Partner.* The General Partner at any time may in its sole discretion cancel the obligation of all Partners to make Capital Contributions for new Portfolio Investments (i) after Full Investment or the occurrence of a Key Person Event or (ii) if, in the good faith judgment of the General Partner, changes in applicable law, regulation, case law, judicial or administrative order or decree or governmental license or permit, or any interpretation thereof by any governmental or regulatory authority or court of competent jurisdiction or in business conditions make such cancellation necessary or advisable in the interests of the Partners.

(f)    *Capital Contribution Limits.* If any Limited Partner is not required to make a Capital Contribution in accordance with paragraphs (b), (c) or this paragraph (f) of this Section 3.2 because such Capital Contribution would be in excess of such Limited Partner's Unpaid Capital Commitment then, subject to Section 3.2(a) and the proviso set forth in this Section 3.2 (f), the General Partner shall send to the other Limited Partners which are not subject to such constraint and which are otherwise able to participate in such Portfolio Investment an additional Capital Call Notice providing the amount of any additional Capital Contributions which such other Limited Partners shall be required to make as a result of such excess not being funded by such Limited Partner. Additional payments called for pursuant to this Section 3.2(f) shall be made by each such other Limited Partner in an amount which bears the same ratio to the aggregate of the additional amounts payable by all such other Limited Partners as such other Limited Partner's Capital Commitment bears to the Capital Commitments of all such other

Limited Partners; provided that no Limited Partner shall be obligated to contribute an amount in excess of such Limited Partner's Unpaid Capital Commitment. The provisions of this Section 3.2(f) shall operate successively until either all Limited Partners able to participate in such Portfolio Investment are subject to the restriction set forth above or the full amount of Capital Contributions to be made by Limited Partners has been provided for.

(g)    *Refunded Contributions.* For purposes of determining the Unpaid Capital Commitment of a Partner who receives a refund of a Capital Contribution as a result of making a Capital Contribution from which such Partner is subsequently excused as provided in Section 3.2(a) or excluded as provided in Section 3.2(c), the amount refunded shall be treated as never having been contributed to the Partnership. If during the period between the contribution and a refund of such amount, the Partners have made Capital Contributions for another Portfolio Investment or for any other purpose in ratios that were incorrect in light of the preceding sentence, then the General Partner shall require such additional Capital Contributions, and shall refund such amounts, as are necessary to adjust the Capital Contributions of Partners for such other Portfolio Investment or other purpose to the correct ratio.

3.3    Subsequent Closings. (a) The General Partner may, in its sole discretion, accept one or more additional Limited Partners or permit any existing Limited Partner to increase its Capital Commitment at one or more subsequent closings (each a "Subsequent Closing"); provided that no Subsequent Closing shall occur later than nine months after the First Closing Date. The General Partner shall increase its Capital Commitment at each Subsequent Closing, so that its Capital Commitment represents at least 0.2% of all Capital Commitments. The General Partner and its Affiliates shall increase their respective Capital Commitments at each Subsequent Closing so that they commit in the aggregate at least 1.5% of the aggregate Capital Commitments of all Partners to the Partnership.

(b)    *Capital Contributions at Subsequent Closing for Portfolio Investments and Partnership Expenses.*

(i)    Subject to Section 3.2, each Limited Partner that is admitted or increases its Capital Commitment at a Subsequent Closing shall (A) with respect to each Portfolio Investment then still held by the Partnership (or, as applicable, any Alternative Vehicle), make a Capital Contribution at such Subsequent Closing equal to its Pro Rata Share (calculated without taking into account the Capital Commitments of any Partners that defaulted in, or were excused or excluded from, making Capital Contributions for such Portfolio Investment) of the aggregate amount of Capital Contributions, if any, previously contributed by Limited Partners for the making of such Portfolio Investment and (B) make a Capital Contribution at such Subsequent Closing equal to its Pro Rata Share of the aggregate amount of Capital Contributions, if any, previously contributed by Limited Partners for Partnership Expenses, plus an additional amount on each portion of each such Capital Contribution relating to a previous contribution at the Reference Rate plus 2% from the date of each such previous contribution to such date, prorated based upon the actual number of days elapsed in such period over a 365-day year. Each such Limited Partner shall be deemed to have made a Capital Contribution with respect to each such Portfolio Investment in an amount equal to the product of (x) a fraction the numerator of which is such Limited Partner's Capital Contribution (excluding additional

amounts) for such Portfolio Investment after giving effect to such admission or increase and the denominator of which is the aggregate amount of all Limited Partners' Capital Contributions (excluding additional amounts) for such Portfolio Investment after giving effect to such admission or increase and (y) the amount of all Limited Partners' Capital Contributions (excluding additional amounts) with respect to such Portfolio Investment. The General Partner shall distribute the proceeds from such additional Capital Contributions and additional amounts among the Limited Partners that were admitted at prior closings in proportion to the difference between the Capital Contributions which each such Limited Partner has already made for such Portfolio Investments and Partnership Expenses and such Limited Partner's Pro Rata Share of such amounts after giving effect to such admission or increase; provided that in the case of prior Portfolio Investments, the amount of such distributions shall be calculated separately with respect to each such Portfolio Investment and without taking into account the Capital Commitments of any Partners that defaulted in, or were excused or excluded from, making Capital Contributions for such Portfolio Investment. The additional amount paid to the Partnership pursuant to this Section 3.3(b) shall be treated solely for purposes of maintaining Capital Accounts pursuant to this Agreement as though paid directly to existing Limited Partners by the incoming Limited Partners making such payment.

(ii)    Notwithstanding Section 3.3(b) (i) above, if, in the determination of the General Partner in its sole discretion, a Capital Contribution required to be made by any Limited Partner as determined pursuant to Section 3.3(b) (i) shall provide such Limited Partner with an inaccurate Percentage Interest in the Portfolio Investments of the Partnership (and any Alternative Vehicle formed pursuant to Section 2.10) because of material changes in the value of such Portfolio Investments, the General Partner shall inform such Limited Partner prior to the date of its Subsequent Closing of the Capital Contribution that such Limited Partner will instead be required to make at such Subsequent Closing, which shall be determined by the General Partner such that the Capital Account balance of such Limited Partner shall bear the same ratio to the aggregate of the Capital Account balances of all Limited Partners (adjusted to reflect the adjustments to the Carrying Value of the Partnership's assets immediately prior to such Subsequent Closing and the return of Capital Contributions to existing Limited Partners pursuant to this Section 3.3(b)) as the Capital Commitment of such Limited Partner bears to the aggregate of the Capital Commitments of all Limited Partners; provided that no Limited Partner shall be allowed to acquire an interest in an existing Portfolio Investment at any Subsequent Closing at a discount to the original acquisition cost of such Portfolio Investment unless such action is consented to by a Majority in Interest of the then existing Limited Partners.

(c)    *Direct Payments at Subsequent Closing for Organizational Expenses.* Each Limited Partner that is admitted or increases its Capital Commitment at a Subsequent Closing shall make a Direct Payment to the General Partner at such Subsequent Closing in an amount such that such Limited Partner's Direct Payments for Organizational Expenses is equal to its Pro Rata Share of the Organizational Expenses to be paid by all Limited Partners, plus an additional amount thereon at the Reference Rate plus 2% from the Initial Investment Date to such date, pro rated based upon the actual number of days elapsed in such period over a 365-day year. The General Partner shall distribute the proceeds from such Direct Payments and additional amounts

among the Limited Partners that were admitted at prior closings in proportion to the difference between the Direct Payments which each such Limited Partner has already made for Organizational Expenses and such Limited Partner's Pro Rata Share of Organizational Expenses to be paid by all Limited Partners after giving effect to such admission or increase.

(d)   *Direct Payments at Subsequent Closing for Management Fee.*  Each Limited Partner that is admitted or increases its Capital Commitment at a Subsequent Closing shall make a Capital Contribution to the Partnership at such Subsequent Closing for the payment of the Management Fee based upon such Limited Partner's Capital Commitment or increased Capital Commitment, as applicable, with respect to the period from the Initial Investment Date until the end of the Management Fee period in which such Subsequent Closing occurs (calculated pro-rata for the number of days in such period, based upon a 365-day year), plus an additional amount thereon at the Reference Rate from the Initial Investment Date to the date of such Subsequent Closing, pro rated based upon the actual number of days elapsed in such period over a 365-day year.

(e)   *Waiver of Additional Amounts.*  Notwithstanding the foregoing, the General Partner may waive the payment by any Limited Partner of additional amounts pursuant to this Section 3.3 in connection with a Subsequent Closing if the General Partner determines in its sole discretion that (i) such Limited Partner has made adequate assurances to the Partnership of its participation in a Subsequent Closing prior to the Closing Date and (ii) such waiver is, in the sole discretion of the General Partner, determined to be in the best interests of the Partnership.

3.4 Distributions - - General Principles

(a)   Generally.  Except as otherwise expressly provided herein, no Partner shall have the right to withdraw capital from the Partnership or to receive any distribution or return of its Capital Contribution. Distributions of Partnership assets that are provided for in this Article III or in Article IX shall be made only to persons who, according to the books and records of the Partnership, were the holders of record of Interests in the Partnership on the date determined by the General Partner as of which the Partners are entitled to any such distributions, or the assignees of such holders of record.

(b)   *Distributions In Kind of Marketable Securities.*

(i)   In addition to cash distributions, distributions pursuant to this Article III may be made all or in part in Marketable Securities but may not otherwise be made in kind (except in connection with the dissolution and winding up of the Partnership or in respect of the withdrawal of a Limited Partner); provided that any distribution of Marketable Securities pursuant to this Article III shall be made in accordance with the following:

(A)   the General Partner shall give at least ten (10) days' prior notice of any proposed distribution of Marketable Securities pursuant to this Section 3.4(b); provided that such notice shall not specify the issuer or the date or amount of the distribution;

(B)    the General Partner shall offer to each Limited Partner at such Limited Partner's election the right either to receive a distribution in kind of such Marketable Securities (pro rata in the same proportions as if such securities were cash in an amount equal to their Fair Market Value) or to have the Partnership dispose, as soon as reasonably practical, in the sole judgment of the General Partner, of all or any portion of such Marketable Securities that otherwise would have been distributed to such Limited Partner at such price and on such terms as the General Partner shall determine in good faith to be then achievable and to distribute to such Limited Partner instead the proceeds from such disposition, and a Limited Partner shall be deemed to have elected to receive a distribution in kind unless the General Partner shall have received a written notice from such Limited Partner at least six (6) days prior to the date of distribution that such Limited Partner has elected to have the Partnership make such disposition and distribute to such Limited Partner the proceeds therefrom;

(C)    if a Limited Partner elects to have the Partnership make a disposition of Marketable Securities as described in (B) above, (1) such electing Limited Partner shall bear all of the expenses (including, without limitation, underwriting costs and brokerage commissions) of such disposition, (2) the Partnership shall be treated (x) as having distributed the Marketable Securities to such Limited Partner in an in-kind distribution at the same valuations received by other limited partners accepting the in-kind distribution pursuant to Section 4.7(c) and (y) as having sold such Marketable Securities on behalf of the Limited Partner and (3) the Capital Account of such Limited Partner shall be adjusted as provided in Section 3.4(b) (iii);

(D)    the Partnership may employ a broker to dispose of such Marketable Securities; and

(E)    the calculation of the Carried Interest shall be based in all cases on the Fair Market Value of the Marketable Securities to be distributed in kind to the Limited Partners determined in accordance with Section 4.7 (whether or not any Limited Partner elects to receive cash).

(ii)    The General Partner, in its sole discretion, may elect to receive distributions in respect of its Carried Interest in either cash or Marketable Securities or a combination thereof; provided, however that any non-Pro Rata distribution of cash to the General Partner shall require the approval of the Investors Committee.

(iii)    Except as provided in this Section 3.4(b), distributions consisting of both cash and Marketable Securities shall be made to each Partner receiving such distributions in equal proportions of cash and such Marketable Securities, to the extent practicable.

(iv)    Except as otherwise provided in this Agreement, assets distributed in kind shall be deemed to have been sold for cash for their Fair Market Value determined in

accordance with Section 4.7. Upon the making of a distribution in kind, the Capital Accounts of the Partners receiving such distribution shall be reduced by the Fair Market Value of the property distributed and the Capital Accounts of the Partners shall be adjusted to reflect gain or loss deemed to have been realized in respect of the deemed sale.

(c)    *Timing of Distributions.*  Distributions shall be made at the times provided below:

(i)    Current Proceeds and Disposition Proceeds from a Permanent Investment (net of reasonable reserves to meet Partnership obligations, and required tax withholdings) shall be distributed as soon as practicable, but in no event later than 30 days following realization.

(ii)    Short-Term Investment Proceeds (net of reasonable reserves to meet Partnership obligations, and required tax withholdings) shall be distributed as soon as practicable following the end of the Fiscal Quarter in which such Short-Term Investment Proceeds are received by the Partnership, but in no event later than 30 days following such Fiscal Quarter end, or more often in the sole discretion of the General Partner.

