## EXHIBIT C

## Subscription Documents Executed by Plaintiff

# GOLDIN RESTRUCTURING FUND, L.P.

## Subscription Documents

**General Partner:**

**Goldin Capital Partners, L.P.**
**400 Madison Avenue**
**10th Floor**
**New York, NY 10017**

9627281.3

## INVESTMENT PROCEDURES

Prospective investors should read the Confidential Private Placement Memorandum for Goldin Restructuring Fund, L.P. (the "Partnership"), the Limited Partnership Agreement of the Partnership as well as this booklet and the Anti-Money Laundering Supplement prior to subscribing to the Partnership.

If you are interested in purchasing an Interest (as defined herein), please complete all applicable pages as indicated below and promptly return this booklet and the Anti-Money Laundering Supplement as instructed below to reserve an Interest in the Partnership:

- Investor Profile Form (pages 9-10)

- General Eligibility Representations (pages 11-18)

- Certification of Non-Foreign Status and Substitute Form W-9 (page 14)

- Signature Pages (pages 19-20)

- Notarization Acknowledgment (page 21)

- Anti-Money Laundering Supplement (page S-1 – S-6)

Upon acceptance of the Investor's subscription by the Partnership, a copy of the executed Signature Page will be countersigned by the Partnership and returned to the prospective Investor.

**All references to "$" or "dollars" refer to the currency of the United States, unless otherwise noted.**

**For additional information, please contact Lawrence J. Krule at Goldin Capital Partners, L.P. (the "General Partner") at (212) 593-2255.**

Please send completed and executed copies of this subscription agreement and all attachments hereto as follows:

By Overnight Mail (2 originals):          Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
Attn: Alexander Katz
Tel.: (212) 756-2259
Fax: (212) 593-5955

9627281.3

## WIRING INSTRUCTIONS

[Wiring instructions will be provided to investors prior to closing.]

**IMPORTANT**

1.  Please have your bank identify your name on the wire transfer.

2.  We recommend that your bank charge its wiring fees separately so that the amount you have elected to invest may be invested.

9627281.3

## SUBSCRIPTION AGREEMENT

Goldin Restructuring Fund, L.P.
c/o Goldin Capital Partners, L.P.
400 Madison Avenue
10th Floor
New York, NY 10017
Attn.: Lawrence J. Krule

**Re:    Goldin Restructuring Fund, L.P.—Issuance of Limited Partnership Interests**

The undersigned (the "Investor") wishes to become a limited partner of Goldin Restructuring Fund, L.P. (the "Partnership"), a Delaware limited partnership, and to purchase a limited partnership interest (an "Interest") in the Partnership upon the terms and conditions set forth herein, in the Confidential Private Placement Memorandum of the Partnership, as the same may be updated or modified from time to time (the "Memorandum"), and in the Limited Partnership Agreement of the Partnership, as the same may be amended from time to time (the "Partnership Agreement"). Capitalized terms used herein but not defined herein shall have the meanings assigned to them in the Partnership Agreement.

Accordingly, the Investor agrees as follows:

**I.    SUBSCRIPTION FOR AN INTEREST**

(A)    The Investor agrees to become a limited partner of the Partnership (a "Limited Partner") and, in connection therewith, subscribes for and agrees to purchase an Interest, to make a capital commitment (a "Capital Commitment") to the Partnership in the amount indicated on the Investor Profile Form and to make capital contributions ("Capital Contributions") to the Partnership as provided in the Partnership Agreement. The minimum initial subscription is $1,000,000, subject to the discretion of Goldin Capital Partners, L.P. (the "General Partner") to accept a lower amount.

(B)    The Investor understands and agrees that the General Partner reserves the right to reject this subscription for an Interest for any reason or no reason, in whole or in part, at any time prior to its acceptance. If the subscription is rejected, the Payment will be returned promptly to the Investor and this subscription agreement (the "Subscription Agreement") shall have no force or effect. Upon acceptance of this subscription by the Partnership, the Investor shall become a Limited Partner.

## II.    REPRESENTATIONS AND COVENANTS OF THE INVESTOR

(A)    The Investor will not sell or otherwise transfer the Interest without registration under the Securities Act of 1933, as amended (the "Securities Act"), or an exemption therefrom. The Investor understands and agrees that it must bear the economic risk of its investment for an indefinite period of time) because, among other reasons, the Investor's capital generally may not be withdrawn from the Partnership and the Interest has not been registered under the Securities Act or under the securities laws of certain states and, therefore, cannot be resold, pledged, assigned or otherwise disposed of unless it is so registered or an exemption from registration is available. The Investor understands that the Partnership is under no obligation to register the Interest on its behalf or to assist it in complying with any exemption from registration under the Securities Act. It also understands that sales or transfers of the Interest are further restricted by the Partnership Agreement, pursuant to which the Interests may not be transferred without the consent of the General Partner, and applicable securities laws. The Investor further understands that an Investor may not withdraw from the Partnership prior to the Partnership's dissolution and winding up and that the Interests are not redeemable or repurchasable by the Partnership at the option of the Investor. Furthermore, the Interest can only be transferred with the prior authorization of the General Partner, which may be withheld in the General Partner's sole discretion. The Investor understands and acknowledges that the General Partner in its sole discretion may cause a compulsory withdrawal of all or any portion of the Investor's Interest in accordance with the Partnership Agreement.

(B)    The Investor has received, carefully read and understands the Partnership Agreement and the Memorandum outlining, among other things, the organization and investment objectives and policies of, and the risks and expenses of an investment in, the Partnership. The Investor acknowledges that it has made an independent decision to invest in the Partnership and that, in making its decision to subscribe for an Interest, the Investor has relied solely upon the Memorandum, the Partnership Agreement and independent investigations made by the Investor. The Investor is not relying on the Partnership or the General Partner, or any other person or entity with respect to the legal, tax and other economic considerations involved in this investment other than the Investor's own advisers. The Investor's investment in the Interest is consistent with the investment purposes, objectives and cash flow requirements of the Investor and will not adversely affect the Investor's overall need for diversification and liquidity.

The Investor acknowledges that it is not subscribing pursuant hereto for an Interest as a result of or pursuant to: (i) any advertisement, article, notice or other communications published in any newspaper, magazine or similar media (including any internet site whose information about the Partnership is not password protected) or broadcast over television or radio; or (ii) any seminar or meeting whose attendees, including the Investor, had been invited as a result of, or pursuant to, any of the foregoing.

The Investor has been provided an opportunity to obtain any additional information concerning the offering, the Partnership and all other information to the extent the Partnership or the General Partner possesses such information or can acquire it without unreasonable effort or expense, and has been given the opportunity to ask questions of, and receive answers from, the General Partner concerning the terms and conditions of the offering and other matters pertaining to this investment.

(C)    The Investor has not reproduced, duplicated or delivered the Memorandum, the Partnership Agreement or this Subscription Agreement to any other person, except professional advisers to the Investor or as instructed by the General Partner. Notwithstanding the foregoing, the Investor (and each employee, representative or other agent of the Investor) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of (i) the Partnership and (ii) any of its transactions, and all materials of any kind (including opinions or other tax analyses) that are provided to the Investor relating to such tax treatment and tax structure.

(D)    The Investor has such knowledge and experience in financial and business matters that the Investor is capable of evaluating the merits and risks of the Investor's investment in the Partnership and is able to bear such risks, and has obtained, in the Investor's judgment, sufficient information from the General Partner to evaluate the merits and risks of such investment. The Investor has evaluated the risks of investing in the Partnership, understands there are substantial risks of loss incidental to the purchase of an Interest and has determined that the Interest is a suitable investment for the Investor.

