UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
                                                                 :
LLOYD J. HELLER,                                                 :
                                                                 :
        Plaintiff,                                              :      07 Civ. 3704 (RJS)
                                                                 :
  v.                                                             :
                                                                 :
GOLDIN RESTRUCTURING FUND, L.P.,                                 :      ELECTRONICALLY FILED
GOLDIN CAPITAL PARTNERS, L.P., GOLDIN                            :
CAPITAL MANAGEMENT, L.P., GOLDIN                                 :
ASSOCIATES, L.L.C., HARRISON J. GOLDIN,                          :
DAVID PAUKER, and LAWRENCE J. KRULE,                             :
                                                                 :
        Defendants.                                             :
                                                                 :
---------------------------------------------------------------- x


**REPLY IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**


                Michael Carlinsky, Esq.
                Daniel L. Brockett, Esq.
                Susheel Kirpalani, Esq.
                Molly Stephens, Esq.

                **QUINN EMANUEL URQUHART**
                   **OLIVER & HEDGES LLP**
                51 Madison Avenue, 22nd Floor
                New York, New York  10010
                (212) 849-7000

                Attorneys for Defendants

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

I.     PLAINTIFF HAS NOT STATED A BREACH OF FIDUCIARY DUTY CLAIM ...........2

    A.     Plaintiff Cannot Dispute that the Partnership Agreement Expressly Authorized the Medspa Investment ..........................................................................2

    B.     The Martin Act Provides a Separate and Independent Reason for Dismissing Plaintiff's Breach of Fiduciary Duty Claim. ........................................3

II.     PLAINTIFF HAS NOT STATED A CLAIM FOR VIOLATION OF SECTION 10(B) OR RULE 10B-5 ..............................................................................................................4

    A.     Plaintiff Cannot Cite Any Facts Supporting a Cogent or Compelling Inference of Scienter ................................................................................................4

    B.     Plaintiff's Opposition Confirms That He Can Allege Only Transaction Causation -- Not Loss Causation. ..........................................................................7

    C.     Plaintiff Bases His Fraud Claim on Forward-Looking Statements That Are Not Actionable as a Matter of Law. ........................................................................8

**TABLE OF AUTHORITIES**

                 **Page**

**Cases**

*In re Bayou Hedge Fund Litig.*,
   2007 WL. 2319127 (S.D.N.Y. July 31, 2007) .......................................................................4, 6

*Brickell Partners v. Wise*,
   794 A.2d 1 (Del. Ch. 2001)........................................................................................................3

*CPC Int'l Inc. v. McKesson, Corp.*,
   70 N.Y.2d 268, 519 N.Y.S.2d 804, 514 N.E.2d 116 (1987).......................................................3

*Citibank, N.A. v. K-H Corp.*,
   968 F.2d 1489 (2d Cir. 1992).....................................................................................................8

*Darquea v. Jarden Corp.*,
   2007 WL 1610146 (S.D.N.Y. May 31, 2007) ............................................................................6

*Darquea v. Jarden Corp.*,
   2007 WL 2584744 (S.D.N.Y Sept. 5, 2007)...............................................................................6

*Dorchester Investors v. Peak Intern. Ltd.*,
   134 F. Supp. 2d 569 (S.D.N.Y. 2001).........................................................................................9

*Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc.*,
   414 F.3d 325 (2d Cir. 2005).......................................................................................................3

*Glidepath Holding B.V. v. Spherion Corp.*, 2007 WL 2176072
   (S.D.N.Y. July 26, 2007) ...........................................................................................................6

*Hall v. Geiger-Jones Co.*,
   242 U.S. 539 (1916)...................................................................................................................3

*Halperin v. eBanker USA.com, Inc.*,
   295 F.3d 352 (2d Cir. 2002)..................................................................................................9, 10

*Hunt v. Alliance N. Am. Gov't Income Trust, Inc.*,
   159 F.3d 723 (2d Cir. 1998).....................................................................................................10

*In re JPMorgan Chase Sec. Litig.*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005).........................................................................................5

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005)...................................................................................................7, 8

*Matusovsky v. Merrill Lynch*,
   186 F. Supp. 2d 397 (S.D.N.Y. 2002)........................................................................................2

*Rozsa v. May Davis Group, Inc.*,
    187 F. Supp. 2d 123 (S.D.N.Y. 2002)..........................................................................2