(d)    *Partial Dispositions.*  For all purposes of this Agreement, whenever a portion of a Portfolio Investment, (but not the entire Portfolio Investment) is the subject of a Disposition (or a Writedown), that portion shall be treated as having been a separate Portfolio Investment from the portion of the Portfolio Investment that is retained by the Partnership (or not written-down), and prior Current Proceeds distributions, Short-Term Investment Proceeds distributions and Capital Contributions for the Portfolio Investment shall be treated as having been divided between the sold (or written-down) portion and the retained (or not written-down) portion pro rata based on the original cost of such Portfolio Investment.

(e)    *Subsequent Investment Allocations.*  For all purposes of this Agreement, whenever an investment is made in the same type of security of an entity in which a Portfolio Investment previously has been made, such subsequent investment shall be treated as a separate Portfolio Investment from the Portfolio Investment previously made, and the Capital Contributions for, and Short-Term Investment Proceeds, Investment Proceeds and Carried Interest amounts subsequently received from, such entity shall be divided between the prior investment and the subsequent investment based upon the relative amounts invested by the Partnership in such prior and subsequent investments or in such other manner as the General Partner shall determine with the approval of the Investors Committee.

(f)    *Taxes.*  The amount of any taxes paid by or withheld from receipts of the Partnership allocable to a Partner from a Portfolio Investment shall be determined in good faith by the General Partner based upon the extent to which the payment or withholding of such taxes reduced Current Proceeds or Disposition Proceeds, as the case may be, otherwise distributable to such Partner as provided herein. Such amounts shall be deemed to have been distributed to such Partner as Current Proceeds or Disposition Proceeds.

(g)    *Stake-Out Investments.*  A Stake-Out Investment which is disposed of, refinanced or otherwise repaid, where the Capital Contributions relating thereto are returned to the Partners

9600899.13                          26

within one year following the date of the closing of such Stake-Out Investment, shall be added to the Unpaid Capital Commitments of such Partners.

        3.5      Amounts and Priority of Distributions

      (a)     Distributions of Investment Proceeds shall be paid in the following order of priority:

          (i)     First, to the Partners pro rata based on their Adjusted Capital Contributions, until each such Partner has received an amount equal to its Adjusted Capital Contributions;

          (ii)    Second, to the Partners who have accrued and unpaid Preferred Returns, in proportion with such accrued and unpaid Preferred Returns, until each such Partner has received an aggregate amount equal to the Preferred Return;

          (iii)   Third, to the General Partner until the General Partner has received under this clause (iii) 20% of the sum of all distributions made under clause (ii) and this clause (iii); and

          (iv)   Thereafter, (A) 20% to the General Partner and (B) 80% to the Partners (including the General Partner), pro rata, based on their Capital Contributions.

      (b)    *Distributions of Short-Term Investment Proceeds.* Each distribution of Short-Term Investment Proceeds shall be divided among all Partners (including the General Partner) pro rata in proportion to their respective proportionate interests in the Partnership property or funds that produced such Short-Term Investment Proceeds, as reasonably determined by the General Partner. Short-Term Investment Proceeds will not be considered in determining the Carried Interest of the General Partner.

      (c)    *Effect of Giveback Payments.* Any amounts returned to the Partnership by a Partner pursuant to Section 5.2 shall reduce the amount of distributions such Partner is deemed to have received (as of the date such amounts are returned) for all purposes hereof.

<div align="center">ARTICLE IV<br>The General Partner</div>

        4.1     Guidelines for Investments. (a) The Partnership and any Alternative Vehicle shall make investments in accordance with the Confidential Offering Memorandum of the Partnership (the securities in which the Partnership or any such Alternative Vehicle has actually invested (other than Temporary Investments) or the securities issued as a dividend thereon, in a reclassification with respect thereto or in an exchange therefor, are referred to herein as "Permanent Investments", and the issuers thereof are referred to herein as "Portfolio Companies"). In addition, at such time as any funds of the Partnership or an Alternative Vehicle are not invested in Portfolio Investments, distributed to the Partners or applied towards the expenses of the Partnership or such Alternative Vehicle, such funds may be invested in Short-Term Investments.

9600899.13

<div align="center">27</div>

(b)    (i) Total investments by the Partnership (at cost) (A) in Portfolio Companies within any single industry sector may not exceed 30% of aggregate Capital Commitments (at the date of investment); provided that aggregate Capital Commitment prior to the Final Closing Date for these purposes shall be assumed to be $200 million; and (B) in any single Portfolio Company (or Affiliated Portfolio Companies) may not exceed 20% of aggregate Capital Commitments (at the date of investment); provided that prior to the Final Closing Date, the total investment by the Partnership (at cost) in any single Portfolio Company (or Affiliated Portfolio Companies) may not exceed the greater of (A) 20% of aggregate Capital Commitments or (B) $20 million. Any violation of the limitations in this Section 4.1(b)(i) after the Final Closing Date which results from aggregate Capital Commitments not exceeding $200 million shall not be deemed a violation of this Section 4.1(b).

(ii)    The Partnership may make investments in excess of the limits set forth in Section 4.1(b) (i) with the approval of the Investors Committee.

4.2    Powers of the General Partner.  (a)  The management, operation and policy of the Partnership shall be vested exclusively in the General Partner, which shall have the power by itself and shall be authorized and empowered on behalf and in the name of the Partnership to carry out any and all of the objects and purposes of the Partnership and to perform all acts and enter into and perform all contracts and other undertakings that it may in its sole discretion deem necessary or advisable or incidental thereto, all in accordance with and subject to the other terms of this Agreement.  The General Partner shall comply with all requirements under the Act and make all required filings in jurisdictions where it operates, as necessary to maintain the limited liability status of the Limited Partners, except where the failure to file or comply would not have a material adverse effect on the business of the Partnership or the potential liability of the Limited Partners.

(b)    Without limiting the foregoing general powers and duties, the General Partner is hereby authorized and empowered on behalf and in the name of the Partnership, or on its own behalf and in its own name, or through agents (including the Manager), as may be appropriate, subject to the limitations contained elsewhere in this Agreement, to:

(i)    make all decisions concerning the investigation, solicitation, origination, selection, development, negotiation, acquisition, management, structuring, restructuring, commitment to or monitoring of and Disposition of Portfolio Investments;

(ii)    direct the formulation of investment policies and strategies for the Partnership, and select and approve the investment of Partnership funds, all in accordance with the limitations of this Agreement;

(iii)    acquire, hold, sell, transfer, exchange, pledge and dispose of Portfolio Investments, and exercise all rights, powers, privileges and other incidents of ownership or possession with respect to Portfolio Investments, including, without limitation, the voting of securities of Portfolio Companies, the approval of a restructuring of an investment in a Portfolio Company, participation in arrangements with creditors of a Portfolio Company, the institution and settlement or compromise of suits and

administrative proceedings with respect to a Portfolio Company and other similar matters with respect to a Portfolio Company;

    (iv)    open, maintain and close bank accounts and draw checks or other orders for the payment of money and open, maintain and close brokerage, money market fund and similar accounts;

    (v)    hire for usual and customary payments and expenses placement agents, consultants, brokers, attorneys, accountants and such other agents and employees for the Partnership as it may deem necessary or advisable, and authorize any such agent or employee to act for and on behalf of the Partnership;

    (vi)    enter into, execute, maintain and/or terminate contracts, undertakings, agreements and any and all other documents and instruments in the name of the Partnership, and do or perform all such things as may be necessary or advisable in furtherance of the Partnership's powers, objects or purposes or to the conduct of the Partnership's activities, including entering into acquisition agreements to make or dispose of Portfolio Investments which may include such representations, warranties, covenants, indemnities and guaranties as the General Partner deems necessary or advisable;

    (vii)    act as the "tax matters partner" under the Code and in any similar capacity under state, local or foreign law;

    (viii)    make, in its sole discretion, any and all elections for federal, state, local and foreign tax matters, including any election to adjust the basis of Partnership property pursuant to Sections 734(b), 743(b) and 754 of the Code or comparable provisions of state, local or foreign law; and

    (ix)    to borrow and to pledge Partnership assets as collateral therefor and to grant to a lender and/or pledgee the right to enforce such lenders or pledgees' rights with respect to such borrowings and pledges.

(c)    *Borrowing.*

    (i)    The General Partner shall have the right, at its option, to cause the Partnership to borrow money from any Person for the purpose of (A) providing interim financing prior to the receipt of Capital Contributions and (B) exercising, exchanging or converting options; provided that (x) any such borrowings from the General Partner, any of its Affiliates or any of their respective partners, officers, directors or employees shall require the consent of the Investors Committee, and (y) no such borrowing shall remain outstanding for more than 365 days.

    (ii)    The General Partner shall be required to give each Tax Exempt Limited Partner who has previously requested in writing that the General Partner do so and who is not then in default on any obligation to make Capital Contributions, the opportunity, upon ten days notice, or such shorter period as is practicable under the circumstances, but in no event less than two Business Days' notice, to make a contribution of capital to the Partnership on the date of or prior to any direct borrowing of money by the Partnership in

the amount equal to such Tax Exempt Limited Partner's pro rata share (based on Capital Commitments) of such borrowing, and such borrowing (and the interest expense relating thereto) shall not be allocated to any such contributing Tax Exempt Limited Partner. Such contributions by Tax Exempt Limited Partners shall not be considered Capital Contributions, nor shall they reduce the Unpaid Capital Commitment of any such Partner. All such contributions shall be repaid by the Partnership, with no amount of interest being due or payable with respect thereto, on the date on which the related funds borrowed by the Partnership are repaid (in an amount proportionate to such repayment).

4.3  Limitation on Liability. (a) The General Partner shall be subject to all of the liabilities of a general partner in a partnership without limited partners; provided, however, that to the fullest extent permitted by law, none of the Manager, the General Partner, their Affiliates and their members, partners, officers, directors, shareholders, agents and employees (each, an "Indemnified Party"), shall be liable to the Partnership or to any Partner for (i) any act or omission taken or suffered by such Indemnified Party in connection with the conduct of the affairs of the Partnership or otherwise in connection with this Agreement or the matters contemplated herein, unless such act or omission resulted from fraud, willful misconduct, the commission of a felony, gross negligence or a material violation of applicable securities laws or (ii) any mistake, negligence, dishonesty or bad faith of any broker or other agent of the Partnership unless such Indemnified Party was responsible for the selection of such broker or agent and such Indemnified Party acted in such selection and monitoring capacity with gross negligence, in each case, which has a material adverse effect on the business of the Partnership or the ability of the General Partner to perform its duties under the Partnership Agreement ; provided that in each of cases (i) and (ii), such Indemnified Party acted in good faith and, as to matters on behalf of the Partnership, in a manner reasonably believed to be in, the best interests of the Partnership.

(b)  To the extent that, at law or in equity, the General Partner has duties to the Partnership or to another Partner (including fiduciary duties) and liabilities relating thereto, the General Partner acting under this Agreement shall not be liable to the Partnership or to any such other Partner for its good faith reliance on the provisions of this Agreement. The provisions of this Agreement, to the extent that they expand or restrict the duties and liabilities of the General Partner otherwise existing at law or in equity, are agreed by the Partners to modify to that extent such other duties and liabilities of the General Partner.

(c)  The General Partner may consult with its or its Affiliate's legal counsel and accountants selected by it (or an Affiliate) and any act or omission suffered or taken by it on behalf of the Partnership or in furtherance of the interests of the Partnership in good faith in reliance upon and in accordance with the advice of such counsel or accountants as to matters which the General Partner reasonably believes to be within the professional competence of such counsel or accountants shall be full justification for any such act or omission, and the General Partner shall be fully protected and held harmless in so acting or omitting to act provided that such counsel or accountants were selected with reasonable care.

4.4  Indemnification. (a) To the fullest extent permitted by law, the Partnership shall indemnify and hold harmless each of the Indemnified Parties from and against any and all claims, liabilities, damages, losses, costs and expenses (including amounts paid in

9600899.13                                    30

satisfaction of judgments, in compromises and settlements, as fines and penalties and legal or other costs and reasonable expenses of investigating or defending against any claim or alleged claim) of any nature whatsoever, known or unknown, liquidated or unliquidated, that are incurred by any Indemnified Party and arise out of or in connection with the affairs of the Partnership or any Alternative Vehicle, including acting as a director or officer, or the equivalent, of a company any securities of which are or were, at the time of the events giving rise to such claims, liabilities, damages, losses, costs or expenses, a Portfolio Investment (but indemnification shall not be available to an Indemnified Party so acting if the events giving rise to such claims, liabilities, damages, losses, costs or expenses occur after such securities are no longer a Portfolio Investment), or the performance by such Indemnified Party of any of the General Partner or Manager's responsibilities hereunder or otherwise in connection with the matters contemplated herein; provided that an Indemnified Party shall be entitled to indemnification hereunder only to the extent that (A) such Indemnified Party's conduct did not constitute fraud, willful misconduct, the commission of a felony, gross negligence or a material violation of applicable securities laws and (B) such Indemnified Party acted in good faith and, as to matters on behalf of the Partnership, in a manner reasonably believed to be in the best interests of the Partnership. The termination of any proceeding by settlement, order, or upon a plea of nolo contendere or its equivalent shall not, of itself, create a presumption that such Indemnified Party's conduct did not meet the foregoing standard. The satisfaction of any indemnification and any holding harmless pursuant to this Section 4.4(a) shall be from and limited to Partnership assets, and no Partner shall have any personal liability on account thereof beyond the amount of its Capital Commitment; provided that each Limited Partner will be obligated to return any amounts distributed to it in order to fund any deficiency in the Partnership's indemnity obligations hereunder to the extent provided in Section 5.2.