(E)    The Investor is aware of the limited provisions for transferability and withdrawal from the Partnership and has read the sections of the Memorandum entitled "Transferability." The Investor has no need for liquidity in this investment, can afford a complete loss of the investment in the Interest and can afford to hold the investment for an indefinite period of time. The Investor acknowledges that distributions, including, without limitation, the proceeds of withdrawals, may be paid in cash or in kind.

(F)    The Investor is acquiring the Interest for its own account, for investment purposes only and not with a view toward distributing or reselling the Interest in whole or in part.

(G)    The Investor understands the method of compensation under the Partnership Agreement between the Partnership and the General Partner and the Partnership and Goldin Capital Management, L.P. (the "Manager") and understands the Carried Interest and the Management Fee (each as defined in the Partnership Agreement):

(H)    The Investor understands that subject to certain limitations, during the term of the Partnership, the General Partner may require an Investor (including any former Investor) to return distributions made to such Investor for the purpose of meeting such Investor's pro rata share of the Partnership's indemnity or other obligations in an amount up to, but in no event in excess of its unpaid Capital Commitment plus up to 50% of the aggregate amount of distributions actually received by such Investor of such Investor's Capital Commitments. No Investor will be required to return a distribution more than three years after the date of dissolution of the Partnership.

(I)    The Investor acknowledges and agrees that, during the Commitment Period, any amounts received by the Partnership as a return of capital with respect to any Stake-Out Investments may, in the discretion of the General Partner, be retained by the Partnership without reducing the Investors' unfunded commitments, for the purpose of making Partnership investments and paying Partnership expenses, or may be returned to the Investors, thereby increasing their unfunded commitments (but not above their total Capital Commitments to the Partnership).

(J)    The Investor understands that:

    (i)    No federal or state agency has passed upon the Interests or made any findings or determination as to the fairness of this investment; and

    (ii)    The representations, warranties, agreements, undertakings and acknowledgments made by the Investor in this Subscription Agreement will be relied upon by the Partnership and the General Partner in determining the Investor's suitability as a purchaser of an Interest and the Partnership's compliance with federal and state securities laws, and shall survive the Investor's admission as a Limited Partner.

(K)    The Investor has all requisite power, authority and capacity to acquire and hold the Interest and to execute, deliver and comply with the terms of each of the instruments required to be executed and delivered by the Investor in connection with the Investor's subscription for the Interest, including this Subscription Agreement, and such execution, delivery and compliance does not conflict with, or constitute a default under, any instruments governing the Investor, or violate any law, regulation or order, or any agreement to which the Investor is a party or by which the Investor may be bound. If the Investor

is an entity, the person executing and delivering each of such instruments on behalf of the Investor has all requisite power, authority and capacity to execute and deliver such instruments, and, upon request by the Partnership or the General Partner, will furnish to the Partnership true and correct copies of any instruments governing the Investor, including all amendments thereto.

(L)    All information which the Investor has provided to the Partnership or the General Partner concerning the Investor, the Investor's status, financial position and knowledge and experience of financial, tax and business matters, or, in the case of an Investor that is an entity, the knowledge and experience of financial, tax and business matters of the person making the investment decision on behalf of such entity, is correct and complete as of the date set forth herein.

(M)    The Investor understands that the Partnership will not register as an investment company under the Investment Company Act of 1940, as amended (the "Company Act"), nor will it make a public offering of its securities within the United States. The Investor understands that the Partnership intends to comply with Section 3(c)(1) of the Company Act, and, accordingly, the Interests may not be beneficially owned by more than 100 persons. If the Investor is an entity, the Investor represents that (i) it was not formed for the purpose of investing in the Partnership, (ii) it does not invest more than 40% of its total assets in the Partnership, (iii) each of its beneficial owners participates in investments made by the Investor pro rata in accordance with its interest in the Investor and, accordingly, its beneficial owners cannot opt in or out of investments made by the Investor, and (iv) its beneficial owners did not and will not contribute additional capital (other than previously committed capital) for the purpose of purchasing the Interests.

(N)    If the Investor is a plan, as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and/or Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended (the "Code"), or an entity whose underlying assets constitute "plan assets" under the U.S. Department of Labor's plan asset regulation at 29 CFR 2510.3-101 (a "Plan"), the person executing this Subscription Agreement on behalf of the Plan (the "Fiduciary") represents and warrants to the Partnership that:

1.    such person is a "fiduciary" of such Plan and trust and/or custodial account within the meaning of Section 3(21) of ERISA, and/or Section 4975(e)(3) of the Code and such person is authorized to execute the Subscription Agreement;

2.    unless otherwise indicated in writing to the Partnership, the Plan is not a participant-directed defined contribution plan;

3.    the Fiduciary has considered a number of factors with respect to the Plan's investment in the Interest and has determined that, in view of such considerations, the purchase of an Interest is consistent with the Fiduciary's responsibilities under ERISA. Such factors include, but are not limited to:

(a)    the role such investment or investment course of action plays in that portion of the Plan's portfolio that the Fiduciary manages;

(b)    whether the investment or investment course of action is reasonably designed as part of that portion of the portfolio managed by the Fiduciary to further the purposes of the Plan, taking into account both the risk of loss and the opportunity for gain that could result therefrom;

(c)    the composition of that portion of the portfolio that the Fiduciary manages with regard to diversification;

9627281.3                                  4

(d)    the liquidity and current rate of return of that portion of the portfolio managed by the Fiduciary relative to the anticipated cash flow requirements of the Plan;

(e)    the projected return of that portion of the portfolio managed by the Fiduciary relative to the funding objectives of the Plan; and

(f)    the risks associated with an investment in the Partnership and the fact that the Investor has only limited withdrawal rights.

4.    the investment in the Partnership has been duly authorized under, and conforms in all respects to, the documents governing the Plan and the Fiduciary;

5.    the Fiduciary is: (a) responsible for the decision to invest in the Partnership; (b) independent of the Partnership; and (c) qualified to make such investment decision;

6.    (a) neither the General Partner nor any of its employees or affiliates: (i) manages any part of the Investor's investment portfolio on a discretionary basis; (ii) regularly gives investment advice with respect to the assets of the Investor; (iii) has an agreement or understanding, written or unwritten, with the Investor under which the latter receives information, recommendations or advice concerning investments which are used as a primary basis for the Investor's investment decisions; or (iv) has an agreement or understanding, written or unwritten, with the Investor under which the latter receives individualized investment advice concerning the Investor's assets;

OR

(b): (i) the Fiduciary, who is independent of the General Partner, has studied the Memorandum and has made an independent decision to purchase Interests solely on the basis of such Memorandum and without reliance on any other information or statements as to the appropriateness of this investment for the Investor; and (ii) the Investor represents and warrants that neither the General Partner nor any of its employees or affiliates: (A) has exercised any investment discretion or control with respect to the Investor's purchase of Interests; (B) has authority, responsibility to give, or has given individualized investment advice with respect to the Investor's purchase of the Interests; or (C) is the employer maintaining or contributing to such Plan.

(O)    If applicable, the Investor has identified its status as a Benefit Plan Investor (as defined below) to the Partnership on page 11. If the Investor has identified to the Partnership on page 11 that it is not currently a Benefit Plan Investor, but becomes a Benefit Plan Investor, the Investor shall forthwith disclose to the General Partner promptly in writing such fact and also the percentage of such Investor's equity interests held by Benefit Plan Investors. For these purposes, a "Benefit Plan Investor," as defined under the Department of Labor Regulation Section 2510.3-101(f), includes, but is not limited to, retirement and other employee benefit plans subject to ERISA and employee benefit plans and arrangements not subject to ERISA, such as U.S. and non-U.S. governmental plans, church plans, non-U.S. retirement, health and welfare plans and individual retirement accounts, as well as entities whose underlying assets include plan assets by reason of investment by plans in such entities.