*In re Salomon Smith Barney Mutual Fund Fees Litig.*,
    441 F. Supp. 2d 579 (S.D.N.Y. 2006)..........................................................................8

*In re Sierra Wireless, Inc. Sec. Litig.*,
    482 F. Supp. 2d 365 (S.D.N.Y. 2007)..........................................................................9

*Tellabs, Inc. v. Makor Issues & Rights*,
    127 S. Ct. 2499 (2007)........................................................................................4, 5, 6

*Turtur v. Rothschild Registry Int'l, Inc.*,
    26 F.3d 304 (2d Cir. 1994)...........................................................................................3

*Winer Family Trust v. Queen*,
    503 F.3d 319 (3rd Cir. 2007) ......................................................................................6

*In re Xethanol Corp. Sec. Litig.*, 2007 WL 2572088
    (S.D.N.Y. September 7, 2007)....................................................................................6

**Preliminary Statement**

This case is a simple one: Plaintiff agreed to invest $1 million over time in a limited partnership (the "Fund") established to make high-risk investments in distressed companies. Consistent with its disclosed investment criteria, the Fund made its first investment in a bankrupt medical spa business (the "Medspa investment"). This investment failed, causing Plaintiff to lose approximately $450,000 of his $1 million commitment. Rather than waiting for the Fund to make additional investments to achieve the so-called "diversification" goals upon which he bases his complaint, Plaintiff filed suit alleging breach of fiduciary duty and fraud in hindsight.

Plaintiff's Opposition makes clear the he has no claim for breach of fiduciary duty. Among other things, Plaintiff cannot dispute that the Partnership Agreement specifically authorized Defendants to make the investment at issue here. As a matter of law, there can be no breach of fiduciary duty for acts expressly authorized by a partnership agreement.

Plaintiff's Opposition also makes clear that he has no claim for securities fraud.

- Plaintiff has not pleaded facts that support a strong inference of scienter. All the facts, including Defendants' own losses and their disclosures regarding the Fund's capitalization, negate an inference of scienter. There are no facts supporting Plaintiff's theory that "Defendants *desperately needed* additional capital" at the time Plaintiff made his commitment, which occurred nine months before the end of the offering period and before any Fund investment had been identified.

- Plaintiff has not pleaded (and cannot plead) loss causation. It was the fully-disclosed risk inherent in the Medspa investment -- not the Fund's inability to make several such risky investments at one time -- that caused Plaintiff's loss.

- Finally, the documents establish that Plaintiff could not have been defrauded because he knowingly assumed the risk that Defendants could not effectuate "the business plan" of "diversification." Among other things, Defendants disclosed that the Fund might not be able to invest in more than one company and that even a single investment could severely impact investors' returns.

This lawsuit is merely an attempt by Plaintiff to escape liability for the risky investment strategy he knowingly undertook. Plaintiff's complaint should be dismissed in its entirety.

**Argument**

I. **PLAINTIFF HAS NOT STATED A BREACH OF FIDUCIARY DUTY CLAIM**

   A. **Plaintiff Cannot Dispute that the Partnership Agreement Expressly Authorized the Medspa Investment**

Plaintiff bases his entire breach of fiduciary duty claim on his assertion that the Medspa investment "constituted a total repudiation of the defined investment strategy as set forth in the [Offering Memorandum]." Opp. at 20; *see also* Opp. at 21. This conclusion must be rejected, however, because it is contradicted by the Offering Memorandum and the Partnership Agreement, both of which *expressly authorized* an investment in any single company of up to 20 percent of the Fund's capital commitments or $20 million, whichever was greater. *See Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) (allegations contradicted by documents referenced in the complaint insufficient to defeat a motion to dismiss); *Rozsa v. May Davis Group, Inc.*, 187 F. Supp. 2d 123, 128 (S.D.N.Y. 2002) (same); 2005 LP Agreement, Ex. D to Motion, ¶ 4.1(b); Offering Memorandum, Ex. A to Motion, p. 12; *see also* 2004 LP Agreement, Ex. B to Motion, ¶ 4.1(b); Motion at 12. The Medspa investment -- at $17 million -- unquestionably fell within this express authorization.