(b)     Expenses incurred by an Indemnified Party in defense or settlement of any claim that shall be subject to a right of indemnification hereunder may be advanced by the Partnership prior to the final disposition thereof upon receipt of an undertaking by or on behalf of the Indemnified Party to repay such amount to the extent that it shall be determined ultimately that such Indemnified Party is not entitled to be indemnified hereunder. No advances shall be made by the Partnership under this Section 4.4(b) (I) without the prior written approval of the General Partner or (II) in respect of any action, suit or proceeding commenced by a Majority in Interest of the Limited Partners.

(c)     The right of any Indemnified Party to the indemnification provided herein shall be cumulative of, and in addition to, any and all rights to which such Indemnified Party may otherwise be entitled by contract or as a matter of law or equity and shall extend to such Indemnified Party's successors, assigns and legal representatives.

(d)     Any Person entitled to indemnification from the Partnership hereunder shall first seek recovery under any other indemnity or any insurance policies by which such Person is indemnified or covered, as the case may be, but only to the extent that the indemnitor with respect to such indemnity or the insurer with respect to such insurance policy provides (or acknowledges its obligation to provide) such indemnity or coverage on a timely basis, as the case may be, and, if such Person is other than the General Partner, such Person shall obtain the written consent of the General Partner prior to entering into any compromise or settlement which would result in an obligation of the Partnership to indemnify such Person.

9600899.13                                    31

(c)    *Co-Investment.* The General Partner and its Affiliates may co-invest and may offer certain strategic investors the opportunity to co-invest in any Portfolio Investment prior to offering the Limited Partners the opportunity to co-invest; provided that the General Partner determines in good faith that it would be inappropriate for the Fund to take the entire investment opportunity or that the Fund's returns or investment opportunities will be enhanced by the co-investment. Where possible and appropriate, the General Partner intends, but will be under no obligation, to provide co-investment opportunities to Limited Partners before making such opportunities available to non-Limited Partners. The terms of any permitted co-investment may be set by the General Partner in its sole discretion subject to acceptance by the potential investor.

(d)    *Time Commitment.* Except as approved by the Investors Committee, (a) Mr. Krule shall devote to the affairs of the Partnership substantially all of his professional time (excluding, from professional time, service on Boards of Directors or similar governing bodies which do not unreasonably interfere with duties owed to the Partnership) during the Commitment Period, and thereafter, such time as shall be necessary to conduct the business affairs of the Partnership in an appropriate manner and (b) Mr. Goldin and Mr. Pauker shall devote to the affairs of the Partnership a significant portion of their professional time during the Commitment Period, and thereafter, such time as shall be necessary to conduct the business affairs of the Partnership in an appropriate manner.

(e)    *No Other Restrictions.* Except as provided in Sections 4.6 (a) - (d) above, this Agreement shall not be construed in any manner to preclude the General Partner, the Principals, the Manager or any of their respective Affiliates from engaging in any activity whatsoever permitted by applicable law.

4.7    <u>Valuation</u>. (a) All determinations of Fair Market Value to be made hereunder shall be made pursuant to the terms of this Section 4.7. For all purposes of this Agreement, all valuation determinations (except as provided herein with respect to Interim Valuations) which have been made in accordance with the terms of this Section 4.7 shall be final and conclusive on the Partnership and all Partners, their successors and assigns in the absence of bad faith or manifest error.

(b)    The Fair Market Value of securities which are Marketable Securities distributed upon liquidation of the Partnership shall equal (i) in the cases of securities which are primarily traded on a securities exchange, the average of their last sale prices on such securities exchange on each trading day during the ten trading day period ending immediately prior to the date of the determination, or if no sales occurred on any such day, the mean between the closing "bid" and "asked" prices on such day and (ii) if the principal market for such securities is, or is deemed to be, in the over-the-counter market, the average of their closing sale prices on each trading day during the ten trading day period ending immediately prior to the date of the determination, as published by the National Association of Securities Dealers Automated Quotation System or similar organization, or if such price is not so published on any such day, the mean between their closing "bid" and "asked" prices, if available, on any such day, which prices may be obtained from any reputable pricing service, broker or dealer.

(c)     In connection with any in-kind distribution of Marketable Securities to the Partners (other than upon liquidation of the Partnership) the following valuation procedures shall apply:

(i)     For purposes of Section 3.4(b), (A) in-kind distributions of Marketable Securities other than those made to the Partners electing to receive cash pursuant to Section 3.4(b) (i) (B) shall be finally valued in accordance with paragraph (b) above, except that the valuation shall be based on the average of the applicable prices during the last ten trading days prior to, and the first ten trading days after, the date of distribution (the "Formula Price") and (B) in-kind distributions of Marketable Securities made to the Partners electing to receive cash pursuant to Section 3.4(b) (i) (B) shall be finally valued based on the Formula Price (a "Final Valuation").

(ii)     To permit the General Partner to make an in-kind distribution pending a Final Valuation thereof, the Marketable Securities to be distributed shall be tentatively valued (the "Interim Valuation") in accordance with paragraph (b) above based on the last ten trading days preceding the date of distribution, and: (A) the amount of securities distributable to the respective Partners (or, if applicable, to the Partners electing to receive in-kind distributions rather than cash pursuant to Section 3.4(b) (i) (B)) in such distribution shall be determined based upon such Interim Valuation; (B) the amount of gain or loss attributable to such distribution shall be tentatively determined in accordance with Section 3.4(b) based on such Interim Valuation and tentatively allocated to the Partners' Capital Accounts in accordance with Section 3.4(b) (iii); and (C) in accordance with Section 3.4(b) (iii), the Capital Account of each Partner shall be tentatively reduced to reflect the distribution of securities to such Partner based upon the Interim Valuation.

(iii)     When the Final Valuation is determined, (A) the Capital Accounts of the Partners shall be appropriately adjusted to reflect the allocation of gain or loss attributable to such distribution which would have been made if the allocation made immediately prior to the distribution had been based on the Final Valuation rather than the Interim Valuation, and (B) the amount deducted from each Partners' Capital Account in respect of the value of securities distributed shall be appropriately adjusted based on the Final Valuation.

(iv)     In the event that the Partnership's making of an in-kind distribution based upon the Interim Valuation results in securities being distributed to the Partners in a different proportion than that in which such securities would have been distributed if the amounts distributable to the Partners had been determined based upon the Final Valuation, the General Partner shall make an appropriate adjustment to the next distribution to the Partners and, if necessary, subsequent distributions to the Partners so as to preserve the intent of the economic arrangement among the Partners.

(d)     The Fair Market Value of any Portfolio Investments or of property received in exchange for any Portfolio Investments which are not Marketable Securities shall be determined by the General Partner in its sole discretion.

(e)     Any Indemnified Party shall be deemed to be a creditor of the Partnership and shall be entitled to enforce the obligations of Partners to return distributions pursuant to Section 5.2 following the termination of the Partnership.

(f)     The General Partner will use reasonable efforts to ensure that each Portfolio Company for which an Indemnified Party serves as an officer or director (i) has adopted charter documents providing mandatory indemnification therefor to the fullest extent permitted by law and (ii) obtains director and officer insurance to the extent available at commercially reasonable rates.

4.5     General Partner as Limited Partner; Affiliated Investors.  Each of the General Partner, its Affiliates and the Affiliated Investors is or shall be a Limited Partner to the extent that it makes a Capital Commitment in respect of a limited partner interest in the Partnership or purchases or becomes a transferee of all or any part of an Interest and to such extent is or shall be treated as a Limited Partner in all respects except that the General Partner may elect not to receive all or part of the Carried Interest with respect to such Limited Partner. Any Interest of a Limited Partner which is held by the General Partner or any of its Affiliates shall be voted and/or abstained in the same manner and proportions as the aggregate Interests of the other Limited Partners are voted and/or abstained.

4.6     Other Activities.  (a)  *Restriction on Competing Fund.*  Until the earlier of (i) the expiration or termination of the Commitment Period, and (ii) such time as 75% of aggregate Capital Commitments have been invested or committed to investment, the General Partner, and its Affiliates shall not operate and advise a new closed-end pooled equity investment vehicle (other than the Parallel Investment Partnerships and Alternative Vehicles, with investment objectives that are substantially similar to those of the Partnership) (any such fund being referred to hereinafter as a "Competing Fund"); provided that any direct investment or vehicle to make investments primarily in non-control positions in publicly listed securities (whether directly or indirectly) or which have otherwise different objectives from the Partnership shall not be considered a Competing Fund.  Until the expiration of the Commitment Period, investment opportunities may, at the sole discretion of the General Partner exercised in good faith, be allocated between any Competing Fund and the Partnership (in such proportion as the General Partner may determine), or to either of them.

(b)     *Restrictions on Principal Transactions.*  Except as expressly provided in this Agreement, without the approval of the Investors Committee the Partnership shall not invest in, acquire investments from, or sell investments to, the General Partner, the Manager, the Principals, the Parallel Investment Partnerships, Alternative Vehicles or any of their Affiliates or any entity in which the General Partner or the Manager, the Principals or any of their Affiliates holds an investment of an equity interest, is in a position of control or holds outstanding debt of such entity (other than immaterial investments held by the Principals or by Affiliates of the General Partner, the Manager or the Principals, which investments are not known to the General Partner); provided, that the foregoing shall not prevent the Partnership from making investments in Portfolio Companies based on the fact that existing or future funds managed by the Manager also hold an interest therein.

9600899.13

32

4.8    UBTI Covenants.  Subject to the express provisions of this Agreement and the Subscription Agreements, the Partnership shall use commercially reasonable efforts to avoid "unrelated business taxable income" within the meaning of Section 512 of the Code on its investments, unless it offers the Limited Partners, the opportunity to invest in the relevant transaction through an Alternative Vehicle; provided that the foregoing covenant shall not apply to the operation of Section 4.2(c); and provided further that the Partnership shall not invest in any entity that is treated as a pass-through for U.S. federal income tax purposes unless (a) it offers the Limited Partners, the opportunity to invest in the relevant transaction through an Alternative Vehicle or (b) the General Partner determines (after consultation with its tax counsel) that such investment would not generate UBTI.

4.9    ERISA Covenants.  For so long as there is any Limited Partner which is an ERISA Partner whose assets are subject to Title I of ERISA (or which are subject to substantially similar regulations as ERISA):

(a)    The General Partner shall use its reasonable best efforts at all times to ensure that equity participation in the Partnership by "benefit plan investors" as defined in the Plan Assets Regulation is not "significant" as defined in the Plan Assets Regulation;

(b)    The General Partner shall notify all ERISA Partners if the statement above ceases to be true as soon as practicable following the date that the General Partner first knows such condition exists.

4.10    Key Person Event.  (a)  If, during the Commitment Period, Mr. Goldin is not actively involved in the business of the Partnership for a period of 45 consecutive days (the "Key Person Event"), the General Partner shall immediately notify the Limited Partners and the Suspension Period shall begin.  Upon such Key Person Event, the Limited Partners shall not thereafter be required to make Capital Contributions with respect to, and the General Partner shall not cause the Partnership to make, investments, other than to fund Follow-On Investments, or prospective investments that were subject to a letter of intent or similar binding or non-binding commitment prior to the commencement of the Suspension Period.

(b)    The "Suspension Period" shall mean the period commencing upon the occurrence of a Key Person Event and continuing until the earlier of (x) 120 days thereafter, (y) such earlier time as a Majority-in-Interest consents to end the Suspension Period and (z) such time as two-thirds of the Limited Partners entitled to vote consent to the replacement of Mr. Goldin as proposed by the General Partner; provided that, during the Suspension Period, a Majority-in-Interest may elect to cause the Commitment Period to resume.  If a Majority-In-Interest do not elect to end the Suspension Period during such 120-day period, then the Commitment Period shall terminate.

4.11    Transaction Fees.  All Transaction Fees shall be retained by the Manager; provided, however, that one-half of all Transaction Fees shall be credited to the Partnership as an offset against the Manager's Management Fee; provided further that, if another partnership managed by the Manager co-invests in the Portfolio Company to which the Transaction Fees are related, the credit to the Partnership shall be one-half of the Transaction Fees attributable to the

Partnership's *pro rata* portion based upon the capital invested in such Portfolio Company by the Partnership and such other partnership.

## ARTICLE V
### The Limited Partners

5.1    Management.  (a) Except as expressly provided in this Agreement, no Limited Partner (in its capacity as a Limited Partner) shall have the right or power to participate in the management or affairs of the Partnership, nor shall any Limited Partner have the power to sign for or bind the Partnership.  The exercise by any Limited Partner of any right conferred herein shall not be construed to constitute participation by such Limited Partner in the control of the business of the Partnership so as to make such Limited Partner liable as a general partner for the debts and obligations of the Partnership for purposes of the Act.