(P)    If the Investor is an insurance company and is investing the assets of its general account in the Partnership, it has identified on page 12 whether the assets underlying the general account constitute plan assets within the meaning of ERISA. The Investor agrees to promptly notify the General Partner if there is a change in the percentage of the general account's assets that constitute plan assets within the meaning of ERISA and shall disclose such new percentage ownership.

**(Q)**    The Investor acknowledges, understands and agrees that the General Partner has authority to allocate transaction costs to obtain research and brokerage services as set forth in the Memorandum. By signing this Subscription Agreement, the Investor expressly consents to any arrangement pursuant to which the General Partner obtains such products and services.

**(R)**    The Investor understands that Schulte Roth & Zabel LLP acts as counsel to the Partnership, the General Partner, the Manager and their affiliates. The Investor also understands that, in connection with this offering of Interests and subsequent advice to the Partnership, the General Partner, the Manager and their affiliates, Schulte Roth & Zabel LLP will not be representing investors in the Partnership, including the Investor, and no independent counsel has been retained to represent investors in the Partnership.

**(S)**    If the Investor is a "charitable remainder trust" within the meaning of Section 664 of the Internal Revenue Code of 1986, as amended (the "Code"), the Investor has advised the General Partner in writing of such fact and the Investor acknowledges that it understands the risks, including specifically the tax risks, if any, associated with its investment in the Partnership.

**(T)**    The Investor understands and agrees that, although the Partnership will use its reasonable efforts to keep the information provided in the answers to this Subscription Agreement strictly confidential, the Partnership may present this Subscription Agreement and the information provided in answers to it to such parties (*e.g.*, affiliates, attorneys, auditors, administrators, brokers and regulators) as it deems necessary or advisable to facilitate the acceptance and management of the Investor's Capital Contributions including, but not limited to, in connection with anti-money laundering and similar laws, if called upon to establish the availability under any applicable law of an exemption from registration of the Interests, the compliance with applicable law and any relevant exemptions thereto by the Partnership, the General Partner or its affiliates, or if the contents thereof are relevant to any issue in any action, suit or proceeding to which the Partnership, the General Partner or its affiliates are a party or by which they are or may be bound. The Partnership may also release information about the Investor if directed to do so by the Investor, if compelled to do so by law or in connection with any government or self-regulatory organization request or investigation.

**(U)**    The Investor acknowledges that under Delaware law other investors in the Partnership may be entitled to review the books and records of the Partnership and may be entitled to see a list of investors and their Capital Commitments and Capital Contributions and that certain other persons such as brokers and lenders to the Partnership may also receive such information. The Investor explicitly consents to such disclosure.

## III.    GENERAL

**(A)**    The Investor agrees to indemnify and hold harmless the Partnership, its General Partner, the Manager, each of their affiliates, and each other person, if any, who controls, is controlled by, or is under common control with, any of the foregoing, within the meaning of Section 15 of the Securities Act, against any and all loss, liability, claim, damage and expense whatsoever (including all expenses reasonably incurred in investigating, preparing or defending against any claim whatsoever) arising out of or based upon (i) any false representation or warranty made by the Investor, or breach or failure by the Investor to comply with any covenant or agreement made by the Investor, in this Subscription Agreement or in any other document furnished by the Investor to any of the foregoing in connection with this transaction or (ii) any action for securities law violations instituted by the Investor which is finally resolved against the Investor. The Investor also agrees to indemnify the Partnership, the General Partner, the Manager and their affiliates and agents for any and all costs, fees and expenses (including legal fees and disbursements) in connection with any damages resulting from the Investor's assertion of lack of proper authorization from the Beneficial Owner to enter into this Subscription Agreement or perform the obligations hereof.

(B)     The Investor, by executing and delivering this Subscription Agreement, agrees to be bound by the terms of the Partnership Agreement, as a party to the Partnership Agreement and as a limited partner in the Partnership, as if the Investor had executed and delivered the Partnership Agreement, and hereby approves of and ratifies, for all legal purposes, the execution and delivery of the Partnership Agreement by the General Partner on behalf of the Investor and all actions taken on behalf of the Investor pursuant thereto.

In addition, and in consideration of the acceptance of the subscription of the Investor:

(1)     the Investor agrees to be bound as a Limited Partner in the Partnership by the terms of the Partnership Agreement and hereby expressly ratifies and confirms the power of attorney given to the General Partner therein; and

(2)     the Investor hereby irrevocably nominates, constitutes and appoints the General Partner, with full power of substitution, as the true and lawful attorney and agent of the Investor, to act on the Investor's behalf with full power and authority in the Investor's name, place and stead to execute and deliver, for and on its behalf, the Partnership Agreement and any amendments thereto and to execute, acknowledge, verify, swear to, deliver, record and file, all in accordance with the terms of the Partnership Agreement, all instruments, documents and certificates which may from time to time be required pursuant to the terms of the Partnership Agreement.

Each of the power of attorney granted herein and the power of attorney in the Partnership Agreement is irrevocable, is a power coupled with an interest, shall survive the death or disability of the Investor, and shall survive the transfer or assignment by the Investor of the whole (but only in respect of matters relating to the Investor's status as a Limited Partner during the time the Investor was a Limited Partner) or any part of the Interest of the Investor in the Partnership, extends to the heirs, executors, administrators, legal representatives, successors, transferees, permitted assigns and other legal representatives of the Investor, and shall survive the subsequent legal incapacity of the Investor and may be exercised by the General Partner on behalf of the Investor in executing any instrument by a facsimile signature or by executing such instrument with a single signature as attorney and agent for the Investor. The Investor agrees to be bound by any representations or actions made or taken by the General Partner pursuant to such power of attorney and hereby waives any and all defenses which may be available to contest, negate or disaffirm the action of the General Partner taken in good faith under such power of attorney. In accordance with applicable laws, the Investor declares that these powers of attorney may be exercised during any legal incapacity or mental infirmity on its part.

(C)     If any provision of this Subscription Agreement is invalid or unenforceable under any applicable law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such applicable law. Any provision hereof which may be held invalid or unenforceable under any applicable law shall not affect the validity or enforceability of any other provisions hereof, and to this extent the provisions hereof shall be severable.

(D)     If any answers provided or background documentation required under this Subscription Agreement is found to be false, forged or misleading, the Investor understands that the General Partner may require such Investor to fully withdraw from the Partnership as permitted under the Partnership Agreement.

## IV.  TRUSTEE, AGENT, REPRESENTATIVE OR NOMINEE

(A)  If the Investor is acting as trustee, agent, representative or nominee for a beneficial owner (a "Beneficial Owner"), the Investor understands and acknowledges that the representations, warranties and agreements made herein are made by the Investor: (i) with respect to the Investor; *and* (ii) with respect to the Beneficial Owner. The Investor represents and warrants that it has all requisite power and authority from said Beneficial Owner to execute and perform the obligations under this Subscription Agreement.

(B)  If the Investor will enter into a swap, structured note or other derivative instrument, the return from which is based in whole or in part on the return of the Partnership (the "Swap"), with a third party (a "Third Party"), the Investor represents and warrants that with respect to a Third Party entering into a Swap: (i) the Third Party is authorized under its constitutional documents (*e.g.*, certificate of incorporation, by-laws, partnership agreement or trust agreement) and applicable law (including U.S. and non-U.S. anti-money laundering laws and regulations) to enter into the Swap and would also be so authorized to invest directly into the Partnership; (ii) the Third Party has received and reviewed a copy of the Memorandum, the Partnership Agreement, and this Subscription Agreement; (iii) the Third Party acknowledges that the Partnership and its affiliates are not responsible for the legality, suitability or tax consequences of the Swap and that the Investor is not an agent of the Partnership; and (iv) the Third Party is an "eligible contract participant" under the rules of the Commodities Exchange Act of 1974, as amended, and an "accredited investor" under Regulation D promulgated under the Securities Act. Nothing herein constitutes an agreement or statement by the Partnership as to the legality of a Swap or the suitability of a Swap for the Third Party.