Plaintiff buries his response to this point in a footnote, arguing that the investment "was clearly *contrary* to the business plan set forth in the [Offering Memorandum]." Opp. at 21 n.13. Plaintiff's argument, which does not even attempt to explain how the investment was "clearly contrary" to the "business plan," does not negate the express authorization contained in the Partnership Agreement. That authorization unambiguously permitted Defendants to invest $20 million in any single company, even if that $20 million represented *100 percent* of capital commitments. *See* 2005 LP Agreement ¶ 4.1(b); 2004 LP Agreement ¶ 4.1(b).

As a matter of law, Defendants cannot be held to have acted in bad faith or breached their fiduciary duties when they made an investment the Partnership Agreement expressly authorized

2

them to make. *See Brickell Partners v. Wise*, 794 A.2d 1, 3-4 (Del. Ch. 2001); Motion at 11-12. Plaintiff's breach of fiduciary duty claim can and should be dismissed with prejudice. *See id.*

### B. The Martin Act Provides a Separate and Independent Reason for Dismissing Plaintiff's Breach of Fiduciary Duty Claim.

Although both parties agree that the Fund is a Delaware limited partnership governed by Delaware law, New York's Martin Act provides a separate ground for dismissing Plaintiff's breach of fiduciary duty claim. The reason is that the Fund sold securities to Plaintiff in New York, *see* Compl. ¶ 9, and the Martin Act -- New York's blue sky law -- unquestionably governs conduct arising in the purchase or sale of securities in New York by any entity, regardless of its state of incorporation or organization. *See N.Y. Gen. Bus. L.* §§ 352 *et seq.*[1]

Unlike most other states with similar blue sky laws, New York vests the Attorney General with *exclusive* enforcement of the Martin Act and denies a private plaintiff the right to recover for violations of the Act. *See CPC Int'l Inc. v. McKesson, Corp.*, 70 N.Y.2d 268, 275-76, 519 N.Y.S. 2d 804, 514 N.E.2d 116 (1987). As a result of this legislative requirement, New York courts have refused to allow private plaintiffs to assert any causes of action if they in effect create a private civil action under the Martin Act. *See id.*; Motion at 13-14.

Plaintiff concedes that causes of action not rising to the level of fraud that seek recovery for misrepresentations or omissions "in connection with the purchase or sale of securities" are preempted by the Martin Act. Opp. at 22. But Plaintiff argues, without authority, that his breach of fiduciary duty claim is not such a cause of action because it is based on "conduct *after* [he] had already subscribed to the Fund." *Id.*

---

[1] Plaintiff is unable to cite any authority in support of his argument that the Martin Act does not apply to Delaware or other out-of-state corporations. *See* Opp. at 22. The two cases Plaintiff cites do not even mention the Martin Act. *See Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc.*, 414 F.3d 325 (2d Cir. 2005); *Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304 (2d Cir. 1994). The U.S. Supreme Court has permitted states to regulate out-of-state entities through blue sky laws, such as the Martin Act, for almost a century. *See, e.g.*, *Hall v. Geiger-Jones Co.*, 242 U.S. 539, 549-51 (1916).

Plaintiff ignores this Court's recent pronouncement in *In re Bayou Hedge Fund Litigation* that any claim that "arises in the securities context" is preempted because of the "broad reach and purpose" of the Martin Act. *See In re Bayou Hedge Fund Litig.*, 2007 WL 2319127, at *16 (S.D.N.Y. July 31, 2007); Opp. at 22-23. Plaintiff attempts to distinguish *Bayou Hedge Fund* by arguing that the fiduciary duty claim there "was directly in connection with [a] purchase of securities." Opp. at 23. But the claim there was actually based on a failure to conduct due diligence *after* the defendants recommended the investment to the plaintiff. *See In re Bayou Hedge Fund Litig.*, 2007 WL 2319127, at *16. In addition, Plaintiff's fiduciary duty claim is "directly in connection with [a] purchase of securities" because Defendants had to solicit an actual capital contribution from Plaintiff to fund the Medspa investment. *See* Compl. ¶ 72.

As Plaintiff's Opposition makes clear, his breach of fiduciary duty claim is based on Defendants' alleged deceit in soliciting contributions for the Medspa investment when they knew the Fund was undercapitalized. *See* Opp. at 20-21; Compl. ¶ 67. This is exactly the sort of claim that falls within the scope of the Martin Act and is therefore preempted. *See* Motion at 13-14.