(b)    Any Limited Partner may, upon notice to the General Partner, elect to hold all or any fraction of such Limited Partner's Interest as a non-voting Interest, in which case such Limited Partner shall not be entitled to participate in any consent of the Limited Partners with respect to the portion of its Interest which is held as a non-voting Interest (and such non-voting Interest shall not be counted in determining the giving or withholding of any such consent). Except as provided in this Section 5.1, an Interest held as a non-voting Interest shall be identical in all regards to all other Interests held by Limited Partners.  Any such election by a Limited Partner shall be revocable upon five days' prior written notice to the General Partner; *provided* that any such election by a Limited Partner that is a bank holding company as defined in Section 2(a) of the U.S. Bank Holding Company Act of 1956, as amended, or a non-bank subsidiary of such bank holding company (each, a "BHC Partner"), shall be irrevocable and shall bind the assignees of such BHC Partner's Interest.

(c)    Any Interest held for its own account by a BHC Partner that is determined to be in excess of 4.99% of the Interests of the Limited Partners, excluding for purposes of calculating this percentage portions of any other interests that are non-voting Interests pursuant to this Section 5.1 (collectively the "Non-Voting Interests"), shall be a nonvoting Interest (whether or not subsequently transferred in whole or in part to any other person) and shall not be included in determining whether the requisite percentage in Interest of the Limited Partners have consented to, approved, adopted or taken any action hereunder.  Each BHC Partner hereby irrevocably waives its corresponding right to vote its Non-Voting Interest in respect of a successor general partner under Section 17-801 of the Act, which waiver shall be binding upon such BHC Partner or any entity which succeeds to its Interest.  Upon any Subsequent Closing or a withdrawal of a Limited Partner or any other event resulting in an adjustment in the relative Interests of the Limited Partners hereunder, a recalculation of the Interests held by all BHC Partners shall be made, and only that portion of the total Interest held by each BHC Partner that is determined as of the applicable Subsequent Closing Date or the date of such withdrawal or other event, as applicable, to be in excess of 4.99% of the Interests of the Limited Partners, excluding Non-Voting Interests as of such date, shall be a Non-Voting Interest.  Notwithstanding the foregoing, any BHC Partner may elect not to be governed by this Section 5.1(c) by providing written notice to the General Partner.  Any such election by a BHC Partner may be rescinded at any time by written notice to the General Partner, *provided* that any such rescission shall be irrevocable.

9600899.13

36

5.2 <u>Liabilities of the Limited Partners</u>. (a) *General*. Except as provided by the Act and subject to any obligations expressly set forth herein, including, without limitation, the obligations to make Capital Contributions and Direct Payments pursuant to Article III, to indemnify the Partnership and the General Partner as provided in Section 10.2 and to return distributions as provided in Section 5.2 (b), no Limited Partner shall have any personal liability whatsoever in its capacity as a Limited Partner, whether to the Partnership, to any of the Partners, or to the creditors of the Partnership, for the debts, liabilities, contracts, or other obligations of the Partnership or for any losses of the Partnership.

(b) *Giveback*. Except as required by the Act or other applicable law, no Limited Partner shall be required to repay to the Partnership, any Partner or any creditor of the Partnership all or any part of the distributions made to such Limited Partner pursuant to Article III hereof; <u>provided</u> that, subject to the limitations set forth in paragraph (d) below, each Partner (including any former Partner) may be required to return distributions made to such Partner or former Partner (or any of its predecessors in interest) for the purpose of meeting such Partner's share of the Partnership's indemnity obligations under Sections 4.4 and 5.4(g) or other obligations of the Partnership, as determined pursuant to Section 5.2(c), in an amount up to, but in no event in excess of, its Unpaid Capital Commitment plus up to 50% of the aggregate amount of distributions actually received by such Partner from the Partnership. However, if, notwithstanding the terms of this Agreement, it is determined under applicable law that any Partner has received a distribution which is required to be returned to or for the account of the Partnership or Partnership creditors, then the obligation under applicable law of any Partner to return all or any part of a distribution made to such Partner shall be the obligation of such Partner and not of any other Partner. Any amount returned by a Partner pursuant to this Section 5.2 shall be treated as a contribution of capital to the Partnership. The General Partner will endeavor to notify each Limited Partner promptly upon becoming aware of any claim or other matter which would require the return of distributions pursuant to this Section 5.2 (b), <u>provided</u> that a failure to so notify any Limited Partner shall not relieve such Limited Partner of its obligations under this Section 5.2.

(c) Determination of Each Partner's Share of Giveback.

(i) *Portfolio Investment Related Giveback Amounts*. Subject to the restrictions contained in paragraphs (b) above and (d) below, (A) if an obligation is related to the acquisition, holding or Disposition of a Portfolio Investment (a "<u>Portfolio Investment Related Giveback Amount</u>"), each Partner (including any former Partner) having (or, in the case of a former Partner, that had) an interest in such Portfolio Investment shall be obligated to contribute an amount equal to the product of such Partner's Percentage Interest in such Portfolio Investment and the lesser of (I) the aggregate Investment Proceeds and Short-Term Investment Proceeds, if any, distributed with respect to such Portfolio Investment and (II) such Portfolio Investment Related Giveback Amount and (B) to the extent that such Portfolio Investment Related Giveback Amount exceeds the aggregate Investment Proceeds and Short-Term Investment Proceeds generated by such Portfolio Investment, each Partner (including any former Partner) shall be obligated to contribute an additional amount equal to the product of (I) the percentage that such Partner's Capital Commitment represents of the total Capital Commitments of the Partners and (II) the amount of such excess. Notwithstanding the

preceding sentence, to the extent that distributions of Carried Interest in respect of any Limited Partner have been made to the General Partner and have not already been repaid pursuant to this Section 5.2(c), such Limited Partner's share of such Portfolio Investment Related Giveback Amount shall be reduced, and the General Partner's share of such Portfolio Investment Related Giveback Amount shall be increased, by an amount (the "Portfolio Investment Related Interim Clawback Amount") equal to the lesser of (x) the amount of such Carried Interest distributions and (y) 20% of such Limited Partner's share of such Portfolio Investment Related Giveback Amount.

(ii)     *Other Giveback Amounts.*  Subject to the restrictions contained in paragraphs (b) above and (d) below, if an obligation is unrelated to the acquisition, holding or Disposition of a Portfolio Investment (an "Other Giveback Amount"), each Partner (or former Partner) shall be obligated to contribute an amount equal to the product of (A) the percentage that such Partner's Capital Commitment represents of the total Capital Commitments of the Partners and (B) such Other Giveback Amount. Notwithstanding the preceding sentence, to the extent that distributions of Carried Interest in respect of any Limited Partner have been made to the General Partner and have not already been repaid pursuant to this Section 5.2(c), such Limited Partner's share of such Other Giveback Amount shall be reduced, and the General Partner's share of such Other Giveback Amount shall be increased, by an amount (the "Other Interim Clawback Amount") equal to the lesser of (x) the amount of such Carried Interest distributions and (y) 20% of such Limited Partner's share of such Other Giveback Amount.

(d)     *Restrictions on Giveback.*

(i)     The obligation of a Limited Partnership to return distributions made to such Limited Partner for the purpose of meeting the Partnership's obligations shall be subject to the following limitations:

(A)     no Limited Partner shall be required to return any particular distribution more than three years from the date of dissolution of the Partnership provided that if at the end of such period, there are any Proceedings then pending or any other liability (whether contingent or otherwise) or claim then outstanding relating to such distribution, the General Partner shall so notify the Limited Partners at such time (which notice shall include a brief description of each such Proceeding (and of the liabilities asserted in such Proceeding) or of such liabilities and claims) and the obligation of the Limited Partners to return such distribution for the purpose of meeting the Partnership's obligations shall survive with respect to each such Proceeding, liability and claim set forth in such notice (or any related Proceeding, liability or claim based upon the same or a similar claim) until the date that such Proceeding, liability or claim is ultimately resolved and satisfied, subject to Section 5.2(d)(ii) below; and provided; further, that the provisions of this subparagraph (A) shall not affect the obligations of the Limited Partners under Section 17 607 of the Act or other applicable law; and

      (B)    no Limited Partner shall be required to make a contribution or payment of a Portfolio Investment Related Giveback Amount or Other Giveback Amount pursuant to this Section 5.2 to the extent such contribution or payment, when combined with all prior contributions and payments of any Portfolio Investment Related Giveback Amounts or Other Giveback Amounts, would exceed its Unpaid Capital Commitments plus 50% of the aggregate distributions received by such Partner from the Partnership.

      5.3    <u>Limited Partners' Outside Activities</u>.  Subject to Section 4.6 with respect to Limited Partners that are related to the General Partner, and subject to Section 11.13, a Limited Partner shall be entitled to and may have business interests and engage in activities in addition to those relating to the Partnership, including business interests and activities in direct competition with the Partnership and the Portfolio Companies and may engage in transactions with, and provide services to, the Partnership or any Portfolio Company.  Neither the Partnership, any other Partner nor any other Person shall have any rights by virtue of this Agreement in any business ventures of any Limited Partner.

      5.4    <u>Investors Committee</u>.  (a)  The General Partner shall select, from among volunteers, a committee (the "<u>Investors Committee</u>"), which shall consist of a number of individuals representing Limited Partners and limited partners of the Parallel Investment Partnerships, if any, which, except as a result of a vacancy upon resignation or removal, shall be not less than three and no more than seven.

      (b)    The function of the Investors Committee shall be to (i) review and approve or disapprove any valuations in accordance with Section 4.7(c), (ii) address any potential conflicts of interest in any transaction or relationship between the Partnership and the General Partner or any employee or Affiliate thereof that are presented to the Investors Committee by the General Partner, including principal transactions pursuant to Section 4.6(b), (iii) advise the General Partner on other issues that are presented to the Investors Committee by the General Partner and (iv) take such actions as are otherwise provided for in this Agreement, including, without limitation, Sections 2.7, 3.4(b)(ii), 3.4(e), 4.1(b)(ii), 4.2(c), 4.6(b) and 4.6(d).  The Investors Committee will not have any power to approve or disapprove of Portfolio Investments or to manage the Partnership or any such investments.  Information provided to the Investors Committee for purposes of discussion and requests for their approval may be general in nature as to a particular industry sub-segment or type of transaction so as to avoid Investors Committee members being deemed insiders for purposes of U.S. securities laws.

      (c)    The Investors Committee shall act by a majority of its members.  The actions of the Investors Committee shall be binding on all of the Partners.

      (d)    The quorum for a meeting of the Investors Committee shall be a majority of its members.  Members of the Investors Committee may participate in a meeting of the Investors Committee by means of conference telephone or video conferencing by means of which all persons participating in the meeting can hear and be heard.  Any member of the Investors Committee who is unable to attend a meeting of the Investors Committee may grant in writing to another member of the Investors Committee or any other Person such member's proxy to vote on any matter upon which action is taken at such meeting.  The Investors Committee shall conduct

its business by such other procedures not in conflict with this Agreement as a majority of its members considers appropriate.

(e)    No fees shall be paid by the Partnership to members of the Investors Committee, although expenses of Investors Committee members shall be reimbursed by the Partnership unless such members elect otherwise.

(f)    Any member of the Investors Committee may resign upon delivery of written notice from such member to the General Partner, and shall be deemed removed if the Limited Partner that the member represents requests such removal in writing to the General Partner or becomes a Defaulting Limited Partner. Any vacancy in the Investors Committee, whether created by such a resignation or removal or by the death of any member, may be filled as provided in Section 5.4(a).

(g)    No member of the Investors Committee (or member of any other advisory committee of the Partnership established by the General Partner from time to time) shall be liable to any other Partner or the Partnership for any reason (other than fraud or willful misconduct on the part of such member) including for any mistake in judgment, any action or inaction taken or omitted to be taken, or for any loss due to any mistake, action or inaction. The participation by a representative of any Limited Partner who is a member of the Investors Committee (or other committee described above) in the activities of the Investors Committee (or such other committee) shall not be construed to constitute participation by such Limited Partner in the control of the business of the Partnership so as to make such Limited Partner liable as a general partner for the debts and obligations of the Partnership for purposes of the Act. No representative of any Limited Partner who is a member of the Investors Committee (or other committee described above) shall be deemed to be an Affiliate of the Partnership or the General Partner solely by reason of such membership. In the absence of fraud, willful misconduct or gross negligence on the part of members of the Investors Committee (or other committee described above), the Partnership shall, to the fullest extent permitted by law, indemnify and hold harmless each such member of the Investors Committee (or other committee described above) with respect to the Partnership (and their respective heirs and legal and personal representatives) who was or is a party, or is threatened to be made a party, to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (including any action by or in the right of the Partnership or any of the Partners), by reason of any actions or omissions or alleged acts or omissions arising out of such Person's activities in connection with serving on the Investors Committee (or other committee described above) against losses, damages or expenses (including reasonable attorney's fees, judgments, fines and amounts paid in settlement) actually incurred by such Person in connection with such actions, suits or proceedings; provided that any Person entitled to indemnification from the Partnership hereunder shall obtain the written consent of the General Partner (which consent shall not be unreasonably withheld) prior to entering into any compromise or settlement which would result in an obligation of the Partnership to indemnify such Person. The satisfaction of any indemnification and any holding harmless pursuant to this Section 5.4(g) shall be from and limited to Partnership assets, and no Partner shall have any personal liability on account thereof beyond the amount of its Capital Commitment; provided that each Limited Partner will be obligated to return any amounts distributed to it in order to fund any deficiency in the Partnership's indemnity obligations hereunder to the extent provided in Section 5.2.