## V.  ADDITIONAL INFORMATION AND SUBSEQUENT CHANGES IN THE FOREGOING REPRESENTATIONS; LEGENDS

(A)  The Partnership may request from the Investor such additional information as it may deem necessary to evaluate the eligibility of the Investor to acquire an Interest, and may request from time to time such information as it may deem necessary to determine the eligibility of the Investor to hold an Interest or to enable the General Partner to determine the Partnership's or the General Partner's compliance with applicable regulatory requirements or the Partnership's tax status, and the Investor agrees to provide such information as may reasonably be requested.

(B)  The Investor agrees to notify the General Partner promptly in writing if there is any change with respect to any of the information or representations made herein and to provide the General Partner with such further information as the General Partner may reasonably require.

(C)  This Subscription Agreement may be executed through the use of separate signature pages or in any number of counterparts. The counterparts shall, for all purposes, constitute one agreement binding on all the parties, notwithstanding that all parties do not execute the same counterpart.

(D)  **GEORGIA SUBSCRIBERS.** The Interests have been issued or sold in reliance on Paragraph (13) of Code Section 10-5-9 of the Georgia Securities Act of 1973, and may not be sold or transferred except in a transaction which is exempt under such act or pursuant to an effective registration under such act.

## INVESTOR PROFILE FORM

**ALL INVESTORS MUST COMPLETE THIS PAGE.**

_Lloyd J. Heller + Cathy S. Heller  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   csH 056 40 0607_

Name of Investor (*Please Print or Type*)          Social Security Number/Tax I.D. Number

$ _1 million_

Amount of Capital Commitment

Type of Investor—*Please check one*:

- [ ] Individual
- [ ] Partnership
- [ ] Corporation
- [ ] Trust
- [ ] Limited Liability Company

- [ ] Registered Investment Company
- [ ] Joint Tenants (with Rights of Survivorship)
- [x] Tenants in Common
- [ ] Individual Retirement Plan
- [ ] Charitable Remainder Trust

- [ ] Foundation
- [ ] Endowment
- [ ] Employee Benefit Plan
- [ ] Keogh Plan

Full Mailing Address (*Exactly as it should appear on labels*):

- [ ] Mr.   [ ] Mrs.   [ ] Ms.   [ ] Miss   [ ] Dr.   [ ] Other _____

_Mr + Mrs Lloyd Heller_
_17 East 89th St_
_New York NY 10128_

_212 289-7770_                    _212 876 3433_

Telephone number                    Fax number

Residence (if an individual) or Principal Place of Business (if an entity) Address (*No P.O. Boxes Please, if any*):

_LJH - business 914 682-0010 x 248_

Telephone number                    Fax number

Address of Authorized Representative/Agent (*No P.O. Boxes Please, if any*):

Telephone number                    Fax number

## INVESTOR PROFILE FORM

Attention:_____

E-Mail Address:_____

## COMMUNICATIONS TO INVESTOR

Please send all communications to *(Please initial one)*:

*C.S.H.*    Mailing Address
Initial *ЛЛН*

_____    Residence or Principal Place of Business Address
*Initial*

_____    Authorized Representative/Agent
*Initial*

9627281.3                                    10

## GENERAL ELIGIBILITY REPRESENTATIONS

**PLEASE COMPLETE ALL APPROPRIATE ITEMS.**

**I.**    **INVESTOR INFORMATION**

    **(A)**    Formation date of entity, if applicable:_____

    **(B)**    If an entity, the Investor is organized under the laws of:_____

    **(C)**    Was the Investor referred to the Partnership by a placement agent?    Yes ☐  No ☒

          If yes, please provide name of placement agent:_____

    **(D)**    The Investor hereby warrants and represents that:

          *(Please initial one and complete blanks)*

        _____    1.    If the Investor is a corporation, a partnership, a limited liability company, a
        *Initial*       trust or other legal entity, it is:
                 organized under the laws of:_____

                 and has its principal place of business in:_____

        _____    2.    If beneficial ownership of the Investor is held by an individual (or an
        *Initial*       Individual Retirement Account; Keogh Plan, or other self-directed defined
                 contribution plan), such individual is of legal age and is a resident of:

                 _____

    **(E)**    The Investor _____ (is) _*IH*_ (is not) *(please initial one)* a "Benefit Plan Investor" (*e.g.*,
        any employee pension benefit plan or employee welfare plan).

        If the Investor is a Benefit Plan Investor, please respond to the following:

        (i) The Investor ___ (is) ___ (is not) *(please initial one)* subject to the fiduciary responsibility
        provisions of ERISA and/or the prohibited transaction provisions of Section 4975 of the Code;
        and

        (ii) The Investor ___ (is) ___ (is not) *(please initial one)* subject to any rules or regulations
        similar to the fiduciary responsibility provisions of ERISA, and/or the prohibited transactions
        provisions of Section 4975 of the Code.

## GENERAL ELIGIBILITY REPRESENTATIONS

(F)    If the Investor is an entity, the Investor hereby certifies to either 1 or 2 below:

*(Please initial one)*

_____     1.    If the Investor is a corporation, partnership, limited liability company, trust or
*Initial*            other entity, less than 25% of the value of each class of equity interests in the
                  Investor (excluding from the computation interests held by any individual or
                  entity (other than a Benefit Plan Investor) with discretionary authority or
                  control over the assets of the Investor and of any individual or entity who
                  provides investment advice for a fee (direct or indirect) with respect to the
                  assets of the Investor or any affiliate of such person or entity) is held by
                  Benefit Plan Investors (as defined in Section II(O) of this Subscription
                  Agreement.

_____     2.    Twenty-five percent or more of the value of any class of equity interests in the
*Initial*            Investor (excluding from the computation interests held by any individual or
                  entity (other than a Benefit Plan Investor) with discretionary authority or
                  control over the assets of the Investor and of any individual or entity who
                  provides investment advice for a fee (direct or indirect) with respect to the
                  assets of the Investor or any affiliate of such person or entity) is held by
                  Benefit Plan Investors;

           and

           the Investor, ___ (is) ___ (is not) subject to the fiduciary responsibility
           provisions of ERISA and/or the prohibited transaction provisions of Section
           4975 of the Code.

(G)    If the Investor is an insurance company, the Investor hereby certifies to either 1 or 2 below:

*(Please initial one)*

_____     1.    The Investor is an insurance company investing the assets of its general
*Initial*            account in the Partnership but none of the underlying assets of the Investor's
                  general account constitutes plan assets within the meaning of ERISA.

_____     2.    The Investor is an insurance company investing in the Partnership with
*Initial*            general account assets and a portion of the underlying assets of the Investor's
                  general account constitutes plan assets within the meaning of ERISA; and

           _____% of its general account constitute plan assets within the meaning of
           ERISA.

(H)    If the investor is exempt from U.S. Federal income tax, please indicate the basis for the
       exemption: _____

(I)    Is the investor a registered investment company, or a company that is excluded from the
       definition of investment company solely by reason of the provisions of either Section 3(c)(1) or
       Section 3(c)(7) of the Investment Company Act of 1940, as amended?