## II. PLAINTIFF HAS NOT STATED A CLAIM FOR VIOLATION OF SECTION 10(B) OR RULE 10B-5

### A. Plaintiff Cannot Cite Any Facts Supporting a Cogent or Compelling Inference of Scienter

Plaintiff concedes that, under *Tellabs*, a complaint cannot survive simply by alleging facts from which a "plausible" inference of scienter could flow. *See* Opp. at 10. Instead, the PSLRA requires facts supporting a "strong" inference of fraudulent intent, meaning a "powerful" or "cogent" one. *Tellabs, Inc. v. Makor Issues & Rights*, 127 S. Ct. 2499, 2510 (2007). "The inquiry is inherently comparative: How likely is it that one conclusion, as compared to others, follows from the underlying facts?". *Id.*

4

Plaintiff has not cited any facts that make an inference of scienter even plausible. He cites generally to 24 paragraphs of his complaint and concludes that scienter has been pleaded because "Defendants *desperately needed* additional capital which was not otherwise forthcoming." Opp. at 9-10. But Plaintiff cites no facts that the Defendants were in any way "desperate" when Plaintiff agreed to commit $1 million to the Fund. At that time, the Fund had no liabilities, the first closing had not yet occurred, and no investment had been selected. Plaintiff's assertion that Defendants were "desperate" to obtain his $1 million commitment is just speculation about Defendants' motives and intentions.

Plaintiff also argues that Defendants had "*actual knowledge*" at the time of his commitment that they could not "effectuate" the Fund's "business plan." Opp. at 9-10. Plaintiff is unable to cite any allegations to support this argument because there are none: Defendants are not clairvoyants who could know the success of their capital raising efforts months before their fundraising efforts were scheduled to conclude.

The inadequacy of Plaintiff's scienter inference is highlighted by a comparison to the opposing inferences, as required by *Tellabs*. *See Tellabs*, 127 S. Ct. at 2510. There are ample facts in the Complaint supporting a strong inference of nonfraudulent intent: Plaintiff's $1 million commitment represented only 0.5 percent of the commitments Defendants were hoping to raise; Defendants knew they had at least nine more months in which to raise money after Plaintiff's commitment; Defendants did not personally receive anything in return for Plaintiff's $1 million commitment; Defendants put another $15,000 of their own money at risk when Plaintiff committed his $1 million[2]; Defendants fully apprised Plaintiff of the Fund's

---

[2] Plaintiff argues that because Defendants had their own money at risk, they were motivated to make misrepresentations to attract new investors. *See* Opp. at 11. But allegations of intent to establish business do not support an inference of scienter because "[t]he incentive to increase profit can be imputed to all corporations and their officers." *In re JPMorgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 621 (S.D.N.Y. 2005).

5

capitalization when they sought Plaintiff's initial $385,632 contribution to the Medspa investment in June 2005; and Defendants again fully disclosed the Fund's capitalization before collecting additional money from Plaintiff in September 2005.[3]  *See* Offering Memorandum at 2, 17, 18; Compl. ¶¶ 25, 54, 64, 68, 72.  These facts compel a conclusion that Defendants had no intent whatsoever to defraud Plaintiff, but were simply seeking to attract investors for their new Fund in perfectly legitimate ways.  *See* Motion at 18-19.

In the end, the *Telllabs* inquiry boils down to a question of which inference is more compelling: the nefarious one or the nonculpable one.  The conclusion that Defendants were upfront with Plaintiff about the Fund and its risks, and simply did not attract the additional investors they in good faith anticipated attracting, is a more compelling explanation than any conclusion that Defendants knew the Fund would fail and lied to Plaintiff to obtain his promise to commit $1 million to the Fund.  Plaintiff's securities fraud claim should be dismissed for failure to plead facts raising a strong inference of scienter.  *See Tellabs*, 127 S. Ct. at 2504-05; *see also Winer Family Trust v. Queen*, 503 F.3d 319, 328-29 (3rd Cir. 2007) (employing *Tellabs* standard in finding no strong inference of scienter); *In re Bayou Hedge Fund Litigation*, 2007 WL 2319127, at *9-*11 (S.D.N.Y. July 31, 2007) (same).[4]

---

[3]  Plaintiff concedes that these disclosures were made, but argues that they are "irrelevant" because they occurred after he made his capital commitment (rather than contributions).  *See* Opp. at 11.  Had Defendants actually intended to defraud Plaintiff, however, a reasonable person would expect Defendants to have continued the fraud until they actually obtained his money.  One who is involved in a scheme to defraud does not normally disclose the scheme before money is to change hands.