5.5    Provisions Relating to Portfolio Investments in Media Companies.  For so long as the Partnership has a Portfolio Investment in any Media Company (such an entity or enterprise in which the Partnership has an investment is referred to herein as a "Partnership Media Company"), then any Limited Partner (an "Electing Media Company Limited Partner") may elect (which election subsequently may be waived by such Electing Media Company Limited Partner on at least thirty days' prior written notice to the General Partner but shall not otherwise be discharged, terminated or modified without the consent of the Electing Media Company Limited Partner and the General Partner) that neither such Electing Media Company Limited Partner nor any officer, director, member, partner or equivalent non-corporate official, nor any 5% or greater shareholder, of any such Electing Media Company Limited Partner shall:

(i)    act as an employee of the Partnership if his or her functions, directly or indirectly, relate to any Partnership Media Company or any Media Company in which the Partnership Media Company has invested;

(ii)    serve, in any material capacity, as an independent contractor or agent with respect to any Partnership Media Company or any Media Company in which the Partnership Media Company has invested;

(iii)    communicate on matters pertaining to the day-to-day operations of the Partnership Media Company or a Media Company in which the Partnership Media Company has invested with the General Partner or any officer, director, partner, agent, representative or employee of such company;

(iv)    perform any services for the Partnership materially relating to a Partnership Media Company or any Media Company in which a Partnership Media Company has invested, except that any Electing Media Company Limited Partner may make loans to, or act as a surety for, the Partnership or a Partnership Media Company, to the extent consistent with the Federal Communication Commission's rules;

(v)    become actively involved in the management or operation of any Partnership Media Company; or

(vi)    vote on the admission of any new general partner to the Partnership unless such admission is approved by the General Partner; or

(vii)    exercise any right which it may have to vote to remove the General Partner.

## ARTICLE VI
### Expenses and Fees

6.1    General Partner Expenses.  The Partnership shall not have any salaried personnel.  The General Partner, the Manager or their Affiliates, but not the Partnership or any Limited Partner, shall bear and be charged with the following costs and expenses of the Partnership's activities: (a) any costs and expenses of providing to the Partnership any office space, furniture, fixtures, equipment, facilities, supplies, internal bookkeeping and necessary ongoing overhead support services for the Partnership's operations; (b) the compensation of the

General Partner's and Manager's personnel; (c) similar expenses to the extent that such expenses are not subject to reimbursement by the Partnership pursuant to Section 6.3(a) (collectively, the "General Partner Expenses").

6.2 Management Fee. (a) Subject to Section 4.11, the Partnership shall pay to the Manager or an Affiliate thereof, in respect of each Limited Partner, a management fee (the "Management Fee"), payable as follows:

(i) during the Commitment Period, an annual amount equal to 1.5% of such Limited Partner's Commitment;

(ii) thereafter, an annual amount equal to 1.5% of the Capital Contributions of such Limited Partner reduced by the amount of such Limited Partner's cost basis of any Portfolio Investment, which has been disposed of completely (through realization or distribution) or the subject of a Writedown.

(b) The Management Fee shall be payable quarterly in advance as of the first day of each calendar quarter. Installments of the Management Fee payable for any period other than a full quarter shall be adjusted on a *pro rata* basis according to the actual number of days in such period.

(c) The Management Fee shall not be considered a distribution of profits or a return of capital to the General Partner for the purpose of any provision of this Agreement but rather shall be considered a deduction from Partnership income or an increase in Partnership loss in determining profit or loss pursuant to the terms hereof.

6.3 Partnership Expenses. (a) The Partnership shall bear and be charged with the following costs and expenses of the Partnership and shall promptly reimburse the Manager, the General Partner or their Affiliates, as the case may be, to the extent that any such costs and expenses are paid by such entities (the "Partnership Expenses"):

(i) all routine administrative expenses of the Partnership incurred in the ordinary course, including the cost of the preparation of the annual audit, financial and tax returns and tax reports required for Partners or the Partnership, cash management expenses, routine legal and accounting expenses, financing fees and expenses associated with the preparation of the Partnership's financial statements and tax returns;

(ii) all out-of-pocket costs and expenses, if any, payable to third parties in connection with holding, developing, negotiating, structuring, acquiring and disposing of Portfolio Investments, including without limitation any financing, legal, accounting, advisory, consulting fees and expenses and fees and expenses of other professional and technical services in connection therewith (to the extent not subject to any reimbursement of such fees and expenses by Portfolio Companies or other third parties);

(iii) all third-party expenses in connection with Portfolio Investments or proposed Portfolio Investments that are not ultimately made, including, without limitation, the out-of-pocket costs and expenses incurred in connection with obtaining third-party financing (such as commitment fees that are paid);

(iv)    brokerage commissions, registration fees and expenses, custodial expenses and other investment costs, actually incurred in connection with Portfolio Investments;

(v)    interest on and fees and expenses arising out of all borrowings made by the Partnership, including, but not limited to, the arranging thereof;

(vi)    the out-of-pocket costs of any litigation, D&O liability or other insurance and indemnification (including advances under Section 4.4(b)) or extraordinary expense or liability relating to the affairs of the Partnership;

(vii)    expenses of liquidating the Partnership;

(viii)    registration expenses and any taxes (subject to Section 10.2(a)), fees or other governmental charges levied against the Partnership and all expenses incurred in connection with any tax audit, investigation, settlement or review of the Partnership; and

(ix)    the expenses of meetings of the Investors Committee under Section 5.4 and meetings of the Limited Partners.

(b)    Partnership Expenses may be allocated against items of Disposition Proceeds, Current Proceeds and Short-Term Investment Proceeds in a manner reasonably determined by the General Partner. Partners may be required to make Capital Contributions to the extent of their Capital Commitments for the payment of such Partnership Expenses to the extent the Partnership does not have sufficient available funds to pay such expenses; provided that the General Partner may also use its short-term borrowing power to the extent expressly permitted hereunder to borrow funds to pay Partnership Expenses. The General Partner may withhold on a pro rata basis from any distributions or refunds amounts necessary to create, in its sole discretion, appropriate reserves for expenses and liabilities, contingent or otherwise, of the Partnership as well as for any tax withholdings.

## ARTICLE VII
### Books and Records and Reports to Partners

7.1    Books and Records. The General Partner shall keep or cause to be kept complete and appropriate records and books of account of the Partnership. Except as otherwise expressly provided herein, such books and records shall be maintained on the basis utilized in preparing the Partnership's federal income tax return, incorporating the accrual method of accounting. The Partnership shall keep its books and records and report its results in Dollars.

7.2    Federal, State, Local and Foreign Income Tax Information. Within 90 days after the end of each Fiscal Year (subject to reasonable delays in the event of the late receipt of any necessary financial statements from any Portfolio Company), or as soon as practicable thereafter, the General Partner shall prepare and send, or cause to be prepared and sent, to each person who was a Partner at any time during such Fiscal Year copies of such information as may be required for federal, state, local and foreign income tax reporting purposes, including copies of Schedule K-1 ("Partner's Share of Income, Credits, Deductions, etc.,") or any successor schedule or form, for such person, and such other information as a Partner may reasonably request for the purpose of complying with applicable laws or applying for refunds of withholding

taxes, including, to the extent not already set forth on the Schedule K-1, such person's share of the Partnership's UBTI, if any, reported to the Internal Revenue Service.

7.3    Reports to Partners.  (a) Within 120 days after the end of each Fiscal Year of the Partnership (subject to reasonable delays in the event of the late receipt of any necessary financial statements from any Portfolio Company), the General Partner shall send, or cause to be sent, to each Person who was a Partner during such period:

(i)    the following financial statements for the Partnership prepared on any acceptable basis of accounting, which may include generally accepted account principles, federal income tax basis or otherwise as determined in accordance with this Agreement:

(A)    a balance sheet as of the end of such period;

(B)    a statement of income or loss and a statement of Partners' Capital Accounts for such period;

(C)    a statement of cash flows (including footnote disclosure of any Transaction Fees and Ongoing Fees received by the Manager or its Affiliates or employees); and

(D)    a statement of changes in Partners' equity;

(ii)    in the case of an annual report with respect to any Fiscal Year, an opinion of a nationally recognized independent accounting firm based upon their audit of the financial statements referred to in clause (i) above;

(iii)    tax information necessary for the Partners' completion of their U.S. tax returns.

(b)    Within 45 days after the end of the first three fiscal quarters, the General Partner shall send or cause to be sent, to each Person who was a Partner during such period a statement including such information as the General Partner deems appropriate to assist such Person in monitoring such Person's Interest.

(c)    With reasonable promptness, the General Partner will (i) deliver, or cause to be delivered, such other information that the General Partner possesses or can obtain without unreasonable effort or expense, including financial statements and computations, as any Limited Partner may from time to time reasonably request and (ii) notify the Limited Partners of any change in the Partnership's accountants and the reasons for such change.

7.4    Partnership Meetings.  (a) The General Partner may hold, from time to time, general informational meetings of Partners, which meetings may be telephonic.

(b)    The General Partner may in its sole discretion call a special meeting of the Partnership. The General Partner shall give at least 21 days' notice of the time and place of any such meeting to each Limited Partner, which notice shall set out the agenda for such meeting.

9600899.13                                    44

(c)    Any action required to be, or which may be, taken at any special meeting by the Partners may be taken in writing without a meeting if consents thereto are given by the General Partner and Limited Partners holding Interests in an amount not less than the amount that would be necessary to take such action at a meeting.

(d)    A Limited Partner may vote at any meeting either in person or by a proxy which such Limited Partner has duly executed in writing. The General Partner may permit Persons other than Partners to participate in a meeting; provided that no such Person shall be entitled to vote.

(e)    The chairman of any meeting shall be a Person affiliated with and designated by the General Partner. A Person designated by the General Partner shall keep written minutes of all of the proceedings and votes of any such meeting.

(f)    The General Partner may set in advance a record date for determining the Limited Partners entitled to notice of and to vote at any meeting or entitled to express consent to any action in writing without a meeting. No record date shall be less than 5 nor more than 60 days prior to the date of any meeting to which such record date relates nor more than 5 days after the date on which the General Partner sets the record date for any action by written consent.

## ARTICLE VIII
### Transfers, Withdrawals and Default

8.1    Transfer and Withdrawal of the General Partner. *Voluntary Transfer.* Without the consent of a Majority in Interest of the Limited Partners, the General Partner shall not have the right to assign, pledge or otherwise transfer its interest as the general partner of the Partnership, nor to withdraw from the Partnership; provided that without the consent of the Limited Partners the General Partner may, at the General Partner's expense, be reconstituted as or converted into a corporation or other form of entity (any such reconstituted or converted entity being deemed to be the General Partner for all purposes hereof) by merger, consolidation or otherwise, or transfer its interest as the general partner of the Partnership to one of its controlled Affiliates. In the event of an assignment or other transfer of its interest as a general partner of the Partnership in accordance with this Section 8.1, its assignee or transferee shall be substituted in its place as general partner of the Partnership and immediately thereafter the General Partner shall withdraw as a general partner of the Partnership; provided that solely in the case of a transfer to an Affiliate of the General Partner that the General Partner controls, the General Partner shall remain liable for its financial obligations under this Agreement until such substitution occurs.

8.2    Assignments and Substitutions by Limited Partners. (a) A Limited Partner may not assign or otherwise transfer its Interest in whole or in part to any Person (an "Assignee"), nor may it withdraw from the Partnership or withdraw any amount from the Partnership, without the prior written consent of the General Partner, which consent may be given or withheld in the sole discretion of the General Partner; provided that no such assignment or transfer shall be made unless in the opinion of responsible counsel (who may be counsel for the Partnership), which opinion and counsel shall be satisfactory to the General Partner and

which requirement for an opinion may be waived, in whole or in part, in the sole discretion of the General Partner:

> (i)      such assignment or transfer would not violate the Securities Act or any state securities or "Blue Sky" laws applicable to the Partnership or the Interest to be assigned or transferred;

> (ii)     such assignment or transfer would not cause the Partnership to lose its status as a partnership for federal income tax purposes or cause the Partnership to become subject to the Investment Company Act;

> (iii)    such assignment or transfer would not cause the Partnership to be treated as a "publicly traded partnership" within the meaning of Section 7704 of the Code and the regulations promulgated thereunder and would not make the Partnership ineligible for "safe harbor" treatment under Section 7704 of the Code and the regulations promulgated thereunder; and

> (iv)    such assignment or transfer would not cause all or any portion of the underlying assets of the Partnership to constitute "plan assets" under the Plan Assets Regulation of any ERISA Partner or to be subject to the provisions of ERISA as if owned directly by any ERISA Partner.