☐ Yes      ☐ No

### GENERAL ELIGIBILITY REPRESENTATIONS

If the answer to the question above is yes, please state the number of the Investor's beneficial owners: _____

GENERAL ELIGIBILITY REPRESENTATIONS

---

**II.**    **CERTIFICATION OF NON-FOREIGN STATUS & SUBSTITUTE FORM W-9**

For All Investors

The Investor certifies that it is a U.S. person and that it is **NOT** (1) a non-resident alien or (2) a foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined in the Internal Revenue Code of 1986, as amended, including income tax regulations) for purposes of U.S. Federal income taxation. The Investor agrees to notify the Partnership within 60 days of the date it becomes a foreign person or entity. The Investor further certifies that its name, U.S. taxpayer identification number, home address (in the case of an individual) and business address (in the case of an entity), as they appear on the Investor Profile Form in this Subscription Agreement, are true and correct. The Investor further certifies that it is **NOT** subject to backup withholding because either (1) it is exempt from backup withholding, (2) it has not been notified by the Internal Revenue Service ("IRS") that it is subject to backup withholding as a result of a failure to report all interest or dividends, or (3) the IRS has notified it that it is no longer subject to backup withholding.* The Investor makes these certifications under penalty of perjury and understands that they may be disclosed to the IRS by the Partnership and that any false statement contained in this paragraph could be punished by fine and/or imprisonment.

_____    2/7/05
Signature                                         Date

---

\*       The Investor must cross out the preceding sentence if it has been notified by the IRS that it is currently subject to backup withholding because it has failed to report all interest and dividends on its tax return.

## GENERAL ELIGIBILITY REPRESENTATIONS

### III. ACCREDITED INVESTOR STATUS

The Investor certifies that the Investor is an "accredited investor" as defined in Regulation D promulgated under the Securities Act because:

*(Please initial as appropriate)*

**(A)    Individuals**


*Initial*

1.    The Investor has an individual net worth, or joint net worth with his or her spouse, in excess of $1,000,000.  As used herein, "net worth" means the excess of total assets at fair market value, including home,* home furnishings and automobiles, over total liabilities; or

_____
*Initial*

2.    The Investor had individual income (exclusive of any income attributable to his or her spouse) of more than $200,000 in each of the past two years, or joint income with his or her spouse of more than $300,000 in each of those years, and reasonably expects to reach the same income level in the current year.**

**(B)    Corporations, Foundations, Endowments, Partnerships or Limited Liability Companies**

_____
*Initial*

1.    The Investor has total assets in excess of $5,000,000 and was not formed for the specific purpose of acquiring the Interests offered; or

---

*    Notwithstanding anything to the contrary herein, for purposes of determining "net worth," the principal residence owned by an individual shall be valued either at (A) cost, including the cost of improvements, net of current encumbrances upon the property, or (B) the appraised value of the property as determined upon written appraisal used by an institutional lender making a loan to the individual secured by the property, including the cost of subsequent improvements, net of current encumbrances upon the property.  "Institutional lender" means a bank, savings and loan company, industrial loan company, credit union or personal property broker or a company whose principal business is as a lender secured by real property and which has such loans receivable in the amount of $2,000,000 or more.

**   For purposes of this Subscription Agreement, individual income means adjusted gross income, as reported for federal income tax purposes, less any income attributable to a spouse or to property owned by a spouse, increased by the following amounts (but not including any amounts attributable to a spouse or to property owned by a spouse):  (i) the amount of any tax-exempt interest income under Section 103 of the United States Internal Revenue Code of 1986, as amended (the "Code"), received; (ii) the amount of losses claimed as a limited partner in a limited partnership as reported on Schedule E of Form 1040; (iii) any deduction claimed for depletion under Section 611 *et seq.* of the Code; (iv) amounts contributed to an Individual Retirement Account (as defined in the Code) or Keogh retirement plan; (v) alimony paid; and (vi) any elective contributions to a cash or deferred arrangement under Section 401(k) of the Code.

## GENERAL ELIGIBILITY REPRESENTATIONS


*Initial*

2.   Each of the Investor's equity owners is an accredited investor for either of the following reasons:

   (a)   the equity owner of the Investor has an individual net worth, or joint net worth with his or her spouse, in excess of $1,000,000. As used herein, "net worth" means the excess of total assets at fair market value, including home,* home furnishings and automobiles, over total liabilities, or

   (b)   the equity owner of the Investor has individual income (exclusive of any income attributable to his or her spouse) of more than $200,000 in each of the past two years, or joint income with his or her spouse of more than $300,000 in each of those years, and reasonably expects to reach the same income level in the current year.** *The General Partner, in its sole discretion, may request information regarding the basis on which such equity owners are accredited.*

**(C)   Employee Benefit Plans**

_____

*Initial*

1.   The Investor is an employee benefit plan within the meaning of ERISA, and the decision to invest in the Partnership was made by a plan fiduciary (as defined in Section 3(21) of ERISA), which is either a bank, savings and loan association, insurance company or registered investment adviser. The name of such plan fiduciary is: _____.

---

*    Notwithstanding anything to the contrary herein, for purposes of determining "net worth," the principal residence owned by an individual shall be valued either at: (i) cost, including the cost of improvements, net of current encumbrances upon the property; or (ii) the appraised value of the property as determined upon written appraisal used by an institutional lender making a loan to the individual secured by the property, including the cost of subsequent improvements, net of current encumbrances upon the property. "Institutional lender" means a bank, savings and loan company, industrial loan company, credit union or personal property broker or a company whose principal business is as a lender secured by real property and which has such loans receivable in the amount of $2,000,000 or more.

**   For purposes of this Subscription Agreement, individual income means adjusted gross income, as reported for federal income tax purposes, less any income attributable to a spouse or to property owned by a spouse, increased by the following amounts (but not including any amounts attributable to a spouse or to property owned by a spouse): (i) the amount of any tax-exempt interest income under Section 103 of the Code, received; (ii) the amount of losses claimed as a limited partner in a limited partnership as reported on Schedule E of Form 1040; (iii) any deduction claimed for depletion under Section 611 *et seq.* of the Code; (iv) amounts contributed to an Individual Retirement Account (as defined in the Code) or Keogh retirement plan; (v) alimony paid; and (vi) any elective contributions to a cash or deferred arrangement under Section 401(k) of the Code.

## GENERAL ELIGIBILITY REPRESENTATIONS

_____
*Initial*
    2.    The Investor is an employee benefit plan within the meaning of ERISA and has total assets in excess of $5,000,000; or

_____
*Initial*
    3.    The Investor is a plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions for the benefit of its employees, and has total assets in excess of $5,000,000.

**(D)    Individual Retirement Accounts, Keogh Plans and Other Self-Directed Defined Contribution Plans**

_____
*Initial*
    The Investor is an individual retirement account, Keogh Plan or other self-directed defined contribution plan in which a participant may exercise control over the investment of assets credited to his or her account and the investing participant is an accredited investor because such participant has a net worth of at least $1,000,000 or has had an individual income of at least $200,000 (or a joint income with spouse of at least $300,000) in each of the last two years and reasonably expects to reach the same income level in the current year.  *The General Partner, in its sole discretion, may request information regarding the basis on which such participants are accredited.*

**(E)    Section 501(c)(3) Organizations**

_____
*Initial*
    The Investor is an organization described in Section 501(c)(3) of the Code of 1986, was not formed for the specific purpose of acquiring the Interests offered and has total assets in excess of $5,000,000.

**(F)    Trusts**

_____
*Initial*
    1.    The Investor has total assets in excess of $5,000,000, was not formed for the specific purpose of acquiring the Interests offered and its purchase is directed by a sophisticated person.  *As used in the foregoing sentence, a "sophisticated person" is one who has such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of the prospective investment;* or

_____
*Initial*
    2.    The Investor is: (a) a bank as defined in Section 3(a)(2) of the Securities Act, a savings and loan association, or other institution as defined in Section 3(a)(5)(A) of the Securities Act; (b) acting in a fiduciary capacity; and (c) subscribing for the purchase of the interests being offered on behalf of a trust account or accounts; or

_____
*Initial*
    3.    The Investor is a revocable trust which may be amended or revoked at any time by the grantors thereof and all of the grantors are accredited investors as described herein.  *The General Partner, in its sole discretion, may request information regarding the basis on which such equity owners are accredited.*

## GENERAL ELIGIBILITY REPRESENTATIONS

**(G)    Banks, Savings and Loans and Similar Institutions**

_____

*Initial*
The Investor is a bank as defined in Section 3(a)(2) of the Securities Act or a savings and loan association, or other institution as defined in Section 3(a)(5)(A) of the Securities Act acting in its individual capacity.