[4]  The post-*Tellabs* cases cited by Plaintiff base their inferences of scienter on allegations of insider trading or personal, concrete benefits from an alleged fraud, which are not present here, and confirm a conclusion of non-fraudulent intent.  *See* Opp. at 10-11; *In re Xethanol Corp. Sec. Litig.*, 2007 WL 2572088, at *1 (S.D.N.Y. September 7, 2007) (class action complaint included allegations of insider trading); *Darquea v. Jarden Corp.*, 2007 WL 1610146, at *6, *10 (S.D.N.Y. May 31, 2007) (concluding that allegations of insider sales supported a finding of scienter); *Darquea v. Jarden Corp.*, 2007 WL 2584744, at *2 (S.D.N.Y Sept. 5, 2007) (holding that prior decision survived *Tellabs*); *Glidepath Holding B.V. v. Spherion Corp.*, 2007 WL 2176072 (S.D.N.Y. July 26, 2007) (basing inference of scienter on the fraudulent sale of an asset to obtain a much higher value than what it was worth).

### B. Plaintiff's Opposition Confirms That He Can Allege Only Transaction Causation -- Not Loss Causation.

Plaintiff's Opposition makes clear that the only misrepresentations that allegedly caused his loss were those related to the Fund's capitalization. *See* Opp. at 12-13. Plaintiff thus effectively concedes that he cannot plead loss causation with respect to other alleged misrepresentations and omissions, including those about Harrison Goldin's career in public office. *See id.*; Motion at 20-21; Compl. ¶¶ 7, 56-62.

Even as to the alleged misrepresentations related to the Fund's capitalization, Plaintiff has not pleaded loss causation. Plaintiff's economic loss was the $443,769 he lost when the Medspa investment failed. Compl. ¶ 72. To plead loss causation, Plaintiff must allege that "the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005).[5] Plaintiff has not alleged and cannot allege that "undercapitalization" was the cause of the Medspa investment failure. The Medspa investment failed due to its risky nature -- not the Fund's capitalization.

Nor can Plaintiff allege that disclosure of the Fund's "undercapitalization" would have spared him from the Medspa investment. *See Lentell*, 396 F.3d at 175 ("To plead loss causation, the complaints must allege facts that support an inference . . . that plaintiffs would have been spared all or an ascertainable portion of that loss absent the fraud."). The Fund's Partnership Agreement contemplated that the Fund would begin to make investments after the first closing, regardless of the amount of capital committed at that time, and expressly authorized the Fund to make a Medspa-type investment. *See* 2005 LP Agreement ¶ 4.1(b); Offering Memorandum at 12; *see also* 2004 LP Agreement ¶ 4.1(b). While Plaintiff might not have invested in the Fund

---

[5] Plaintiff misstates the pleading standard for loss causation by focusing only on foreseeability. *See* Opp. at 12. As the Second Circuit articulated in *Lentell* (cited by Plaintiff), loss causation requires "both that the loss be foreseeable *and* that the loss be caused by the materialization of the concealed risk." *Lentell*, 396 F.3d at 173 (emphasis in original).

had the alleged "undercapitalization" been disclosed, that is transaction causation -- not loss causation.  *See Lentell*, 396 F.3d at 172; *In re Salomon Smith Barney Mutual Fund Fees Litig.*, 441 F. Supp. 2d 579, 590 (S.D.N.Y. 2006) ("Plaintiffs' allegations that Defendants' omissions caused them to make investment choices they now regret in allegedly poorer quality, high-expense funds and that they would not have entered into these transactions had they known the information . . . constitutes transaction causation.").

Recognizing that the alleged "undercapitalization" did not cause his losses from the Medspa investment, Plaintiff focuses instead on "the failure of the Fund."  *See* Opp. at 12, 13.  Plaintiff has not alleged and cannot allege that the Fund failed.  *See* Compl. ¶ 73 ("the Fund itself is *probably* no longer operationally viable" (emphasis added)).  Moreover, the Medspa investment was the Fund's first investment made in the midst of its capital raising efforts.  Even if Plaintiff could somehow allege that the Fund had failed, this first investment would be an intervening event impacting the Fund's ability to achieve its final capital commitment target and its ultimate success.

Because Plaintiff has not pleaded and cannot plead that the alleged misrepresentations regarding the Fund's capitalization caused his losses from the Medspa investment, his claim under Section 10(b) and Rule 10b-5 should be dismissed.  *See Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1495-96 (2d Cir. 1992) (affirming dismissal for failure to plead loss causation).