In addition, the General Partner may require any documentation or other legal opinions, at the expense of the assignor or transferor or the proposed assignee or transferee, that it deems necessary or advisable in connection with any assignment or transfer. Each assigning Limited Partner agrees that it will pay all reasonable expenses, including legal, accounting and valuation fees and expenses, incurred by the Partnership in connection with an assignment or transfer of an Interest by such Limited Partner, except to the extent that the Assignee thereof agrees to bear such expenses.

(b)      No Assignee of an Interest in the Partnership of a Limited Partner may be admitted as a substitute Limited Partner in the Partnership without the consent of the General Partner, which consent may be given or withheld in its sole discretion. An assignee of an Interest that is not admitted as a substitute Limited Partner shall be entitled only to allocations and distributions with respect to that Interest and shall have no rights to vote such Interest or to any information or accounting of the affairs of the Partnership and shall not have any of the other rights of a Partner pursuant to this Agreement.

(c)      The General Partner shall prohibit any assignment, transfer or substitution (and shall not recognize any such assignment, transfer or substitution) if the General Partner reasonably believes that such assignment, transfer or substitution would not be within (or would cause the Partnership to fail to qualify for) one or more of the safe harbors described in paragraphs (e), (f), (g), (h), or (j) of Treasury Regulations Section 1.7704-1 or otherwise poses a material risk that the Partnership will be treated as a "publicly traded partnership" within the meaning of Section 7704 of the Code and the regulations promulgated thereunder.

(d)      Any attempted assignment or substitution not made in accordance with this Section 8.2 shall be null and void.

9600899.13                                      46

8.3    Right of First Offer.  If at any time during the term of this Agreement any Limited Partner wishes to transfer its interest in the Partnership, in whole or in part, to a third party, including, without limitation, another Limited Partner, and the General Partner shall have consented to such transfer subject to this paragraph 8.3 and such transfer shall otherwise be permitted in accordance with paragraph 8.2 above, such Limited Partner shall first give written notice (the "Seller's Notice") to the General Partner indicating its intention to sell, the price at which it is willing to make such sale and the identity of the proposed buyer or buyers. The General Partner may, in its sole discretion, furnish the other Limited Partners with a copy of the Seller's Notice and grant each such Limited Partner a right to elect to purchase such Partnership interest pursuant to this paragraph 8.3. A Limited Partner may elect to purchase all, but not less than all, of such Partnership interest at the price stipulated in the Seller's notice by giving written notice (a "Buyer's Notice") to the General Partner at any time within 30 days after the Seller's Notice was given. All Limited Partners that shall have timely given a Buyer's Notice shall be severally obligated to purchase and the transferring Limited Partner shall be obligated to sell, such Partnership interest in accordance with this paragraph 8.3 at the stipulated selling price on a day determined by the General Partner and advised to the transferring limited Partner and the purchasing Limited Partners, which day shall be a business day occurring within 40 days after the Seller's Notice was given. The purchasing Limited Partners, if more than one, shall purchase such Partnership interest in proportion to their respective Capital Contributions. If no Limited Partner shall timely give a Buyer's Notice, then the transferring Limited Partner may, for a period of 180 days after the Seller's Notice was given, sell such Partnership interest to the person identified in its Seller's Notice, or if none is so identified, to any person, on terms and conditions that are economically no more favorable to such person that the offering price and payment terms stipulated in its Seller's Notice. Notwithstanding the foregoing, this Section 8.3 shall not apply to affiliated entities or to entities that are pre-cleared by the General Partner in writing as permitted transferees of a Limited Partner at the time such Limited Partner is admitted to the Partnership.

8.4    Defaulting Limited Partner.  (a) Subject in all events to the provisions of Section 3.2, any Limited Partner that fails to make, when due, any portion of the Capital Contribution required to be contributed by such Limited Partner pursuant to this Agreement or to make any Direct Payment or other payment (including any payment pursuant to Section 5.2) required to be made by it hereunder when required to be made may, in the sole discretion of the General Partner and in addition to any other remedy contained herein, be charged an additional amount on the unpaid balance of any such Capital Contributions, Direct Payment or other payments at the Reference Rate plus 8% from the date such balance was due and payable through the date full payment for such balance is actually made, and to the extent such additional amount is not otherwise paid such additional amount may be deducted from any distribution to such Limited Partner. Any such additional amount owed to the Partnership shall be allocated and distributed to the other Partners (i) in proportion to the amounts by which their respective Capital Contributions, Direct Payments and other payments required to be made by them hereunder were increased as a result of such Defaulting Limited Partner's failure to make such Capital Contributions or other payments or (ii) if no such increase occurred, pro rata to their Capital Commitments.

(b)    If any Limited Partner fails to make, when due, any portion of the Capital Contribution required to be contributed by such Limited Partner pursuant to this Agreement or to

make any Direct Payment or other payment (including any payment pursuant to Section 5.2) required to be made by it hereunder when required to be made, then the Partnership shall promptly provide written notice of such failure to such Limited Partner. If such Limited Partner fails to make such Capital Contribution or other payment within five (5) Business Days after receipt of such notice, then (i) such Limited Partner shall be deemed a "Defaulting Limited Partner" and (ii) the following Sections 8.4(c) through (h) shall apply.

(c)     The General Partner shall have the right to determine, in its sole discretion, that whenever the vote, consent or decision of a Limited Partner or of the Partners is required or permitted pursuant to this Agreement, except as required by the Act, any Defaulting Limited Partner shall not be entitled to participate in such vote or consent, or to make such decision, and such vote, consent or decision shall be tabulated or made as if such Defaulting Limited Partner were not a Partner.

(d)     The General Partner shall have the right in its sole discretion to (i) determine that a Defaulting Limited Partner shall forfeit to the non-defaulting Partners as recompense for damages suffered, and the Partnership shall withhold (for the account of such other Partners), all distributions of Short-Term Investment Proceeds, Current Proceeds, Disposition Proceeds and liquidating distributions that such Defaulting Limited Partner would otherwise receive and (ii) assess a reduction of 50% or more (or such lesser amount as the General Partner may determine) in the Capital Account balance of the Defaulting Limited Partner. Any amounts forfeited by the Defaulting Limited Partner or reduced by the General Partner pursuant to the preceding sentence shall be distributed among the other Partners in proportion to the amounts by which their respective Capital Contributions, Direct Payments and other payments required to be made by them hereunder were increased as a result of such Defaulting Limited Partner's failure to make such Capital Contributions or other payments.

(e)     The General Partner shall have the right in its sole discretion to cancel the remaining balance of such Defaulting Limited Partner's Unpaid Capital Commitment or cause a forced sale of the Defaulting Limited Partner's Interest; provided that except as set forth in this Section 8.4(e), such Defaulting Limited Partner shall remain fully liable to the Partnership to the extent provided in Section 3.1(a).

(f)     In the event that a Limited Partner defaults in making a Capital Contribution, Direct Payment or other payment (other than any payment pursuant to Section 5.2) required to be made by it hereunder, the General Partner may, subject to Section 3.2, require all of the non-defaulting Partners to increase their Capital Contributions or other payments, as the case may be, by an aggregate amount equal to the Capital Contribution or other payment of the Defaulting Limited Partner on which it defaulted; provided that no Limited Partner will be required to fund amounts in excess of its Unpaid Capital Commitment; and provided, further, that no Partner shall be obligated, without its consent, to contribute an amount in excess of 20% (or $20 million, prior to the Final Closing Date) of such Partner's Capital Commitment for Portfolio Investments issued by a single Portfolio Company. If the General Partner elects to require such increase, the General Partner shall deliver to each non-defaulting Partner written notice of such default as promptly as practicable after its occurrence and, thereafter, with respect to each Portfolio Investment, the General Partner shall as promptly as practicable deliver to each such non-defaulting Partner a Capital Call Notice in respect of the Capital Contribution or other payment

which the Defaulting Limited Partner failed to make. Subject to Section 3.2 and the proviso set forth above in this Section 8.4(f), such Capital Call Notice shall (i) call for a Capital Contribution or other payment by each such non-defaulting Partner in an amount equal to the amount of such non-defaulting Partner's Pro Rata Share of such additional Capital Contribution or other payment and (ii) specify a Payment Date for such Capital Contribution or other payment, which date shall be at least five Business Days from the date of delivery of such Capital Call Notice by the General Partner. If any non-defaulting Limited Partner is not required to make a Capital Contribution or other payment in accordance with this Section 8.4(f) because such Capital Contribution or other payment would be in excess of such Limited Partner's Unpaid Capital Commitment, then, subject to Section 3.2 and the proviso set forth in this Section 8.4 (f), the General Partner shall send to each other non-defaulting Limited Partner which is not subject to the constraint specified above and which is otherwise able to participate in such Portfolio Investment, if applicable, a Capital Call Notice providing the amount of any additional Capital Contribution or other payment which such other non-defaulting Limited Partner shall be required to make as a result of such excess not being funded by the Defaulting Limited Partner, which amount shall bear the same ratio to the aggregate of the additional amounts payable by all such other non-defaulting Limited Partners as such other non-defaulting Limited Partner's Unpaid Capital Commitment bears to the Unpaid Capital Commitments of all such other non-defaulting Limited Partners. The provisions of this Section 8.4(f) shall operate successively until either all non-defaulting Limited Partners able to participate in such Portfolio Investment, if applicable, are subject to the constraint set forth above or the full amount of the Capital Contribution or other payment of the Defaulting Limited Partner has been provided for.

(g)     No right, power or remedy conferred upon the Partnership and the General Partner in this Section 8.4 shall be exclusive, and each such right, power or remedy shall be cumulative and in addition to every other right, power or remedy whether conferred in this Section 8.4 or now or hereafter available at law or in equity or by statute or otherwise. No course of dealing between the Partnership and the General Partner and any Defaulting Limited Partner and no delay in exercising any right, power or remedy conferred in this Section 8.4 or now or hereafter existing at law or in equity or by statute or otherwise shall operate as a waiver or otherwise prejudice any such right, power or remedy.

(h)     Each Limited Partner acknowledges by its execution hereof that it has been admitted to the Partnership in reliance upon its agreements under this Agreement, that the General Partner and the Partnership may have no adequate remedy at law for a breach hereof and that damages resulting from a breach hereof may be impossible to ascertain at the time hereof or of such breach and that, therefore, the only adequate remedy for a breach hereof by a Limited Partner may be equitable relief.

8.5     _Further Actions_.  The General Partner shall cause this Agreement to be amended to the extent necessary or desirable to reflect as appropriate the occurrence of any of the transactions referred to in this Article VIII as promptly as is practicable after such occurrence.

8.6     _Admissions and Withdrawals Generally_.  Except as expressly provided in this Agreement, no Partner shall have the right to withdraw from the Partnership or to withdraw any part of its Capital Account and no additional Partner may be admitted to the Partnership.

Each new Partner shall be admitted as a Partner upon the execution by or on behalf of it of an agreement pursuant to which it becomes bound by the terms of this Agreement. The names of all Persons admitted as Partners and their status as General Partner or a Limited Partner shall be maintained in the records of the Partnership.

       8.7   <u>Required Withdrawals</u>. (a) A Limited Partner, upon demand by the General Partner, shall withdraw all or a portion of its interest in the Partnership if the General Partner determines in good faith that, as a result of the application of law, without such withdrawal a material adverse effect on such Limited Partner and its Affiliates, taken as a whole, or the Partnership or any of its Affiliates, any Portfolio Company or future investments is likely to result; <u>provided</u> that the General Partner shall offer the Limited Partner the opportunity to cure the condition giving rise to such demand for withdrawal, but only to the extent that the General Partner deems it practicable to cure in light of any risk of delay or cost that would harm the Partnership. Notice of any such withdrawal shall be given to all Limited Partners.

       (b)   A Limited Partner shall have the power to withdraw from the Partnership if a material violation of any law, regulation or order to which such Limited Partner is subject is likely to result without such withdrawal, <u>provided</u> that any such Limited Partner shall remain liable to the Partnership to the extent of any breach of a representation, warranty or covenant made by such Limited Partner to the Partnership which results from, arises out of or relates to such withdrawal. A Limited Partner seeking to withdraw pursuant to this Section 8.7 (b) shall supply such opinions of counsel and other information as the General Partner may reasonably request to verify such Limited Partner's right to withdraw pursuant to this Section 8.7 (b).

       (c)   Subject to Section 9.4(c), withdrawals pursuant to this Section 8.7 will be effected by the Partnership's purchase of such Limited Partner's Interest in the Partnership at a price equal to the Appraised Value and for the consideration permitted by Section 8.8 (b). Each Partner will have the first right but not the obligation to purchase its pro rata share of any Interests available as a result of (i) the withdrawal of a Limited Partner pursuant to this Section 8.7 or Section 8.8 or the proposed transfer of such Interests to a Person which is not an Affiliate of such Limited Partner or (ii) the failure of any Partner to exercise such right.

       8.8   <u>Plan Assets Matters</u>.