**(H)    Insurance Companies**

_____

*Initial*
The Investor is an insurance company as defined in Section 2(13) of the Securities Act.

9627281.3                                        18

## SIGNATURE PAGES

**ALL INVESTORS MUST COMPLETE THIS SECTION.**

The undersigned hereby represents that:

1. the undersigned has carefully read and is familiar with this Subscription Agreement and the Partnership Documents;

2. the information contained herein is complete and accurate and may be relied upon; and

3. the undersigned agrees that the execution of this signature page constitutes the receipt and execution of this Subscription Agreement and the Partnership Agreement.

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement this _7_ day of _Feb_ , 20_05_.

INDIVIDUALS

_Cathy S. Heller_
Signature

_Cathy S. Heller_
Print Name

_Lloyd Heller_
Additional Investor Signature

_Lloyd Heller_
Print Name

ENTITIES

_____
Print Name of Entity

By: _____
    Authorized Signature

_____
Print Name and Title

*Name of Trustees or Other Fiduciaries Exercising Investment
Discretion with Respect to Benefit Plan or Trust*

| *Signature* | *Printed Name* | *Title* |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

9627281.3

19

## SIGNATURE PAGES

### Agreement of Custodian of Individual Retirement Account

The undersigned, being the custodian of the above named individual retirement account, hereby accepts and agrees to this subscription.

By:_____                    _____
    Signature of Authorized Signatory                    Name of Custodian (*Please Type or Print*)


_____
Name of Authorized Signatory (*Please Type or Print*)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**FOR INTERNAL USE ONLY**
**To be completed by Goldin Restructuring Fund, L.P.**

*Lloyd J. Heller & Cathy S. Heller*
SUBSCRIPTION ACCEPTED
AS TO $ *1,000,000*_____

**GOLDIN RESTRUCTURING FUND, L.P.**

By:  Goldin Capital Partners, L.P., its general partner

By:  Goldin Capital Partners, L.L.C., its general partner

By: _____
    Name: *Harrison J. Goldin*
    Title: *Managing Member*

Date: *February 14*_____, 20 *05*

9627281.3                                        20

## NOTARIZATION ACKNOWLEDGMENT

ACKNOWLEDGMENT

STATE OF *New York* )

) ss:

COUNTY OF *Westchester* )

On this *9th* day of *February*, 200*8*, before me personally appeared *Lloyd Heller & Cathy Heller*, to me known and known to me to be the individuals who executed the foregoing Subscription Agreement in the capacity therein indicated, who acknowledged that he or she, being authorized to do so, executed the foregoing instrument for the purposes therein contained and in the capacity therein indicated as his or her own free act and deed.

_____
Notary Public

My Commission Expires:

_____

Peter R. Dama
Notary Public, State of New York
Registration # 01DA6106835
My Commission Expires 03/08/20_08_
Registered in Westchester County

9627281.3                                                21

<u>EXHIBIT A</u>

## ADDITIONAL SUBSCRIPTION FORM

**Goldin Restructuring Fund, L.P.**
c/o Goldin Capital Partners, L.P.
400 Madison Avenue
10th Floor
New York, NY 10017
Attn.: Lawrence J. Krule

Dear Sir/Madam:

The undersigned hereby wishes to make an additional capital contribution to Goldin Restructuring Fund, L.P. (the "Partnership"). The amount to be contributed ("Additional Capital Contribution") is: $ _____.

The undersigned acknowledges and agrees: (i) that the undersigned is making the Additional Capital Contribution on the terms and conditions contained in the subscription agreement, dated _____ ___, 20___, previously executed by the undersigned and accepted by the General Partner (the "Subscription Agreement"); (ii) that the representations and covenants of the undersigned contained in the Subscription Agreement and the anti-money laundering supplement thereto are true and correct in all material respects as of the date set forth below; (iii) the information provided on the Investor Profile Form in the Subscription Agreement is correct as of the date set forth below; and (iv) the background information provided to the General Partner is true and correct in all material respects as of the date set forth below.

**THE UNDERSIGNED AGREES TO NOTIFY THE GENERAL PARTNER
PROMPTLY IN WRITING SHOULD THERE BE ANY CHANGE
IN ANY OF THE FOREGOING INFORMATION.**

Dated: _____, 20___

INDIVIDUALS                              ENTITIES

_____          _____
Signature                                Print Name of Entity

                                         By: _____
_____              Authorized Signature
Print Name

_____          _____
Additional Investor Signature            Print Name and Title

_____
Print Name

---

**FOR INTERNAL USE ONLY**
**To be completed by Goldin Capital Partners, L.P.**

ADDITIONAL CAPITAL CONTRIBUTION ACCEPTED
AS TO $ _____

**GOLDIN RESTRUCTURING FUND, L.P.**

By: Goldin Capital Partners, L.P.

By: _____

Date: _____, 20___

9627281.3

A-1

# GOLDIN RESTRUCTURING FUND, L.P.

## CLIENT PRIVACY NOTICE

Your privacy is very important to us. This Privacy Notice sets forth the policies of Goldin Restructuring Fund, L.P. (the "Partnership") with respect to non-public personal information of its investors, prospective investors and former investors. These policies apply to individuals only and may be changed at any time, provided a notice of such change is given to you.

You provide us with personal information, such as your address, social security number, assets and/or income information: (i) in the Subscription Agreement and related documents; (ii) in correspondence and conversations with the Partnership's representatives; and (iii) through transactions in the Partnership.

We do not disclose any of this personal information about our investors, prospective investors or former investors to anyone, other than to our affiliates, such as the management company of the Partnership, and except as permitted by law, such as to our attorneys, auditors, brokers, regulators and certain service providers, in such case, only as necessary to facilitate the acceptance and management of your investment. Thus, it may be necessary, under anti-money laundering and similar laws, to disclose information about the Partnership's investors in order to accept subscriptions from them. We will also release information about you if you direct us to do so, if compelled to do so by law, or in connection with any government or self-regulatory organization request or investigation.

The Investor acknowledges that under Delaware law other investors in the Partnership may be entitled to review the books and records of the Partnership and are entitled to see a list of investors and their Capital Commitments and Capital Contributions. The Investor explicitly consents to disclosure of the fact of his or her investment in the Partnership, his or her mailing address and his or her Capital Commitment/Capital Contribution to other investors in the Partnership.

We seek to carefully safeguard your private information and, to that end, restrict access to non-public personal information about you to those employees and other persons who need to know the information to enable the Partnership to provide services to you. We maintain physical, electronic and procedural safeguards to protect your non-public personal information.

96272813

*Attn Michael Benevento*

# Goldin Restructuring Fund, L.P. (the "Partnership")

## Anti-Money Laundering Supplement

You (the "Investor") must complete this supplement (the "Anti-Money Laundering Supplement") in order to become a limited partner in the Partnership. Your subscription agreement will not be deemed complete, and you will not be deemed a limited partner of the Partnership, regardless of whether you have already wired funds, until all of the required documentation listed below is received by Goldin Capital Partners, L.P. (the "General Partner"). For additional information, please contact Lawrence J. Krule at (212) 593-2255.

### I.     PAYMENT INFORMATION

(a)  Name of Investor: *Cathy S. Heller & Lloyd J. Heller*

(b)  Name of the bank from which your payment to the Partnership is being wired   *CSH*
     (the "Wiring Bank"): *Bear Stearns*

(c)  Is the Wiring Bank located in a FATF Country?*       *CSH*          YES ☑   NO ☐

     If yes, please answer question (d) below.