### C. Plaintiff Bases His Fraud Claim on Forward-Looking Statements That Are Not Actionable as a Matter of Law.

Plaintiff's Opposition makes clear that his securities fraud claim is based on alleged representations regarding the Fund's ability to raise capital and achieve its "business plan" of "diversification."  *See* Opp. at 9, 12-13, 17.  These alleged representations are forward-looking statements because they relate to future goals.  Although Plaintiff argues that they are not forward-looking statements, *see* Opp. at 16-17, Plaintiff's complaint demonstrates otherwise.  *See*

Compl. ¶¶ 2, 31, 37 (alleging that Defendants represented that they "expected" to raise $200 million, "intended" to make certain investments, and had investment "objectives" for the future).

Forward-looking statements can only be "misrepresentations" if Plaintiff can allege that Defendants were *certain* they could not achieve their stated goals -- the $200 million in capital commitments or diversification. *See Dorchester Investors v. Peak Intern. Ltd.*, 134 F. Supp. 2d 569, 579 (S.D.N.Y. 2001) (stating an outcome as a possibility is misleading only if a defendant is "certain" that the outcome is not possible). Plaintiff has not and cannot make such an allegation. *See, e.g.*, Compl. ¶ 52 (history of fund raising "strongly *suggested* that few or no additional investors were *likely* to enter after Heller" (emphasis added)). Accordingly, these "misrepresentations" are not misrepresentations at all and are not actionable. *See Dorchester Investors*, 134 F. Supp. 2d at 579; *see also In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 373-74 (S.D.N.Y. 2007) (statements communicating a positive business outlook were not actionable misrepresentations).

Even if Plaintiff could allege the certainty required to turn these forward-looking representations into misrepresentations, such hypothetical misrepresentations would still not be actionable because of the bespeaks caution doctrine. *See* Motion at 23-24; *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002). Plaintiff was provided with documents indicating that $200 million was only a target and that Defendants still had at least nine months to raise that amount. Offering Memorandum, Ex. A, pp. 1-2; 2004 LP Agreement at 5.[6] Plaintiff was also provided with documents specifically warning that the Find might not achieve its

---

[6] Plaintiff makes the disingenuous argument that he believed the first closing had occurred on July 31, 2004. *See* Opp. at 15. The documents contradict this claimed belief. The actual date of the first closing was defined in the Partnership Agreement, and the Partnership Agreement that Plaintiff received was only a draft without a defined first closing date. *See* 2004 LP Agreement at 1, 5. No reasonable investor who had been informed of a six-month delay in commencing the Fund, as Plaintiff alleges he was, *see* Compl. ¶ 32, would interpret a draft partnership agreement from six months earlier as setting the first closing date.

9

investment objection and might make only a limited number of investments, any one of which could severely affect total returns. *See* Offering Memorandum at pp. i, 30; Motion at 24-25. Such language was adequate to warn of the risk that allegedly materialized here -- that the Fund made an investment before raising $200 million in capital commitments and that the investment was a failure, severely affecting the total returns to the limited partners.

Still, Plaintiff relies on the Second Circuit's opinion in *Hunt v. Alliance N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723 (2d Cir. 1998), to argue that these warnings are inadequate to invoke the bespeaks caution doctrine. *See* Opp. at 18-19. Plaintiff interprets the doctrine too narrowly. The Second Circuit has subsequently made clear that all materials and warnings must be analyzed in their entirety to determine whether a reasonable investor could have been misled about the nature of the risk when he invested. *See Halperin*, 295 F.3d at 357-59. Considering the offering materials that Plaintiff received as a whole, no reasonable investor could have believed that the $200 million target was a guarantee. And no reasonable investor could have believed that there was no risk of losing his entire contribution, which could represent a significant portion of his total Fund commitment, because of a single failed investment.

Thus, even assuming the existence of misrepresentations, Plaintiff was adequately warned of the risks that allegedly materialized, and the alleged misrepresentations are not actionable as a matter of law under the bespeaks caution doctrine.

## **Conclusion**

For the foregoing reasons, Defendants respectfully request that their motion to dismiss be granted and that Plaintiff's complaint be dismissed in its entirety.

DATED: December 12, 2007        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By _____s/_____
    Daniel L. Brockett, Esq.,
    Attorneys for Defendants