       (a)   If the General Partner provides to the ERISA Partners the notice contemplated pursuant to Section 4.9(b), or any ERISA Partner whose assets are subject to Title I of ERISA (or which are subject to substantially similar regulations as ERISA) shall deliver to the General Partner an opinion of counsel (which opinion and counsel shall be reasonably satisfactory to the General Partner) to the effect that the assets of the Partnership constitute "plan assets" under ERISA or the Code (which opinion shall be provided by the General Partner to all other ERISA Partners), the General Partner shall then as promptly as practicable use its reasonable efforts to take such actions as it deems necessary and appropriate to prevent or cure the treatment of the Partnership's underlying assets as "plan assets" within the meaning of the Plan Assets Regulation, taking into account the interests of all Partners and of the Partnership as a whole. Without limiting the generality of the foregoing, the General Partner may: (i) permit the transfer, in accordance with this Article VIII, of all or a portion of the Interests of any of the ERISA Partners or Governmental Partners; (ii) terminate the right and obligation of ERISA Partners to

make Capital Contributions to fund Portfolio Investments in accordance with Section 3.1(a); (iii) require, by notice to such ERISA Partners and/or Governmental Partners, any or all ERISA Partners and/or Governmental Partners, as determined by the General Partner to completely or partially withdraw from the Partnership in accordance with the provisions of Section 8.8(b). If within 60 days after the notification described in Section 4.9(b) or receipt of such opinion, the General Partner has not delivered to each ERISA Partner an opinion of counsel (which counsel and opinion shall be reasonably satisfactory to such ERISA Partner), or such other evidence as may be reasonably satisfactory to such ERISA Partner, that the underlying assets of the Partnership do not constitute "plan assets" within the meaning of the Plan Assets Regulation, such ERISA Partner shall withdraw completely or partially from the Partnership, upon receipt by it of a notice from the General Partner, in accordance with the provisions of Section 8.8(b).

(b)    A complete or partial withdrawal pursuant to Section 8.7 or Section 8.8(a) shall be in such amount as specified in the notice from the General Partner to the ERISA or Governmental Partner and will be effected by the Partnership's purchase of the withdrawing Partner's Interest at a price equal to the Appraised Value of such Interest, and for the consideration set forth in this Section 8.8(b). The withdrawing Limited Partner will receive in exchange for its Interest, at the sole discretion of the General Partner, (i) cash or (ii) the withdrawing Partner's pro rata share (based on Percentage Interest), in kind, of each Portfolio Investment of the Partnership; provided that if such distribution in kind would cause the withdrawing Limited Partner or the Partnership to suffer an adverse effect as a result of the application of law (including because such distribution in kind would result in a prohibited transaction under Section 406 of ERISA or Section 4975 of the Code), then the General Partner shall not make such distribution in kind; provided, further, that a non-pro rata distribution in kind may be made with the consent of the withdrawing Limited Partner. The effective date of any withdrawal pursuant to this Section 8.8(b) shall be the last day of the month in which notice of such withdrawal was given pursuant to Section 8.8(a).

(c)    The costs to any ERISA Partner of obtaining or seeking to obtain an opinion of counsel for the purposes of this Section 8.8 shall be borne by such ERISA Partner.

(d)    If the underlying assets of the Partnership at any time are "plan assets" for the purposes of Title I of ERISA or Section 4975 of the Code with respect to any ERISA Partner, then each Limited Partner which is, directly or indirectly, such a plan or the fiduciary of such a plan shall, at the request of the General Partner, identify to the General Partner which of the Persons on a list furnished by the General Partner of Persons with whom the Partnership may have had non-exempt dealings are, to the best of its knowledge after due inquiry, parties in interest or disqualified persons (as defined in sections 3 of ERISA and 4975 of the Code, respectively) with respect to such plan.

(e)    If a Limited Partner withdraws from the Partnership pursuant to Section 8.7 or this Section 8.8, (i) the portion, if any, of the Permanent Investments attributable to the Carried Interest allocable to the General Partner with respect to such Limited Partner's Interest shall remain in the Partnership in cash or in kind, as the case may be, and shall be held solely for the account of the General Partner, (ii) the portion of such Limited Partner's Capital Account corresponding to such portion of the Permanent Investments shall be allocated to the Capital Account of the General Partner, (iii) the General Partner shall be entitled to the proceeds from

the disposition of such portion of the Permanent Investments at the time of their disposition and (iv) such Limited Partner shall not be entitled to any such amounts from the Partnership pursuant to Section 9.4 or otherwise; provided that in no way shall this limit any Limited Partner's obligations under Section 5.2.

### ARTICLE IX
### Term And Dissolution
### Of The Partnership

9.1    Term.  The existence of the Partnership commenced on the date of the filing of the Certificate of Limited Partnership pursuant to the Act and shall continue until the Partnership is dissolved and subsequently terminated, which dissolution shall occur upon the first of any of the following events (each an "Event of Dissolution"):

(a)    The expiration of the term of the Partnership in accordance with Section 2.7;

(b)    After the Commitment Period, at the time as of which all Portfolio Investments have been disposed of; and

(c)    The determination by the General Partner in good faith to the Partnership that such earlier dissolution and termination is necessary or advisable because there has been a materially adverse change in any applicable law or regulation or to avoid any violation of, or registration under, the Investment Company Act or ERISA.

9.2    Winding-up.  Upon the occurrence of an Event of Dissolution, the Partnership shall be wound up and liquidated. The General Partner or, if there is no general partner, a liquidator appointed by a Majority in Interest of the Limited Partners shall proceed with the Dissolution Sale and the Final Distribution. In the Dissolution Sale, the General Partner or such liquidator shall use its best efforts to reduce to cash and cash equivalent items such assets of the Partnership as the General Partner or such liquidator shall deem it advisable to sell, subject to obtaining fair value for such assets and any tax or other legal considerations (including legal restrictions on the ability of a Limited Partner to hold any assets to be distributed in kind). Upon the occurrence of an Event of Dissolution, the General Partner or liquidator shall have all of the powers of the General Partner prior to such Event of Dissolution.

9.3    Final Distribution.  After the Dissolution Sale, the proceeds thereof and the other assets of the Partnership shall be distributed in one or more installments in the following order of priority:

(a)    to the payment of the expenses of the winding-up, liquidation and dissolution of the Partnership;

(b)    to pay all creditors of the Partnership, including, in accordance with the terms agreed among them and otherwise on a pro rata basis, Partners who are creditors (other than with respect to distributions owing to them or to former Partners hereunder) either by the payment thereof or the making of reasonable provision therefor; and

(c)    to establish any reserves, in amounts determined by the General Partner or such liquidator, which the General Partner or such liquidator may deem necessary to meet any other obligations or liabilities (whether contingent, unforeseen or otherwise) of the Partnership other than to the Partners or former partners in respect of distributions owing to them hereunder, which reserves may be paid over by the General Partner or such liquidator to any attorney at law or other acceptable party, as escrow agent, to be held for disbursement in payment of any such liabilities or obligations. At the expiration of such period as shall be deemed advisable by the General Partner or such liquidator, any balance shall be distributed in accordance with this Section 9.3; provided that all amounts paid over to such escrow agent shall be deemed distributed for purposes of Section 3.5.

The remaining proceeds, if any, plus any remaining assets of the Partnership, shall be applied and distributed to the Partners as soon as practicable in the same manner as distributions under Section 3.5. If a Limited Partner shall, upon the advice of counsel, determine that there is a reasonable likelihood that any distribution in kind of an asset would cause such Limited Partner to be in violation of any law, regulation or order (including because such distribution in kind would result in a prohibited transaction under Section 406 of ERISA or Section 4975 of the Code), such Limited Partner and the General Partner or the liquidator shall each use its best efforts to make alternative arrangements for the sale or transfer into an escrow account of any such distribution on mutually agreeable terms.

9.4    General Partner Clawback.  (a) If, following the dissolution, winding up and termination of the Partnership and the distribution of all or substantially all of the Partnership's assets (the date of such event being the "Clawback Determination Date"), distributions of Carried Interest to the General Partner (which term shall include any former General Partner for purposes of this Section 9.4(a)) have been made with respect to any Limited Partner which is not an Affiliated Investor and either:

(i)    8% Preferred Return Clawback: The Cumulative Net Distributions with respect to such Limited Partner do not represent at least the Preferred Return with respect to such Limited Partner, or

(ii)    80/20 Clawback: The aggregate distributions of Carried Interest to the General Partner with respect to any Limited Partner (net of any such amounts previously returned to the Partnership by the General Partner as Interim Clawback Amounts or otherwise) exceeds 20% of the sum of (A) the Cumulative Net Distributions with respect to such Limited Partner, and (B) the aggregate distributions of Carried Interest to the General Partner with respect to such Limited Partner (net of any such amounts previously returned to the Partnership by the General Partner as Interim Clawback Amounts or otherwise),

in each case determined after giving effect to all transactions through the Clawback Determination Date, then the General Partner shall be obligated to return promptly to the Partnership, by means of payments made to the Partnership by or on behalf of the General Partner, the lesser of (x) the Final Clawback Amount (as defined below) with respect to such Limited Partner and (y) the After-Tax Amount of the aggregate distributions of Carried Interest to the General Partner with respect to such Limited Partner (net of any such amounts previously

returned to the Partnership by the General Partner) - The "Final Clawback Amount" with respect to a Limited Partner is the greater of:

    (I)    *8% Preferred Return Clawback:* An amount such that if such amount were distributed to such Limited Partner, the Cumulative Net Distributions with respect to such Limited Partner (after increase for such amount) would represent the Preferred Return with respect to such Limited Partner, and

    (II)    *80/20 Clawback:* An amount such that if such amount were distributed to such Limited Partner, the aggregate distributions of Carried Interest to the General Partner with respect to such Limited Partner (after reduction for such amount), minus any Interim Clawback Amount with respect to such Limited Partner, would equal 20% of the sum of (A) such Limited Partner's Cumulative Net Distributions (after increase for such amount) and (B) the aggregate distributions of Carried Interest to the General Partner with respect to such Limited Partner (after reduction for such amount), minus any Interim Clawback Amount with respect to such Limited Partner.

The payment of such amount to the Partnership shall constitute full satisfaction by the General Partner of its obligation (the "Clawback Obligation") under this Section 9.4 in respect of such Limited Partner. The Partnership shall distribute any amount so returned to such Limited Partner.

    (b)    If a successor general partner replaces the General Partner pursuant to Section 4.10(b) or 9.1(b), the Clawback Obligation with respect to a Limited Partner shall be divided among all Persons who are or were a general partner hereunder in proportion to their respective distributions of Carried Interest actually received with respect to such Limited Partner.

    (c)    If a Limited Partner withdraws pursuant to Section 8.7 or 8.8, the General Partner (including any former General Partner) shall pay to the Partnership on the date of such withdrawal, for distribution to such Limited Partner, an amount equal to the aggregate amount that would be payable pursuant to Section 9.4(a) on such date as if such date were the Clawback Determination Date, determined on the assumption that all remaining Portfolio Investments were sold on such date for their Fair Market Values determined pursuant to Section 4.7 and the proceeds therefrom were distributed to the Partners. The payment of such amount to the Partnership shall constitute full satisfaction by the General Partner (including any former general partner) of its Clawback Obligation with respect to such Limited Partner.

## ARTICLE X
### Capital Accounts And
### Allocations Of Profits And Losses

    10.1    Capital Accounts. (a) A separate capital account ("Capital Account") shall be established and maintained for each Partner. The Partnership's income, gain, loss, deduction or credit (or items thereof) shall be allocated to each Partner in accordance with the economic arrangement of the Partners set forth in this Agreement; provided, however, that any

allocations made for tax purposes shall either have "substantial economic effect" or be made in accordance with each Partner's "interest in the partnership" within the meaning of U.S. Treasury Regulations Section 1.704-1(b) as determined by the Partnership's accountant.

10.2    Tax Advances.  (a) To the extent the General Partner reasonably determines that the Partnership is required by law to withhold or to make tax payments on behalf of or with respect to any Partner (e.g., backup withholding taxes) ("Tax Advances"), the General Partner may withhold such amounts and make such tax payments as so required. All Tax Advances (together with interest thereon at the Reference Rate if such Tax Advance took the form of a tax payment rather than withholding) made on behalf of a Partner shall, at the option of the General Partner, (i) be paid promptly to the Partnership by the Partner on whose behalf such Tax Advances were made or (ii) be repaid by reducing the amount of the current or next succeeding distribution or distributions which would otherwise have been made to such Partner or, if such distributions are not sufficient for that purpose, by so reducing the proceeds of liquidation otherwise payable to such Partner. Whenever the General Partner selects option (ii) pursuant to the preceding sentence for repayment of a Tax Advance by a Partner, for all other purposes of this Agreement such Partner shall be treated as having received all distributions (whether before or upon liquidation) unreduced by the amount of such Tax Advance. Each Partner hereby agrees to indemnify and hold harmless the Partnership and the other Partners from and against any liability (including, without limitation, any liability for taxes, penalties, additions to tax, interest or failure to withhold taxes) with respect to income attributable to or distributions or other payments to such Partner.