     If no, please provide the information described in Item II below.

(d)  Are you a customer of the Wiring Bank?           *CSH*      ☑      ☐

     If yes, you may skip Item II below.

     If no, please provide the information described in Item II below.

You must wire the payment from an account in your name.

### II.    ADDITIONAL INFORMATION

*Note: This section applies only to investors who responded "No" to question I(c) or I(d) above.*

The following materials must be provided to the General Partner:

**For Individuals and Participants in Individual Retirement Accounts, Keogh Plans and Other Self-Directed Defined Contribution Plans**

☐       A government issued form of picture identification (e.g., passport).

---

\*     As of the date hereof, countries that are members of the Financial Action Task Force on Money Laundering (each, a "FATF Country") are:  Argentina, Australia, Austria, Belgium, Brazil, Canada, Denmark, Finland, France, Germany, Greece, Hong Kong, Iceland, Ireland, Italy, Japan, Luxembourg, Mexico, Kingdom of the Netherlands, New Zealand, Norway, Portugal, Russian Federation, Singapore, South Africa, Spain, Sweden, Switzerland, Turkey, United Kingdom and the United States.

☐     Proof of current address (*e.g.*, current utility bill).

**For Fund of Funds or Entities that Invest on Behalf of Third Parties that are Not Located in the U.S. or Other FATF Country**

☐     A certificate of due formation and organization and continued authorization to conduct business in the jurisdiction of its organization (*e.g.*, certificate of good standing).

☐     An incumbency certificate attesting to the title of the individual executing the Anti-Money Laundering Supplement on behalf of the prospective investor (a sample Incumbency Certificate is attached hereto as Exhibit A).

☐     A completed copy of Exhibit B certifying that the entity has adequate anti-money laundering policies and procedures in place that are consistent with all applicable anti-money laundering laws and regulations, including the USA PATRIOT Act and OFAC (as defined below).

☐     A letter of reference from a local office of a reputable bank or brokerage firm which is incorporated, or has its principal place of business located, in a FATF Country certifying that the prospective investor maintains an account at such bank/brokerage firm and containing a statement affirming the prospective investor's integrity (a sample Letter of Reference is attached hereto as Exhibit C).

**For All Other Entity Investors**

☐     A certificate of due formation and organization and continued authorization to conduct business in the jurisdiction of its organization (*e.g.*, certificate of good standing).

☐     An incumbency certificate attesting to the title of the individual executing the Anti-Money Laundering Supplement on behalf of the prospective investor (a sample Incumbency Certificate is attached hereto as Exhibit A).

☐     A letter of reference from a local office of a reputable bank or brokerage firm which is incorporated, or has its principal place of business located, in a FATF Country certifying that the prospective investor maintains an account at such bank/brokerage firm for a length of time and containing a statement affirming the prospective investor's integrity (a sample Letter of Reference is attached hereto as Exhibit C).

☐     If the prospective investor is a privately-held entity, a completed copy of Exhibit D listing the name of each person who directly, or indirectly through intermediaries, is the beneficial owner of 25% or more of any voting or non-voting class of equity interests of the prospective investor.

☐     If the prospective investor is a trust, a completed copy of Exhibit E listing the current beneficiaries of the trust that have, directly or indirectly, 25% or more of any interest in the trust, the settlor of the trust and the trustees.

### III.    REPRESENTATIONS AND COVENANTS OF THE INVESTOR

**You should check the website of the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") at <http://www.treas.gov/ofac> before making the following representations.**

(A)    The Investor represents that the amounts contributed by it to the Partnership were not and are not directly or indirectly derived from activities that may contravene federal, state or international laws and regulations, including anti-money laundering laws and regulations.

Federal regulations and executive orders administered by U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") prohibit, among other things, the engagement in transactions with, and the provision of services to, certain foreign countries, territories, entities and individuals.** The lists of OFAC prohibited countries, territories, persons and entities can be found on the OFAC website at <http://www.treas.gov/ofac>. In addition, the programs administered by OFAC ("OFAC Programs") prohibit dealing with individuals or entities in certain countries regardless of whether such individuals or entities appear on the OFAC lists.

The Investor represents and warrants that, to the best of its knowledge, none of:

(1)    the Investor;

(2)    any person controlling or controlled by the Investor;

(3)    if the Investor is a privately held entity, any person having a beneficial interest in the Investor; or

(4)    any person for whom the Investor is acting as agent or nominee in connection with this investment

is a country, territory, individual or entity named on an OFAC list, nor is a person or entity prohibited under the OFAC Programs.

Please be advised that the Partnership may not accept any amounts from a prospective investor if it cannot make the representation set forth in the preceding paragraph. If an existing Investor can not make these representations, the Partnership may require the withdrawal of interests.

(B)    The Investor agrees to notify the Partnership promptly in writing should the Investor become aware of any change in the information set forth in these representations. The Investor is advised that, by law, the Partnership may be obligated to "freeze the account" of such Investor, either by prohibiting additional investments from the Investor, declining any withdrawal requests and/or segregating the assets in the account in compliance with governmental regulations, and the Partnership may also be required to report such action and to disclose the Investor's identity to OFAC or other applicable governmental and regulatory authorities. The Investor further acknowledges that the General Partner may, by written notice to the Investor, suspend the payment of withdrawal proceeds payable to such Investor if the General Partner reasonably deems it necessary to do so to comply with anti-money laundering regulations applicable to the Partnership, the Investment Manager or any of the Partnership's other service providers.

---

**    These individuals include specially designated nationals, specially designated narcotics traffickers and other parties subject to OFAC sanctions and embargo programs.

(C)    The Investor represents and warrants that, to the best of its knowledge, none of:

    (1)    the Investor;

    (2)    any person controlling or controlled by the Investor;

    (3)    if the Investor is a privately held entity, any person having a beneficial interest in the Investor; or

    (4)    any person for whom the Investor is acting as agent or nominee in connection with this investment

is a senior foreign political figure,[***] or any immediate family member[****] or close associate[*****] of a senior foreign political figure as such terms are defined in the footnotes below.

(D)    If the Investor is a non-U.S. banking institution (a "Foreign Bank") or if the Investor receives deposits from, makes payments on behalf of, or handles other financial transactions related to a Foreign Bank, the Investor represents and warrants to the Partnership that:

    (1)    the Foreign Bank has a fixed address, other than solely an electronic address, in a country in which the Foreign Bank is authorized to conduct banking activities;

    (2)    the Foreign Bank employs one or more individuals on a full-time basis;

    (3)    the Foreign Bank maintains operating records related to its banking activities;

    (4)    the Foreign Bank is subject to inspection by the banking authority that licensed the Foreign Bank to conduct banking activities; and

    (5)    the Foreign Bank does not provide banking services to any other Foreign Bank that does not have a physical presence in any country and that is not a regulated affiliate.

(E)    The Investor understands and agrees that any withdrawal proceeds paid to it will be paid to the same account from which the Investor's investment in the Partnership was originally remitted, unless the General Partner, in its sole discretion, agrees otherwise.

(F)    The Investor agrees that, upon the request of the Partnership or the General Partner, it will provide such information as the Partnership or the General Partner require to satisfy applicable anti-money laundering laws and regulations, including, without limitation, the Investor's anti-money laundering policies and procedures, background documentation relating to its directors, trustees, settlors and beneficial owners, and audited financial statements, if any.

---

[***]    A "senior foreign political figure" is defined as a senior official in the executive, legislative, administrative, military or judicial branches of a non-U.S. government (whether elected or not), a senior official of a major non-U.S. political party, or a senior executive of a non-U.S. government-owned corporation. In addition, a "senior foreign political figure" includes any corporation, business or other entity that has been formed by, or for the benefit of, a senior foreign political figure.