(b)    The General Partner may receive a cash advance against distributions of Carried Interest to the extent that annual distributions of Carried Interest actually received by the General Partner are not sufficient for the General Partner or any of its members or other beneficial owners (whether such interests are held directly or indirectly) to pay when due any income tax imposed on it or them with respect to allocations relating to Carried Interest, calculated using the Assumed Income Tax Rate that is attributable to income allocated to the General Partner hereunder ("Tax Distribution"). In determining the amount of such Tax Distribution there shall be taken into account prior losses of the Partnership allocable to the General Partner to the extent such losses reduce the amount of income tax imposed on allocations in respect of the Carried Interest as determined in the sole discretion of the General Partner. Amounts distributed pursuant to this Section 10.2(b) shall be treated as distributions for purposes of Sections 3.5 and 9.4 and shall be taken into account in determining subsequent distributions under Section 3.5.

ARTICLE XI
Miscellaneous

11.1    Waiver of Accounting.  Except as may be otherwise required by law in connection with the winding-up, liquidation and dissolution of the Partnership, each Partner hereby irrevocably waives any and all rights that it may have to maintain an action for an accounting, partition or similar action of any of the Partnership's property.

11.2    Power of Attorney.  Each Limited Partner hereby irrevocably constitutes and appoints the General Partner, with full power of substitution, the true and lawful attorney-in-fact and agent of such Limited Partner, to execute, acknowledge, verify, swear to, deliver, record

and file, in its or its assignee's name, place and stead, all in accordance with the terms of this Agreement, all instruments, documents and certificates which may from time to time be required by the laws of the United States, the State of Delaware, any other jurisdiction in which the Partnership conducts or plans to conduct its affairs in the future, or any political subdivision or agency thereof to effectuate, implement and continue the valid existence and affairs of the Partnership, including, without limitation, the power and authority to verify, swear to, acknowledge, deliver, record and file:

(i)      all certificates and other instruments, including any amendments to this Agreement or to the Certificate of Limited Partnership, which the General Partner deems appropriate to form, qualify or continue the Partnership as a limited partnership (or a partnership in which the limited partners have limited liability) in the State of Delaware and all other jurisdictions in which the Partnership conducts or plans to conduct its affairs;

(ii)      any amendments to this Agreement or any other agreement or instrument which the General Partner deems appropriate to (A) effect the addition, substitution or removal of any Limited Partner or General Partner pursuant to this Agreement or (B) effect any other amendment or modification to this Agreement, but only if such amendment or modification is duly adopted in accordance with the terms hereof;

(iii)      all conveyances and other instruments which the General Partner deems appropriate to reflect the dissolution and termination of the Partnership pursuant to the terms hereof, including the writing required by the Act to cancel the Certificate of Limited Partnership;

(iv)      all instruments relating to transfers of Interests of Limited Partners or to the admission of any substitute Limited Partner;

(v)      all certificates of assumed name and such other certificates and instruments as may be necessary under the fictitious or assumed name statutes from time to time in effect in the State of Delaware and all other jurisdictions in which the Partnership conducts or plans to conduct its affairs; and

(vi)      any other instruments determined by the General Partner to be necessary or appropriate in connection with the proper conduct of the business of the Partnership and which do not adversely affect the interests of any of the Limited Partners.

Such attorney-in-fact and agent shall not, however, have the right, power or authority to amend or modify this Agreement when acting in such capacities, except to the extent authorized herein. This power of attorney shall terminate upon the bankruptcy, dissolution, disability or incompetence of the General Partner. The power of attorney granted herein shall be deemed to be coupled with an interest, shall be irrevocable, shall survive and not be affected by the dissolution, bankruptcy or legal disability of any Limited Partner and shall extend to its successors and assigns; and may be exercisable by such attorney-in-fact and agent for all Limited Partners (or any of them) by listing all (or any) of such Limited Partners required to execute any such instrument, and executing such instrument acting as attorney-in-fact.  Any person dealing

with the Partnership may conclusively presume and rely upon the fact that any instrument referred to above, executed by such attorney-in-fact and agent, is authorized, regular and binding, without further inquiry. If required, each Limited Partner shall execute and deliver to the General Partner within five (5) days after the receipt of a request therefor, such further designations, powers of attorney or other instruments as the General Partner shall reasonably deem necessary for the purposes hereof.

11.3    Amendments. (a) Except as required by law, this Agreement (including the Annexes hereto) may be amended or supplemented by the written consent of the General Partner and a Majority in Interest of the Limited Partners; provided that other than as expressly provided by this Agreement no such amendment shall:

(i)    increase any Limited Partner's Capital Commitment, reduce its share of the Partnership's distributions, income and gains, increase its share of the Partnership's losses or increase the Management Fee payable by such Limited Partner, without, in each case, the written consent of each Limited Partner so affected;

(ii)    change the percentage of interests of Limited Partners (the "Required Interest") necessary for any consent required hereunder to the taking of an action unless such amendment is approved by Limited Partners who then hold interests equal to or in excess of the Required Interest for the subject of such proposed amendment;

(iii)    amend this Section 11.3 without the consent of each 'Limited Partner;

(iv)    make any amendment or supplement to Sections 4.9 or 8.8 hereof or any other provision of this Agreement which deals with ERISA without the consent of a Majority in Interest of the ERISA Partners;

(v)    make any material amendments to Section 4.10 hereof so as to adversely affect the rights and protections of any Non-U.S. Limited Partners, without the consent of a Majority in Interest of the Non-U.S. Limited Partners; or

(vi)    amend Section 5.1(c) in any manner adverse to the interests of BHC Partners without the consent of a Majority in Interest of the BHC Partners.

Notwithstanding the foregoing, this Agreement may be amended by the General Partner without the consent of the Limited Partners (1) to (x) change the name of the Partnership pursuant to Section 2.2 hereof, (y) cure any ambiguity or correct or supplement any provision hereof which is incomplete or inconsistent with any other provision hereof or correct any printing, stenographic or clerical error or omissions, provided that such amendment does not materially adversely affect the Interests of any of the Limited Partners (other than those Limited Partners who approve such amendment), and (z) amend Sections 10.2 to 10.5 pursuant to Section 10.5, (2) in connection with any Subsequent Closing, if such amendment is not materially adverse to the Limited Partners, provided that written notice of such amendment shall be given to the Limited Partners at least ten (10) Business Days prior to the effective date of such amendment and (3) to waive, reduce or delay the amounts the General Partner is entitled to receive as a Carried Interest with respect to some or all Limited Partners.

(b)    The General Partner shall have the right to amend this Agreement without the approval of any other Partner to the extent the General Partner reasonably determines, based upon written advice of tax counsel to the Partnership, that the amendment is necessary to provide assurance that the Partnership will not be treated as a "publicly traded partnership," because it is entitled to "safe harbor" treatment under Section 7704 of the Code and the regulations promulgated thereunder; provided that (i) such amendment shall not change the relative economic interests of the Partners, reduce any Partners' share of distributions, or increase any Partner's Capital Commitment or its liability hereunder and (ii) the General Partner provides a copy of such written advice and amendment to the Limited Partners at least ten (10) days prior to the effective date of any such amendment.

11.4    Entire Agreement.  This Agreement and the other agreements referred to herein constitute the entire agreement among the Partners and between the Partners and the Initial Limited Partner with respect to the subject matter hereof and supersede any prior agreement or understanding among or between them with respect to such subject matter.  The representations and warranties of the Limited Partners in, and the other provisions of, the Subscription Agreements shall survive the execution and delivery of the Subscription Agreement and this Agreement.

11.5    Severability.  Each provision of this Agreement shall be considered severable and if for any reason any provision which is not essential to the effectuation of the basic purposes of this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable and contrary to the Act or existing or future applicable law, such invalidity shall not impair the operation of or affect those provisions of this Agreement which are valid.  In that case, this Agreement shall be construed so as to limit any term or provision so as to make it enforceable or valid within the requirements of any applicable law, and in the event such term or provision cannot be so limited, this Agreement shall be construed to omit such invalid or unenforceable provisions.

11.6    Notices.  All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given if (i) delivered or mailed, certified mail, return receipt requested, (ii) sent by overnight mail or courier or (iii) transmitted via telegram or telex or facsimile transmission, if to any Partner, at such Partner's business address, and if to the Partnership, to the General Partner at the General Partner's business address, or to such other person or address as any Partner shall have last designated by notice to the Partnership, and in the case of a change in address by the General Partner, by notice to the Limited Partners.  Any notice shall be deemed to have been duly given if personally delivered or sent by the mails or by telegram or telex or facsimile transmission and will be deemed received (i) if sent by certified or registered mail, return receipt requested, when actually received, (ii) if sent by overnight mail or courier, when actually received, (iii) if sent by telegram or telex or facsimile transmission, on the date of confirmation (electronic or otherwise) of receipt or, if such confirmation is received after normal business hours of the recipient, on the first Business Day following such confirmation, (iv) if sent by email, on the date of confirmation of receipt (which may be a reply email)and (v) if delivered by hand, on the date of receipt.

11.7    Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware.  In particular, the Partnership is formed

pursuant to the Act, and the rights and liabilities of the Partners shall be as provided therein, except as herein otherwise expressly provided.

      11.8   Jurisdiction; Venue. (a) Any action or proceeding against the parties relating in any way to this Agreement may be brought and enforced in the courts of the State of New York located in New York County and, to the extent subject matter jurisdiction exists therefor, in the courts of the United States for the Southern District of New York, and the parties irrevocably submit to the nonexclusive jurisdiction of the foregoing courts in respect of any such action or proceeding. The parties irrevocably waive, to the fullest extent permitted by law, any objection that they may now or hereafter have to the laying of venue of any such action or proceeding in any such court and any claim that any such action or proceeding brought in any such court has been brought in an inconvenient forum. The parties agree that any process or notice of motion or other application to any such court may be served by certified mail, return receipt requested, or by personal service or in such other manner as may be permissible under the rules of the applicable court, provided a reasonable time for appearance is allowed. The provisions of this Section 11.8 shall survive the termination of this Agreement.

      (b)    Notwithstanding paragraph 11.8(a), a Limited Partner which is a governmental entity and which has provided the General Partner, prior to the date of its admission as a Limited Partner, with a certificate of an officer of its plan administrator stating that such an irrevocable submission to jurisdiction or waiver, as the case may be, would constitute a violation of, applicable law or regulation shall not be deemed to have made such an irrevocable submission or waiver, as the case may be.

      (c)    EACH OF THE PARTIES HERETO (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS EQUITY HOLDERS) WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THIS AGREEMENT.

      11.9   Successors and Assigns. Except with respect to the rights of Indemnified Parties hereunder, none of the provisions of this Agreement shall be for the benefit of or enforceable by the creditors of the Partnership and this Agreement shall be binding upon and inure to the benefit of the Partners, the Initial Limited Partner, and their legal representatives, heirs, successors and permitted assigns.

      11.10   Counterparts. This Agreement may be executed in one or more counterparts, all of which shall constitute one and the same instrument.

      11.11   Interpretation. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in either the masculine or the neuter gender shall include the masculine, the feminine and the neuter.

      11.12   Headings. The section headings in this Agreement are for convenience of reference only, and shall not be deemed to alter or affect the meaning or interpretation of any provisions hereof.

9600899.13

59

11.13  Confidentiality.  Each Limited Partner will maintain the confidentiality of information and materials regarding the Partnership, the General Partner, the Manager and each Portfolio Company furnished by the General Partner (whether or not such information or materials have been designated by the General Partner as Confidential Information) (including (a) information regarding any investment in which the Partnership holds, or contemplates acquiring, an interest and (b) the identity of any Limited Partner) received by such Limited Partner pursuant to this Agreement in accordance with such procedures as it applies generally to information of this kind (including procedures relating to information sharing with affiliates), except (x) as otherwise required by governmental regulatory agencies, self-regulating bodies, law, legal process, or litigation in which such Limited Partner is a defendant, plaintiff or other named party and (y) as such Limited Partner furnishes to its Affiliates or advisors; provided that such Limited Partner shall be liable to the Partnership and the General Partner for any such Affiliate's or advisor's failure to comply with the terms of this Section 11.13.  Notwithstanding the foregoing, each Limited Partner (and each employee, representative, or other agent of such Limited Partner) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of (i) the Partnership and (ii) any of its transactions, and all materials of any kind (including opinions or other tax analyses) that are provided to the Limited Partner relating to such tax treatment and tax structure.

11.14  Partnership Tax Status.  The Partners intend that the Partnership will be treated as a partnership for U.S. federal, state and local income tax purposes, and no election to the contrary shall be made.

[Remainder of page intentionally left blank]

9600899.13

60

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed on the date first above written.

GENERAL PARTNER:

GOLDIN CAPITAL PARTNERS, L.P.

By: Goldin Capital Partners, L.L.C.,
its general partner

By:_____
     Name: Harrison J. Goldin
     Title: Managing Member

LIMITED PARTNERS:

All Limited Partners now and hereafter admitted pursuant to powers of attorney now and hereafter granted to the General Partner

By: Goldin Capital Partners, L.P., as attorney-in-fact for the parties whose Subscription Agreements have been accepted by the General Partner

By: Goldin Capital Partners, L.L.C.,
its general partner

By:_____
     Name: Harrison J. Goldin
     Title: Managing Member

MANAGER:

GOLDIN CAPITAL PARTNERS, L.P.

By: Goldin Capital Partners, L.L.C.,
its general partner

By:_____
     Name:
     Title:

9600899.13