[****]    "Immediate family" of a senior foreign political figure typically includes the figure's parents, siblings, spouse, children and in-laws.

[*****]    A "close associate" of a senior foreign political figure is a person who is widely and publicly known to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial U.S. and non-U.S. financial transactions on behalf of the senior foreign political figure.

## SIGNATURE PAGE

**ALL INVESTORS MUST COMPLETE THIS SECTION.**

The undersigned hereby represents that: (i) the information contained herein is complete and accurate and may be relied upon; and (ii) the anti-money laundering/OFAC representations contained herein are true and correct.

IN WITNESS WHEREOF, the undersigned has executed this Anti-Money Laundering Supplement this _7_ day of ___February___ , 200_5_ .

**INDIVIDUALS**

_Cathy S. Heller_
Signature

_Cathy S. Heller_
Print Name

_Lloyd Heller_
Additional Investor Signature

_Lloyd Heller_
Print Name

**ENTITIES**

_____
Print Name of Entity

_____
Authorized Signature

_____
Print Name and Title

*Name of Trustees or Other Fiduciaries Exercising Investment*
*Discretion with Respect to Benefit Plan or Trust*

| *Signature* | *Printed Name* | *Title* |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

**Agreement of Custodian of Individual Retirement Account**

The undersigned, being the custodian of the above named individual retirement account, hereby accepts and agrees to this Anti-Money Laundering Supplement.

By:_____        _____
Signature of Authorized Signatory        Name of Custodian ( Please Type or Print)

_____
Name of Authorized Signatory (Please Type or Print)

**NOTARIZATION ACKNOWLEDGMENT**

ACKNOWLEDGMENT

STATE OF *New York* )
                   ) ss:
COUNTY OF *Westchester* )

On this _9th_ day of _February_, 200_5_, before me personally appeared _Lloyd Bello or Cathy Wilkes_ to me known and known to me to be the individual who executed the foregoing Anti-Money Laundering Supplement in the capacity therein indicated, who acknowledged that he or she, being authorized to do so, executed the foregoing instrument for the purposes therein contained and in the capacity therein indicated as his or her own free act and deed.

                                _____
                                 Notary Public

My Commission Expires:

_____

                               Peter R. Dama
                      Notary Public, State of New York
                       Registration # 01DA6106635
                  My Commission Expires 03/08/20 _08_
                      Registered in Westchester County

**EXHIBIT A**

## FORM OF INCUMBENCY CERTIFICATE

The undersigned, being the _____ of _____,
                                    *Insert Title*              *Insert Name of Entity*

a _____ organized under the laws of _____
      *Insert Type of Entity*                              *Insert Jurisdiction of Organization*

(the "Company"), does hereby certify on behalf of the Company that the persons named below are

directors and/or officers of the Company and that the signature at the right of said name, respectively, is

the genuine signature of said person and that the persons listed below are each an authorized signatory for

the Company.

| Name | Title | Signature |
|------|-------|-----------|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

IN WITNESS WHEREOF, the undersigned has hereunto set his hand as of the __ day of

_____, 200__.

_____
Name:  *Print Name of Signatory #1*
Title:  *Print Title of Signatory #1*

THE UNDERSIGNED, _____, a duly authorized _____
                          *Insert Name of Signatory #2*                              *Insert Title*

of the Company, does hereby certify that _____ is a duly authorized
                                                  *Insert Name of Signatory #1*

officer of _____ and that the signature set forth above is [his][her] true and
                *Insert Name of Company*

correct signature.

9627281.3

IN WITNESS WHEREOF, the undersigned has executed this certificate as of the ___ day

of _____, 200__.

Name: *Print Name of Signatory #2*
Title: *Print Title of Signatory #2*

9627281.3

<u>EXHIBIT B</u>

## AML CERTIFICATION FORM FOR FUND OF FUNDS OR ENTITIES THAT INVEST ON BEHALF OF THIRD PARTIES THAT ARE NOT LOCATED IN A FATF COUNTRY

The undersigned, being the _____ of _____,
<i>Insert Title</i>          <i>Insert Name of Entity</i>

a _____ organized under the laws of _____
<i>Insert Type of Entity</i>          <i>Insert Jurisdiction of Organization</i>

(the "Company"), does hereby certify on behalf of the Company that it is aware of applicable anti-money laundering laws and regulations, including the requirements of the USA PATRIOT Act of 2001 and the regulations administered by the U.S. Department of Treasury's Office of Foreign Assets Control (collectively, the "anti-money laundering/OFAC laws"). The Company has anti-money laundering policies and procedures in place reasonably designed to verify the identity of its [beneficial holders] [underlying investors] and their sources of funds. Such policies and procedures are properly enforced and are consistent with the anti-money laundering/OFAC laws such that Goldin Restructuring Fund, L.P. (the "Partnership") may rely on this Certification.

The Company hereby represents to the Partnership that, to the best of its knowledge, the Company's [beneficial holders] [underlying investors] are not individuals, entities or countries that may subject the Partnership to criminal or civil violations of any anti-money laundering/OFAC laws. The Company has read the section entitled "Representations and Covenants of the Investor" in the Partnership's Anti-Money Laundering Supplement. The Company has taken all reasonable steps to ensure that its [beneficial holders] [underlying investors] are able to certify to such representations. The Company agrees to promptly notify the Partnership in writing should the Company have any questions relating to any of the investors or become aware of any changes in the representations set forth in this Certification.

Date: _____, 200\_\_\_        By: _____
                                    Name:
                                    Title:

**EXHIBIT C**

**FORM LETTER OF REFERENCE**

[LETTERHEAD OF LOCAL OFFICE OF FATF MEMBER BANKING INSTITUTION
OR BROKERAGE FIRM]

Date: _____, 200__

Goldin Restructuring Fund, L.P.
c/o Goldin Capital Partners, L.P.
400 Madison Avenue
10ᵗʰ Floor
New York, New York 10017

To whom it may concern:

    I, _____, the _____ of _____, do hereby
           *Name*          *Title*         *Name of Institution*

certify that _____ has maintained an account at our institution for
              *Name of Investor*

_____ years and, during this period, nothing has occurred that would give our institution
*Insert Period*

cause to be concerned regarding the integrity of _____.
                      *Name of Investor*

    Do not hesitate to contact me at _____ if you have any further
                      *Insert Telephone No.*
questions.

                      Very truly yours,

                      _____
                      Name:
                      Title:

9627281.3

## BENEFICIAL OWNERSHIP INFORMATION

### To Be Completed By Entity Investors That Are Privately Held Entities

**Instructions: Please complete and return this <u>Exhibit D</u> and provide the name of every person who is directly, or indirectly through intermediaries, the beneficial owner of 25% or more of any voting or non-voting class of equity interests of the Investor. If the intermediary's shareholders or partners are not individuals, continue up the chain of ownership listing their 25% or more equity interest holders until individuals are listed. If there are no 25% beneficial owners, please write None.**

| <u>Full Name</u> | If Shareholder is an Individual, Insert Name and Address of Principal <u>Employer and Position</u> | Citizenship (for Individuals) or Principal Place of <u>Business (for Entities)</u> |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

9627281.3

**EXHIBIT E**

## TRUST OWNERSHIP INFORMATION

### To Be Completed By Entity Investors That Are Trusts

**Instructions:** Please complete and return this Exhibit E and provide the name of: i) every current beneficiary that has, directly or indirectly, an interest of 25% or more in the trust; ii) every person who contributed assets to the trust (settlors or grantors); and iii) every trustee. If there are intermediaries that are not individuals, continue up the chain of ownership listing their 25% or more equity interest holders until individuals are listed.

| Full Name and Address | Status (Beneficiary/Settlor/Trustee) | Citizenship (for Individuals) or Principal Place of Business (for Entities) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

9627281.3